Michael P. Zweig (MZ-5318)
Eugene R. Licker (EL-0334)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-0037
212-407-4000

*Attorneys for Defendant*
*Broadcaster, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

PAUL GOODMAN

        Plaintiff,

    -against-

MARTIN WADE, NOLAN QUAN, BLAIR
MILLS, BROADCASTER, INC., GARY
HERMAN, BRUCE GALLOWAY, THOMAS
KIKIS, KIKIS FAMILY FOUNDATION,
WILLOW CREEK CAPITAL
MANAGEMENT, TRINIDAD CAPITAL
MASTER FUND, LTD., AARON BROWN,
ANDREW GARRONI, STRATEGIC
TURNAROUND EQUITY PARTNERS, LP
(CAYMAN) AND DIGITAL CREATIVE
DEVELOPMENT CORPORATION,

        Defendants.

------------------------------------------------------- X



Case No.: **08 CV 2851**

**NOTICE OF REMOVAL OF ACTION**
**UNDER 28 U.S.C. § 1441**

TO THE CLERK OF THE COURT:

    PLEASE TAKE NOTICE that defendant Broadcaster, Inc. ("Broadcaster")

hereby removes to this Court the action described below:

    1.    On or about January 16, 2008, an application for an Order to Show Cause,

with temporary restraining order, was submitted to the Supreme Court of the State of New York,

County, along with a summons with notice in the action entitled <u>Paul Goodman v. Martin Wade,</u> <u>Nolan Quan, Blair Mills, Broadcaster, Inc., Gary Herman, Bruce Galloway, Thomas Kikis, Kikis</u> <u>Family Foundation, Willow Creek Capital Management, Trinidad Capital Master Fund, Ltd.,</u> <u>Aaron Brown, Andrew Garroni, Strategic Turnaround Equity Partners, LP (Cayman) and Digital</u> <u>Creative Development Corporation,</u> New York County Index No. 100707/08 (the "State Court Action"). Justice Walter Tolub signed the Order to Show Cause on or about January 16, 2008 hereby temporarily restraining defendant Broadcaster from publishing alleged defamatory statements related to the proceedings to remove plaintiff as a director. A true and correct copy of the application for the Order to Show Cause and the summons with notice is annexed hereto as Exhibit A. On January 23, 2008, defendant Broadcaster submitted the Affirmation of Michael P. Zweig in Opposition to Plaintiff's Motion for a Preliminary Injunction with Temporary Restraining Order. A true and correct copy of this Affirmation is annexed hereto as Exhibit B. After a hearing that same day,, Justice Tolub summarily denied, from the bench, plaintiff's motion for a preliminary injunction for this alleged defamation

2.      In direct violation of the Order to Show Cause, plaintiff had failed to personally serve any of the defendants by hand. Defendant Broadcaster only received a copy of the papers via e-mail. In opposition to the Order to Show Cause, defendant Broadcaster objected to, among other things, the propriety of service and jurisdiction.

3.      On February 7, 2008, defendant Broadcaster demanded plaintiff to serve a complaint in this action. On February 28, 2008, plaintiff served defendant Broadcaster with a copy of the complaint via first class mail, which plaintiff received on March 4, 2008. A true and correct copy of the complaint is annexed hereto as Exhibit C.

4.      Plaintiff's complaint in the State Court Action purports to allege four causes of action.  The complaint's first cause of action purports to state a claim against all defendants for alleged defamation per se for statements related to the proceedings to remove plaintiff as a director.  The complaint's second cause of action purports to state a claim against defendants Broadcaster, Martin Wade, Nolan Quan, Blair Mills and Andrew Garroni for prima facie tort by publishing these alleged defamatory statements.  The complaint's third cause of action purports to state a claim against all defendants for negligence resulting from the defendants' breach of their duty of care to the plaintiff by publishing these alleged statements.  The complaint's fourth cause of action purports to state a claim against defendants Broadcaster, Martin Wade, Nolan Quan, Blair Mills and Andrew Garroni for injurious falsehood by publishing these alleged defamatory statements.

5.      Plaintiff is a citizen of the state of New York.

6.      (a) Defendant Wade is a citizen of the State of New Jersey.  (b) Defendant Quan is a citizen of the State of California.  (c) Defendant Mills is a citizen of Canada, is in the United States on a visa, and is currently awaiting a green card.  (d) Defendant Broadcaster is a corporation organized under the laws of the state of Delaware, having its principal place of business in Chatsworth, California.  (e) Defendant Gary Herman is a citizen of the State of New York.  (f) Defendant Bruce Galloway is a citizen of the State of New York.  (g) Defendant Thomas Kikis is a citizen of the State of New York.  (h) Defendant Kikis Family Foundation has its principal place of business in the State of New York.  (i) Defendant Willow Creek Capital Management has its principal place of business in the State of California.  (j) Defendant Trinidad Capital Master Fund, Ltd. has its principal place of business in the State of California.  (k) Defendant Aaron Brown is a citizen of the State of California.  (l) Defendant Andrew Garroni is

3

a citizen of the State of California.  (m) Defendant Strategic Turnaround Equity Partners, LP (Cayman) has its principal place of business in the State of New York.  (n) Defendant Digital Creative Development Corporation has its principal place of business in the State of New York.

7.    Although Plaintiff's complaint names defendants whose state of citizenship prevents complete diversity, these defendants are wholly unnecessary to the lawsuit and are, at best, either nominal or improperly joined defendants, whose presence does not defeat diversity.  All of the non-diverse defendants are shareholders of Broadcaster, and are named solely in their capacity as shareholders of Broadcaster.  Defendant Broadcaster submits that there is no possibility, based on the pleadings, that Plaintiff can state a cause of action establishing the liability of any of the non-diverse shareholder defendants for the publication by the Company of alleged defamatory statements in Broadcaster's SEC filings.  Plaintiff has not alleged that the corporate form ought to be ignored or that piercing the corporate veil is appropriate here.  Upon dismissal of the non-diverse defendants pursuant to Federal Rule of Civil Procedure 21, this Court will have original jurisdiction over this civil action pursuant to 28 U.S.C. §1332.  This action can then be removed to this Court by defendant Broadcaster pursuant to 28 U.S.C. §1441 in that it will be a civil action between citizens of different states and, based on the allegations in the complaint, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.    Defendant Broadcaster reserves its rights as to whether Plaintiff's inclusion of the non-diverse defendants amounts to a fraudulent or collusive joinder aimed at defeating diversity jurisdiction and defendant Broadcaster's right of removal.

9.    The complaint in the action, served on February 28, 2008, is the initial pleading.  Although Broadcaster's counsel obtained a copy of the summons with notice prior to

the January 23, 2008 hearing in the Supreme Court, New York County, such notice only provided a statement of the nature of the action, the relief sought and the amount in controversy and failed to provide the addresses of all of the defendants.  Therefore, the summons with notice did not provide the necessary facts as would be required to assess removal because the addresses of all of the defendants were missing.   For this reason, the summons with notice does not constitute the initial pleading for this matter.

10.    This notice has been filed within 30 days from the date upon which Broadcaster received a copy of the initial pleading.

11.    WHEREFORE, defendant Broadcaster respectfully requests that this action be removed to this Court and placed on the docket of this Court for further proceedings as though originally instituted in this Court.

Dated:    New York, New York
          March 18, 2008

LOEB & LOEB LLP

By: _____

Michael P. Zweig (MZ-5318)
Eugene R. Licker (EL-0334)
345 Park Avenue
New York, New York 10154-0037
212-407-4000

*Attorneys for Defendant*
*Broadcaster, Inc.*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
PAUL GOODMAN,

                            Plaintiff,                         Index No. 100707/08

            -against-

                                                               Filed: January 16, 2008

                                                               <u>Summons With Notice</u>

MARTIN WADE, NOLAN QUAN, BLAIR MILLS,
BROADCASTER, INC., GARY HERMAN, BRUCE
GALLOWAY, THOMAS KIKIS, KIKIS FAMILY
FOUNDATION, WILLOW CREEK CAPITAL
MANAGEMENT, TRINAD CAPITAL MASTER
FUND, LTD., AARON BROWN, ANDREW GARRONI,
STRATEGIC TURNAROUND EQUITY PARTNERS, LP
(CAYMAN) AND DIGITAL CREATIVE DEVELOPMENT
CORPORATION,

                            Defendants.
-----------------------------------------------------------X

     YOU ARE HEREBY SUMMONED to serve a notice of appearance on Plaintiff's

attorneys within twenty (20) days after the service of this summons, exclusive of the day of

service, (or within thirty days after service is complete if this summons is not personally

delivered to you within the State of New York); and in case of your failure to appear or answer,

judgment will be taken against you by default for the relief demanded herein.

     TAKE NOTICE THAT the nature of this action and the relief sought is to recover

monetary damages for defamation, defamation per se, prima facie tort, intentional infliction of

emotional distress, negligence, injurious falsehood, tortious interference with prospective

business relations, negligence misstatement, specific performance, injunctive relief and punitive

damages, and that in case of your failure to appear judgment will be taken against you by default

for the sum of TEN MILLION ($10,000,000.00) DOLLARS, plus the costs and disbursements of this action.

Plaintiff designates New York County as the place of trial. The basis of venue designated is the county in which the Plaintiff maintains his principal place of business.

Dated :     New York, New York
            January 16, 2008

PAUL GOODMAN
Plaintiff Pro Se
420 Lexington Avenue
Suite 2320
New York, New York 10170
(212) 661-6800

At IAS Part _____ of the Supreme Court of the State
of New York, County of New York, held at the
Courthouse, 60 Centre Street, New York, New York,
on the _____ th day of January, 2008

PRESENT:                        Justice

------------------------------------------------------X

PAUL GOODMAN,

                    Plaintiff,                Index No. 100707/08

        -against-

MARTIN WADE, NOLAN QUAN, BLAIR MILLS,          Order to Show Cause
BROADCASTER, INC., GARY HERMAN, BRUCE
GALLOWAY, THOMAS KIKIS, KIKIS FAMILY
FOUNDATION, WILLOW CREEK CAPITAL
MANAGEMENT, TRINAD CAPITAL MASTER
FUND, LTD., AARON BROWN, ANDREW GARRONI,
STRATEGIC TURNAROUND EQUITY PARTNERS, LP
(CAYMAN) AND DIGITAL CREATIVE DEVELOPMENT
CORPORATION,

                    Defendants.

------------------------------------------------------X

        On reading and filing the affidavit of Paul Goodman, sworn to on the 15th day of

January, 2008, the Summon with Notice and upon all the proceedings and pleadings had

herein, let the defendant show cause before this Court at IAS Part _____, to be held at

the Courthouse, 60 Centre Street, New York, New York, on the 23 day of January,

2008, at 2 o'clock in the forenoon or as soon thereafter as counsel can be heard, why

an order for a temporary injunction should not be entered herein restraining Defendants

during the pendency of this action from continuing to publish or republish, either

electronically or in print, any false and/or defamatory statements in Securities and

Exchange Commissions filings, regarding the business judgment of the Plaintiff.

ORDERED that pending a hearing ~~and determination~~ of this motion that the

Defendants are hereby restrained from publishing or republishing, either electronically or

in print, any false and/or defamatory statements in Securities and Exchange Commissions

filings, regarding the business judgment of the Plaintiff.

ORDERED, that service of a copy of this order and all the papers upon which it is

based/be personally served upon the Defendants by hand ~~or by fax~~, on or before January

18, 2008, be deemed good and sufficient service.

*↑Along with service of the summons with notice*

*⌐delivery*

ENTER:

/s/ Walter Tolub
J.S.C.

ORal ARGUMENT
DIRETED:

JSC

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X

PAUL GOODMAN,

                                        Plaintiff,                    Index No.


        -against-


MARTIN WADE, NOLAN QUAN, BLAIR MILLS,                    <u>Affidavit in Support</u>
BROADCASTER, INC., GARY HERMAN, BRUCE
GALLOWAY, THOMAS KIKIS, KIKIS FAMILY
FOUNDATION, WILLOW CREEK CAPITAL
MANAGEMENT, TRINAD CAPITAL MASTER
FUND, LTD., AARON BROWN, ANDREW GARRONI,
STRATEGIC TURNAROUND EQUITY PARTNERS, LP
(CAYMAN) AND DIGITAL CREATIVE DEVELOPMENT
CORPORATION,

                                        Defendants.

------------------------------------------------------------X


STATE OF NEW YORK            )
                             ) ss:
COUNTY OF NEW YORK    )

        PAUL GOODMAN, being duly sworn, deposes and says:

        1.        I am the Plaintiff *pro se* in the above-captioned action and thus, familiar

with the facts and circumstances herein.  I am also a member of the Board of Directors of

Defendant Broadcaster, Inc., a Delaware corporation ("Broadcaster").  Broadcaster is a

publicly traded corporation with its stock listed for quotation on the Over-the-Counter

Bulletin Board ("OTCBB").

        2.        I make this affirmation in support of my Order to Show Cause seeking a

temporary restraining order and preliminary injunction against the Defendants to prevent

the Defendants from continuing to republish untrue and defamatory statements regarding

my business judgment and reputation in filings made by Broadcaster with the Securities and Exchange Commission ("SEC"). Unless stopped by this Court, Broadcaster will continue to damage my career and business reputation by continuing to publish revised versions of such documents and to mass mail them to its stockholders.

3.      This Order to Show Cause is being brought simultaneously with the commencement of this action by Summons With Notice, as attached hereto as Exhibit "A". The Summons With Notice alleges causes of action against the Defendants for defamation, defamation per se, prima facie tort, intentional infliction of emotional distress, negligence, injurious falsehood and tortious interference with prospective business relations.

4.      It should be made clear that I do not seek this relief to block the proposed corporate action. What I seek is an injunction to prevent the further publications and dissemination of false and damaging statements about myself in Securities and Exchange Commission filings made by the Defendants.

5.      Except as set forth herein, the Defendants herein (other than Broadcaster) are each stockholders of Broadcaster or individuals controlling such entities who executed a written consent of stockholders calling for my removal as a Director of Defendant Broadcaster. Defendant Wade is the Chief Executive Officer of Defendant Broadcaster. Defendant Quan is the President of Defendant Broadcaster and allegedly its largest shareholder. Defendant Mills is the Chief Executive Financial of Defendant Broadcaster.

6.      As will be shown, Defendant's damaging and false statements, have been repeatedly published by Broadcaster, in an attempt to retaliate against me and silence my objections to self-serving transactions engaged in by Defendant Quan.

This Court has Jurisdiction

7.      CPLR § 302(a)(3)(ii) provides that a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent ... commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

8.      On May 9, 2007, I was elected to the Board of Directors of Broadcaster at its annual meeting of stockholders.  I had been nominated to the Board of Directors by Defendant Wade due to my experience as both a securities lawyer and my extensive background in working with small Internet companies such as Broadcaster.  In fact, over the past 12 years, I have represented and worked closely with over 50 companies involved in the Web industry ranging from small start-up companies to publicly traded companies.  In addition, I hold both a Bachelors and Masters Degree in Computer Science and have been on the computer science faculty of several colleges.  During the annual stockholders meeting, Defendant Quan voted all of his shares in favor of my election to the Board of Directors, based upon my experience in the Web industry and my biography.

3

9.     In addition, I am one of five trustees of a trust which currently holds approximately 1,600,000 shares of Broadcaster common stock. This stock was acquired in connection with an unrelated corporate transaction in 2004, in which Broadcaster (the known as International Microcomputer Software, Inc.) acquired a subsidiary of an unrelated company of which I coincidently was a director.

10.     From the time that I was elected to the Board of Directors, I became a vocal critic of Broadcaster's business model and management's inability to reduce costs and create a competitive business.

11.     Recently and more seriously, I have discovered what appear to be a series of transactions in which Broadcaster paid large sums to entities which appear to be secretly owned and/or controlled by management.

12.     As will be shown herein, Defendants' defamatory acts have been taken against me as a means of retaliating against my criticism of management and for disclosing this self-dealing transactions involving Defendant Quan and Defendant Broadcaster.

13.     In order to obtain temporary injunctive relief, a movant must demonstrate (1) a likelihood of ultimate success on the merits, (2) irreparable injury absent a granting of the injunction, and (3) a balancing of the equities in the movant's favor (*Barone v. Frie,* 99 A.D.2d 129, 132, 472 N.Y.S.2d 119; *Albini v. Solork Assoc.,* 37 A.D.2d 835, 326 N.Y.S.2d 150; *See,* CPLR 6301).

14.     It is respectfully submitted that I shall be sufficiently demonstrate each such requirement herein.

4

<u>Background History</u>

15.    A brief history of Broadcaster will provide the Court with the context necessary to understand the necessity of this application.

A.  Broadcaster, in its current state, was created on June 2, 2006, when a company then known as International Microcomputer Software, Inc. ("IMSI") acquired a group of companies owned and/or controlled by Defendant Nolan Quan known as "AccessMedia".  IMSI then changed its name to "Broadcaster, Inc." to reflect its new business.

B.  At such time, AccessMedia provided subscription-based entertainment videos over the Web.  Although I was not involved in the acquisition, it was apparently unknown to the company's management that the business tactics employed by Mr. Quan's companies to acquire subscribers were under investigation by the Federal Trade Commission ("FTC") and involved several practices determined by the FTC to be unlawful including secretly downloading "spyware software" on to consumer's computers and using extortionate tactics to getting consumers to pay fees to the company.

C.  However, by 2006, it was already well established that charging for content on the Internet was not a viable business concept  and it became clear that the Broadcaster had to quickly adopt a new business model.

D.  On or about December 7, 2006, Broadcaster changed it business model by dropping its dubious subscription-based business and re-launching as a video Web site that was similar to the famous YouTube Web site.

E.  Although the Chief Executive Office of Broadcaster was and is currently Defendant Martin Wade, the company was actually managed by Defendant Quan at its offices in Chatsworth, CA.  Defendant Wade remained an East coast resident mostly working out of an office provided to Broadcaster by its investment banker at 40 Wall Street, New York, NY.

F.  Even with a new business model, Broadcaster continued to employ dubious business tactics.  Instead of trying to promote the Broadcaster.com through normal promotional channels such as doing joint ventures with other companies Web companies, Defendant Quan employed a questionable practice of "purchasing Web traffic".  In actuality, what Defendant Quan did was to use an affiliated entity to activate existing "spyware" software (which they had for many years tricked consumers into downloading) to make the Broadcaster.com Web site automatically appear on the computers of unwitting consumers.

G. Thus, an unwitting computer user might be searching with Google or Yahoo and without any action on their part, the Broadcaster.com home page appeared. When this happened, over 99% of such users simply either ignored the Broadcaster.com home page or instantly closed it.

H. As can be seen by Exhibit "B", this promotional tactic was poorly received by computer users who were often annoyed and dismayed by having the Broadcaster.com Web site appear on their computers. Many computer users believed Broadcaster.com to be a computer virus and as can be seen from the Exhibit literally begged others for help in removing it. In addition, each time the spyware was kicked into action on a user's computer, the Company's web servers recorded what was essentially a "phantom" page view, that is, one that was not requested by a user and which over 99% was literally ignored.

I. The costs to Broadcaster for this were tremendous. For the 12 month period ending June 30, 2007, Broadcaster paid over $6 million for this "traffic generation". It now seems that this money was paid to one or more entities which were housed within Broadcaster's California offices and secretly owned and/or controlled by Defendant Quan and possibly other long time business associates of Defendant Quan. In fact, according to the FTC, these entities and Broadcaster were a "common enterprise"[1].

J. Although the phantom page views provided little or no benefit to Broadcaster, they were of great value to Defendant Quan who used them to claim a right to receive an additional 7,000,000 shares of Broadcaster stock and making himself the largest stockholder of Broadcaster.

<u>The Defamatory Statements</u>

16.    All throughout this time, Defendant Wade, even though he was CEO of Broadcaster, failed to take any action to curtail the misdeeds and self dealing of Defendant Quan. As a result of Defendants Quan and Wade's mismanagement and apparent self-dealing, Broadcaster showed an operating loss of over $16 million for the year ending June 30, 2007 and an operating loss of over $3.1million for the three months ending September 30, 2007. <u>Thus, as recently as September, 2007, Broadcaster was</u>

---

[1] In fact, the company was sued by the FTC and paid over $500,000 to settle the FTC's allegations.

<u>losing over $1 million per month.</u> Despite these huge, continuing losses, management, led by Defendants Wade and Quan, made no attempts to curtail spending.

17.    It should be noted that during the same period of time, Broadcaster received very little revenue from its advertising business model and the huge losses which continued to mount threatened the viability of the company's survival. Also, as a result of the huge operating losses, during that period of time, Broadcaster's stock price dropped over 90%.

18.    As would any responsible Director, myself and another Director, Dr, Vincent Orza, demanded that management take immediate and drastic steps to stop the pointless spending of additional cash for a failed business.

19.    Each complaint was met by disinterest and distain by Defendant's Wade, Quan and Mills.

20.    It then escalated to Defendants Wade, Quan and Mills purposefully ignoring Board of Directors resolutions requiring the termination of the company's operating business and laying off all staff.  It should be noted that even without any revenue, Broadcaster continued to employ Defendant Quan's wife and son in unnecessary positions.

21.    Specifically, at two Board meetings conducted on November 26, 2007 and November 27, 2007, the Board voted to terminate all employees and yet, Defendant's Wade, Quan and Mills refused to comply.  At the same meetings, the Board voted to pursue other business opportunities for the company.

22.    Then, at a meeting in December 13, 2007, when the Board authorized the execution of a letter of intent for the acquisition of a company called "JamNow", the

Defendants' true intentions became clear. Not wanting to see the Company acquire JamNow and the simultaneous termination of its current business, Defendant Quan improperly instructed the CEO, Defendant Wade, to present to the Board yet another potential acquisition, a Web hosting company known as "WebHost4Life." WebHost4Life is a company which is a significant client of one of Defendant Quan's private ventures known as "Alchemy Communications".

23.    In order to continue their scheme, Defendants Wade, Quan and Mills solicited other stockholders of Broadcaster to remove myself and Dr. Orza as Directors of Broadcaster, allegedly, "not for cause".

24.    The group of stockholders organized by Defendants Wade, Quan and Mills purportedly constitute a majority and on or about December 21, 2007, each executed a written consent to remove myself and Dr. Orza from the Board of Directors (the "Written Consent")(Exhibit "C"). Simultaneously, Defendant Wade, acting without the Board of Director's knowledge or consent, withdrew the executed JamNow letter of intent.

25.    However, in order to effectuate such removal, the Defendants have to comply with the requirements of Section 14 of the Securities Act of 1934, as amended (the '34 Act"). Section 14 requires that no stockholder action can be taken until:

(a)  A preliminary "Information Statement" properly disclosing the action to be taken has been provided to the Securities and Exchange Commission ("SEC") for review and posted to the SEC's publicly available EDGAR system.  The SEC then has a 10-day period to review the document and request that changes be made and amendments be posted to EDGAR.

8

(b) Then, once approved by the SEC staff, a definitive Information Statement has to be posted to EDGAR and mailed to each of the Stockholders.

(c) Finally, twenty days after mailing, the action can finally be taken.

26.     Defendant Wade, acting on behalf of Broadcaster, was none to happy to help the other Defendants. Even though Broadcaster is not an party to the attempt to remove myself and Dr. Orza, he fired Broadcaster's outside corporate counsel and then hired a new law firm, at Broadcaster's sole expense, to prepare and file the Information Statement on behalf of the other Defendants.

27.     This Information Statement is the gravamen of this action.

28.     Late in the afternoon of Friday, December 21, 2007, Defendant Wade caused Defendant Broadcaster to file a preliminary Information Statement on the SEC's EDGAR Web site. A complete copy is attached hereto as Exhibit "D". The Information Statement contained the following description of the action being taken:

> On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement.

29.     It must be noted that everything posted to the EDGAR system is available to any user of the Web and is indexed by Google, Yahoo and the other search engines.

30.     Apparently, the SEC's Corporation Finance staff was not satisfied with the level of disclosure in the December 21, 2007 preliminary Information Statement, and

Broadcaster amended the Information Statement to explain the basis of the removal[2]. This is where Broadcaster and the other Defendants went from filing just a perfunctory document to publishing defamatory statements.

31.    On January 4, 2008, Defendant Wade caused Broadcaster to publish an amendment to the preliminary Information Statement (Exhibit "E") (the "First Amendment"), which adds the first instance of false and defamatory statements.  In pertinent part, it states:

> On December 21, 2007,  record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors and the fact that based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry. A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement. (emphasis added to show language added)

32.    It is respectfully submitted that the statements underlined above are untrue, defamatory and published with malice.  Apparently, the SEC's Corporation Finance staff was still not satisfied with the level of disclosure in the Information Statement, and so, once again, Defendant Wade, on January 9, 2008, caused Broadcaster to compound its improper and defamatory acts by publishing yet another Amendment to

---

[2] The exact comments made by the SEC to Broadcaster from SEC Corporation Finance staff issues in a comment letter is unknown and has not been publicly disseminated by the SEC.

the preliminary Information Statement (Exhibit "F") (the "Second Amendment"), which

furthers the falsehoods and states, in pertinent part:

> Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. <u>Such lack of confidence is the result of recent conversations between the shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price.</u> The fact that, based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry also contributed to such lack of confidence . A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement. (emphasis added to show language added).

33.    This then continued <u>yet one more time</u> on January 11, 2008, when

Defendant Wade, <u>once again</u> caused Broadcaster to compound its improper and

defamatory acts,  this time ratcheting up the personal attacks, by publishing <u>yet another</u>

<u>amendment</u> to the preliminary Information Statement (See Exhibit "G") (the "Third

Amendment"), which states:

> Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. The fact that, based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry also contributed to such lack of confidence. <u>There were three meetings of the Board of Directors that were held by the Company by telephonic conference (November 26th, December 3rd and 13th, 2007) at which the manner of the shut down was discussed. Messrs. Wade, Berman, Mills and Goodman were present at each meeting. Dr. Orza was present at two of those meetings. At each meeting several non board members were present by invitation.</u>

Messrs. Quan, Harris and Gardner were present by invitation at all three meetings and Mr. Herman was present by invitation at the December 13, 2007 meeting. At each meeting there was a disagreement about the how to deal with terminating employees and how to preserve the value of the assets. On December 13, 2007 the Board resolved to dismiss most of the employees by December 31, 2007 and such action has been implemented. A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement. Listed below is the name of each such consenting shareholder, the number of shares held by each such consenting shareholder and the percentage of beneficial ownership of the Company's common stock held by such consenting shareholder. (emphasis added to show language added).

34.     Defendants have now, three times, published and publicly disseminated damaging defamatory statements which are just plain false. It is respectfully submitted that without an order from this Court stopping such further publication of defamatory statements, the Defendants will continue to compound their acts at least twice more, in both electronic form and in print, and continue to permanently damage my reputation and career.

35.     The elements of defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (*Dillon v. City of New York*, 261 A.D.2d 34, 38 (1999) ). It is well settled that a defamatory statement is defamation per se if it imputes fraud, dishonesty, misconduct, or unfitness in conducting one's profession". It is also well established that words constitute defamation per se if they affect the plaintiff in his trade, occupation, or profession" (*Sterling Doubleday Enterprises, L.P. v. Marro*, 238 A.D.2d 502, 503 (1997); *Warlock Enterprises v. City Center Assocs.*, 204 A.D.2d 438, 438 (1994)).

12

36.    An action in defamation per se may be maintained when a publication is defamatory upon its face while an action premised upon libel innuendo, which requires special damages, is necessary when the publication requires extrinsic evidence to explain its defamatory meaning" (*Luisi v. JWT Group, Inc.* 128 Misc.2d 291, 294 (1985), *affd* 67 N.Y.2d 914 (1986)).

37.    Stated differently, the alleged defamatory words must be "construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, as opposed to having a forced, artificial construction imposed upon them" (*Porter v. Saar*, 260 A.D.2d 165, 167 (1999)). Statements which are not defamatory on their face may in fact be defamatory because of the use of innuendo. (*WDM Planning, Inc. v. United Credit Corp.*, 47 N.Y.2d 50, 53 (1979)).

38.    It is respectfully submitted that I can show each element required to grant this request for a temporary restraining order and preliminary injunction.

<u>The Statements are False – The Cited Conversations Never Took Place</u>

39.    The statements made in each of the three Amendments each assert that the Defendants have come to conclusions regarding the business judgment of myself based my biography and upon conversations I have had with each of the Defendant stockholders which has given them a basis to come to a conclusion about my business judgment and qualifications.

40.    There is a likelihood of success on the merits that I can show the falsity of these statements.  In fact, an analysis of whether the statements constitute truth or opinion is not even necessary <u>since the entire alleged factual basis of such statements never occurred.</u>

41.    Each of the Amendments to the Information Statement asserts that conversations have taken place between the "shareholders" meaning the 14 stockholders who signed the Written Consent, and myself.

42.    <u>No such conversations have ever taken place making Defendants' statements entirely false.</u>

43.    While the Third Amendment notes that one of the signatories of the written consent (which was Defendant Gary Herman) attended, a Board of Directors meeting, by telephone, my short conversation with him involved his right to be present at the meeting. I had no discussion of the business of Broadcaster with Defendant Herman. It should be noted that this attempt to modify the statements in the Third Amendment does not eliminate the falsity of the statement nor does it decrease the damage caused by all three Amendments.

44.    In actuality, I have never spoken to some of the signatories of the Written Consent, including Bruce Galloway, Aaron Brown, Robert Ellin, Andrew Garroni and Thomas Kikis. In fact, prior to receiving a copy of the Written Consent, I had never heard of several of those individuals, namely, Robert Ellin, Aaron Brown and Thomas Kikis.

45.    Yet, Defendant Wade, knowing that these conversations never took place, executed each of the three Amendments and published them.

46.    Then, compounding this falsehood, in cagey fashion, the Third Amendment to the Information Statement states "<u>At each meeting there was a disagreement about the how to deal with terminating employees and how to preserve the</u>

value of the assets" as if to suggest that a series of conversations took place between myself and all of the other stockholder were present.

47.    While there were disagreements at the Board meetings, Defendants characterizations are completely inaccurate. While, Defendant Quan was present at some or all of such meetings as an observer, the discussions were between the five Directors of Broadcaster and not among myself and the Defendant stockholders. In addition, the discussions did not "deal" with the best way to terminate employees. In fact, the discussions dealt with my vote against Defendant Quan's proposal that Broadcaster become an offshore Internet porn Web business and disagreements with Defendant Wade for his refusal to terminate Broadcaster's employees after a 4 to 1 vote of the Board of Directors to do so (with Defendant Wade himself voting in favor of such termination of employees). Additionally, it is important to note that such attempts to explain the basis of the statements made in the Third Amendment do not eliminate or minimize the defamatory nature of the statements contained in the First and Second Amendments which remain permanently available on the EDGAR system.

48.    Thus, the thrice repeated, published statements alleging my lack of experience and business judgment, purportedly determined based upon discussions between myself and the Defendant stockholders is patently false, and such falsity was known to each of the Defendants[3].

49.    It should be noted that even though each Amendment attempts to add further (and untrue) explanations of their acts, the earlier versions of the Information

---

[3] It should be noted that Defendant Wade, who is a Director, is named in this action since he caused the publication of the Information Statements. He is not a party to the Written Consent.

Statement with their defamatory content remain permanently displayed and available on the SEC's EDGAR Web site.

50.     Furthermore, as a securities attorney, I regularly prepare and file documents on EDGAR and I have read the documents filed by 100s of other companies. This is the first time I have ever seen a personal attack in an EDGAR filing.

51.     Thus, each publication of the Information Statement and its Amendments constitutes a separate defamatory act and has an additive effect of increasing the damage to myself, my reputation and my career.

<u>The Statements Imply Experience by the Other Directors</u>

52.     By implication, the statements contained in the three Amendments imply experience managing a "media" company on the part of the three other Directors as a basis of comparison between myself (and Dr. Orza) and the other directors. By innuendo, the Defendants intend to make the public believe that the other three directors are more qualified than I am. In fact, none of the three other Directors have any such relevant experience.

53.     First, it is important to note that Broadcaster <u>is not a media company</u>. In fact, it is merely a Web site company similar to YouTube[4]. In fact, a visit to <u>www.broadcaster.com</u> will show the poor job done by management in developing a Web business.

54.     Furthermore, none of the three other Directors has any prior experience in managing media or an Internet company except (a) for some financial management roles performed by Defendant Mills in prior Internet pornography businesses operated by

---

[4] The term "media company" connotes companies such as NBC, CBS and the New York Times Company which create and distribute original content.

Defendant Quan and (b) Defendant Wade's experience with a former subsidiary which sold clip art over the Internet.

55.    This is as compared to Dr. Orza who was the CEO of a NASDAQ company for over twenty years, has run for the Governorship of Oklahoma and is the Dean of a business school.

56.    It is important to note that I was nominated for the Board of Directors by Defendant Wade himself <u>and that Defendants Quan, Wade, Herman and Galloway voted in favor of my election to the Board based upon the exact same biography they now claim is insufficient to allow me to serve on the Board.</u> This makes Defendant Wade and Quan's not only false but completely inconsistent with their past action.

<u>The Statements are Damaging *Per Se*</u>

57.    As an attorney, I will only have to show defamation *per se* and not have to establish actual damages to sustain an action against the Defendants.

58.    It is respectfully submitted that the statements published by the Defendants regarding my business judgment constitute defamation *per se* both directly and by innuendo.

59.    As a corporate and securities attorney, I am retained by clients to offer business and legal advice to them. The publishing of the Defendant's false statements are a direct and immediate threat to my business reputation and my ability to retain and find clients.

60.    Any existing or potential client researching myself on Google or Yahoo will easily uncover three separate documents in which my business judgment and reputation are falsely questioned and maligned.

61.     It is important to note that each additional publication of such false statements amplifies the incalculable damage I am, and will in the future, suffer because of Defendants' malicious and defamatory attacks on myself.

62.     It is also important to note that once posted to EDGAR, the documents containing the false and defamatory statements are permanent and can never be removed.

63.     Furthermore, since document published on EDGAR are in the public domain, there are numerous Web sites which republish those documents, examples of which are FreeEdgar.com and EdgarOnline.com.  Thus, each publication is further compounded many times, making it more likely to be given heavy weight by the search engines.

64.     In order to comply with SEC regulations, the Defendant will have to publish the Information at least one more time and then also mail a copy to each of Broadcaster's stockholders.  This will further irreparably damage my reputation and my career.

65.     I would also like to point out that I sit on the Board of three other publicly traded companies and the Defendants statements make it highly unlike that I will ever be selected again to be elected to a Board of Directors.

The Statements Were Made With Malice

66.     There can be no question as to the malicious intent of the Defendants who want me removed so that they can complete yet one more self-serving insider transaction without my vocal objections.

67.    In addition, the Third Amendment, which is the most vociferous, was posted the day after I presented the Board of Directors with a 50-page document detailing undisclosed insider transactions at Broadcaster.

## I Face Irreparable Harm

68.    As previously stated, as additional versions of the Information Statement are posted to EDGAR there is an additive effect and the damage to my reputation and career will continue to expand and multiply since it makes it all the more likely that a search engine will display the Information Statements.

69.    Since I will never be able to determine how many clients do not hire myself or my firm because of these defamatory statements, I can never be compensated monetarily.

70.    This it is respectfully submitted that further irreparable harm will occur if the Defendants are not stopped from continuing to publish the defamatory statements.

## A Balancing of the Equities Favors Plaintiff

71.    When balancing the equities, it is apparent that they weigh heavily in favor of granting the relief requested to the Plaintiff.

72.    The continued damage I am suffering has already been shown herein. While, at the same time, the Defendants have no inalienable right to publish false statements in order to achieve their goals.

73.    It is the Defendants that have chosen to include in the Information Statements the clearly defamatory language and then republish it over and over. whatever they please out of malice and to retaliate.

19

74.     Importantly, I am not requesting that the Defendants be blocked from taking corporate actions.  Rather, this application just seeks that no false and defamatory statements be included in further documents published by the Defendants.

75.     In fact, no prejudice will come to Defendant since the requested relief merely requires that they do not further publish any untrue statements contained in the first three Amendments.

76.     Therefore, the balance of equities clearly weighs in favor of the Plaintiff.

77.     There has been no prior request made for this relief.

WHEREFORE, I respectfully request that the Order to Show Cause be granted in its entirety, together with such other and further relief as this Court deems just and proper.


_____
PAUL GOODMAN


Sworn to before me this
15th day of January, 2008


_____
Notary Public

ALFONSO DeCICCO
Notary Public, State of New York
No. 02DE6069851
Qualified in Kings County
Commission Expires 3-18-10


20

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------X
PAUL GOODMAN,

                        Plaintiff,

        -against-

MARTIN WADE, NOLAN QUAN, BLAIR MILLS,
BROADCASTER, INC., GARY HERMAN, BRUCE
GALLOWAY, THOMAS KIKIS, KIKIS FAMILY
FOUNDATION, WILLOW CREEK CAPITAL
MANAGEMENT, TRINAD CAPITAL MASTER
FUND, LTD., AARON BROWN, ANDREW GARRONI,
STRATEGIC TURNAROUND EQUITY PARTNERS, LP
(CAYMAN) AND DIGITAL CREATIVE DEVELOPMENT
CORPORATION,

                        Defendants.
-------------------------------------------------------X

Index No.

Filed: January 15, 2008

Summons With Notice

      YOU ARE HEREBY SUMMONED to serve a notice of appearance on Plaintiff's

attorneys within twenty (20) days after the service of this summons, exclusive of the day of

service, (or within thirty days after service is complete if this summons is not personally

delivered to you within the State of New York); and in case of your failure to appear or answer,

judgment will be taken against you by default for the relief demanded herein.

      TAKE NOTICE THAT the nature of this action and the relief sought is to recover

monetary damages for defamation, defamation per se, prima facie tort, intentional infliction of

emotional distress, negligence, injurious falsehood, tortious interference with prospective

business relations, negligence misstatement, specific performance, injunctive relief and punitive

damages, and that in case of your failure to appear judgment will be taken against you by default

for the sum of TEN MILLION ($10,000,000.00) DOLLARS, plus the costs and disbursements of this action.

Plaintiff designates New York County as the place of trial. The basis of venue designated is the county in which the Plaintiff maintains his principal place of business.

Dated :    New York, New York
           January 15, 2008


PAUL GOODMAN
Plaintiff Pro Se
420 Lexington Avenue
Suite 2320
New York, New York 10170
(212) 661-6800

# EXHIBIT B

Web   Images   Maps   News   Shopping   Mail   more ▾

pGoodman@cszlaw.com | Web History | My Account | Sign out



broadcaster.com virus

Advanced Search

Sponsored Link

**Help with Broadcaster.com Virus Thing please - Windows BBS**
Help with **Broadcaster.com** Virus Thing please Removing Spyware & Viruses.
www.windowsbbs.com/showthread.php?t=63410 - 134k -
Cached - Similar pages - Note this

**Amaena / Broadcaster.com Virus - Windows BBS**
Amaena / **Broadcaster.com** Virus Removing Spyware & Viruses.
www.windowsbbs.com/showthread.php?t=63603 - 102k -
Cached - Similar pages - Note this
[ More results from www.windowsbbs.com ]

**Help!broadcaster.com & Win Anti-virus Popups - Lavasoft Support Forums**
Help!**broadcaster.com** & Win Anti-virus Popups. Options V ... Mozilla Firefox 1 & 2 ,
AVG 7.5 Anti-Virus , Zone Alarm Professional 7 , Spybot - Search And ...
www.lavasoftsupport.com/index.php?showtopic=9713 - 158k -
Cached - Similar pages - Note this

**I keep receiving pages from broadcaster.com, its like a virus and ...**
"I keep receiving pages from **broadcaster.com**, its like a virus and some of the images
are unsavoury.?" - Find the answer to this question and millions more ...
uk.answers.yahoo.com/question/index?qid=20070530084939AASNpTN - 36k -
Cached - Similar pages - Note this

**SWI Forums > 89.188.16.10 + broadcaster.com + 811.com**
**broadcaster.com** 811.com 1. I have NOD32: reacted, block several attacks, but not all
of them ... 9. oh... wait... vundofix has been shut by the virus! ...
forums.spywareinfo.com/loftversion/index.php/t86253.html - 44k -
Cached - Similar pages - Note this

**Help with Broadcaster.com and Amaena.com adware - Safer Networking ...**
Help with **Broadcaster.com** and Amaena.com adware Archives.
forums.spybot.info/showthread.php?t=14241 - 111k - Cached - Similar pages - Note this

**Spyware Infection Has Detected! - TechSpot OpenBoards**
I get popup ads from **broadcaster.com**, it's a wanna-be YouTube site. ... Please don't
post your own virus/spyware problems in this thread. ...
www.techspot.com/vb/topic74675.html - 125k - Cached - Similar pages - Note this

**broadcaster.com popups - Gladiator Security Forum**
I've been getting the **broadcaster.com** popups for the last couple of days.. and it
seems like it's ..... ClamAV devel-20070312 04.03.2007 no virus found ...
gladiator-antivirus.com/forum/index.php?showtopic=52672 - 106k -
Cached - Similar pages - Note this

**spyware from www.broadcaster.com [spybot & ad-aware not catching ...**
spyware from www.**broadcaster.com** [spybot & ad-aware not catching it] System
Security and Privacy.
forum.pcmech.com/showthread.php?t=179179 - 65k - Cached - Similar pages - Note this

**Computing.Net - Another b.whataboutadog.com virus**
I also have the b.whataboutadog virus. I and symantics have been trying to ...
Data\macromedia\Flash Player#SharedObjects\VHKZXG3Ewww.broadcaster.com ...
www.computing.net/security/wwwboard/forum/21717.html - 135k -
Cached - Similar pages - Note this

Goooooooooogle
1 2 3 4 5 6 7 8 9 10   Next

# EXHIBIT C

# BROADCASTER, INC.

## Consent of Stockholders Representing a Majority in Voting Power of the Outstanding Stock Pursuant to Section 228 of the General Corporation Law of the State of Delaware

The undersigned, constituting holders of a majority in voting power of the outstanding shares of Broadcaster, Inc., a Delaware corporation (the "Corporation"), and acting hereunder without the convening of a formal meeting pursuant to Section 228 of the General Corporation Law of the State of Delaware, do hereby consent in writing to the adoption of and do hereby adopt the following resolutions:

WHEREAS, the Board of Directors of the Corporation is presently comprised of Martin R. Wade, III, Richard J. Berman, Blair Mills, Paul Goodman and Dr. Vincent F. Orza, Jr.; and

WHEREAS, the undersigned have deemed it advisable and in the best interests of the Corporation that Dr. Vincent F. Orza, Jr. and Paul Goodman be removed without cause from the Board of Directors of the Corporation;

NOW, THEREFORE, BE IT AND IT HEREBY IS RESOLVED, that as of the Effective Date (as defined below) Dr. Vincent Orza, Jr. and Paul Goodman shall be removed without cause as members of the Board of Directors of the Corporation; and it is further

RESOLVED, that the Corporation be, and hereby is, authorized, empowered and directed to cause an information statement in accordance with Regulation 14C promulgated by the Securities and Exchange Commission (the "SEC") with respect to the actions taken in the foregoing resolution and to file a Preliminary Schedule 14C with the SEC as soon thereafter as practicable and (unless the Corporation receives notice that the Preliminary Schedule 14C will be subject to review by the SEC) to cause the Definitive Schedule 14 C to be filed with the SEC and information statement to be mailed to the Corporation's shareholders in accordance with the rules of the SEC on the first business day that is at least 10 days after the filing of the Preliminary Schedule 14C (the "Mailing Date"). The foregoing resolution shall become effective on the date (the "Effective Date") that is 20 days after the Mailing Date; and it is further

RESOLVED, that Martin Wade, III is hereby authorized to execute and deliver on behalf of the Corporation all such further documents, certificates, or instruments, to take on behalf of the Corporation all such further actions, and to pay on behalf of the Corporation all such expenses that he determines to be necessary or desirable in order to carry out the foregoing resolutions, the execution and delivery of any such documents, certificates, or instruments, the taking of any such actions, and the payment of any such expenses to be conclusive evidence of that determination.

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

[COMPANY NAME] Treative Investment Partners, LP

By:

Name: Sean Deson
Title: Managing Member
Date: 12/31/07
Shares of Common Stock: 312,500

[COMPANY NAME]

By:

Name:
Title:
Date:
Shares of Common Stock:

[COMPANY NAME]

By:

Name:
Title:
Date:
Shares of Common Stock:

RLF1-3257653-3

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

TRINAD CAPITAL MASTER FUND, LTD

By: _____

    Name: Robert Ellin
    Title: Director
    Date: 12/21/2007
    Shares of Common Stock: 562,133


[COMPANY NAME]

By: _____

    Name:
    Title:
    Date:
    Shares of Common Stock:


[COMPANY NAME]

By: _____

    Name:
    Title:
    Date:
    Shares of Common Stock:

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

*Willow creek capital management*

[COMPANY NAME] *WCCP, WC OFFshre Fund, WC Long/Shrt Fund Fund*

By: _____

Name: *Aaron Brown*

Title: *Managing Member*

Date: *12-21-07*

Shares of Common Stock: *2,300,500*

[COMPANY NAME]

By: _____

Name:

Title:

Date:

Shares of Common Stock:

[COMPANY NAME]

By: _____

Name:

Title:

Date:

Shares of Common Stock:

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

Andrew and Catherine Garroni Living Trust

By: _____

Name: Andrew Garroni
Title: Trustee
Date: 12-21-2007
Shares of Common Stock: 25,000

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

[COMPANY NAME] Digital Creative Development Corporation

By: _____

Name: Gary Herman
Title: President
Date: December 21, 2007
Shares of Common Stock: 3,018,579


[COMPANY NAME]

By: _____

Name:
Title:
Date:
Shares of Common Stock:


[COMPANY NAME]

By: _____

Name:
Title:
Date:
Shares of Common Stock:

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

[COMPANY NAME]

By: _____

Name: Gary Herman

Title:

Date: 12/21/07

Shares of Common Stock: 225,000

[COMPANY NAME]

By: _____

Name:

Title:

Date:

Shares of Common Stock:

[COMPANY NAME]

By: _____

Name:

Title:

Date:

Shares of Common Stock:

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

[COMPANY NAME] Strategic Turnaround
Equity Partners, L P (Cayman)

By: _[signature]_

Name: Bruce Galloway
Title: Managing Member of Galloway Capital Management, LLC (General Partner)
Date: 12/21/07
Shares of Common Stock: 605,925

[COMPANY NAME]

By: _____

Name:
Title:
Date:
Shares of Common Stock:

[COMPANY NAME]

By: _____

Name:
Title:
Date:
Shares of Common Stock:

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

[COMPANY NAME]    *Thomas P. Kikis*

By: *Thomas P. Kikis*
    Name: *Thomas P. Kikis*
    Title:
    Date: *13*
    Shares of Common Stock: *7,500*

[COMPANY NAME]    *Kikis Family Foundation*

By: *Thomas P. Kikis*
    Name:
    Title:
    Date: *12/21/07*
    Shares of Common Stock: *100,000*

[COMPANY NAME]

By: _____
    Name:
    Title:
    Date:
    Shares of Common Stock:

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

Broadcaster, LLC

By: _____

Name: Nolan Quan
Title: Managing Member
Date: 12-21-2007
Shares of Common Stock: 9,640,000

12-21-2007

Software People, LLC

By: _____

Name: Nolan Quan
Title: Managing Member
Date: 12-21-2007
Shares of Common Stock: 5,120,000

12-21-2007

Trans Global Media, LLC

By: _____

Name: Nolan Quan
Title: Managing Member
Date: 12-21-2007
Shares of Common Stock: 5,120,000

12-21-2007

Accessmedia Technologies, LLC

By: _____

Name: Nolan Quan
Title: Managing Member
Date: 12-21-2007
Shares of Common Stock: 2,560,000

12-21-2007

RLF1 3237653-3

Rosen Quan Family Trust

By: _____

Name: Nolan Quan
Title: Trustee
Date:    12-21-2007          12-21-2007
Shares of Common Stock: 50,000

**EXHIBIT D**

PRE 14C 1 broadcaster14c.htm PRELIMINARY

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### SCHEDULE 14C INFORMATION

**Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934**

Check the appropriate box:

- ☒  Preliminary Information Statement
- ✳  Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))
- ✳  Definitive Information Statement

# BROADCASTER, INC.
### (Name of Registrant As Specified In Its Charter)

Payment of Filing Fee (Check the Appropriate Box):

- ☒  No fee required
- ✳  Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

1.  Title of each class of securities to which transaction applies:

2.  Aggregate number of securities to which transaction applies:

3.  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11

4.  Proposed maximum aggregate value of transaction

5.  Total fee paid

✳   Check box if any party of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

**BROADCASTER, INC.**
**9201 Oakdale Avenue, Suite 200**
**Chatsworth, California 91311**
**(818) 206-9274**

### NOTICE OF STOCKHOLDER ACTION BY WRITTEN CONSENT

TO ALL STOCKHOLDERS OF BROADCASTER, INC.:

The purpose of this letter is to inform you that on December 21, 2007 the holders of a majority in voting power of the outstanding stock of Broadcaster, Inc. (the "Corporation") executed and delivered a written consent adopting a resolution to remove without cause two directors, Dr. Vincent Orza and Paul Goodman, as members of the board of directors of the Corporation.

The holders of shares representing 58% of our voting power have executed a written consent in favor of the removal of two directors from the Board of Directors of the Corporation. The removal of the directors is described in greater detail in the information statement accompanying this notice. The consents that we have received constitute the only stockholder approval required to remove the directors under the General Corporation Law of the State of Delaware and the Corporation's certificate of incorporation and bylaws. In accordance with the requirements of Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, the removal of directors provided for in the consent will not be effective until January ____, 2008.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** Because the written consent of holders of a majority in voting power of the Corporation's outstanding stock satisfies all applicable stockholder voting requirements, we are not asking you for a proxy; please do not send us one.

The accompanying information statement is for information purposes only. Please read it carefully.

January   , 2008

/s/ MARTIN WADE, III
_____
Martin Wade, III
Chairman and Chief Executive Officer

**BROADCASTER, INC.**
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

**INFORMATION STATEMENT**

January  , 2008

### WE ARE NOT ASKING YOU FOR A PROXY AND
### YOU ARE REQUESTED NOT TO SEND US A PROXY.

This information statement is being mailed on or about January ___, 2008, to the stockholders of record of Broadcaster, Inc. at the close of business on December 21, 2007 (the "Record Date"). This information statement is being sent to you for information purposes only. No action is requested or required on your part. This information statement constitutes notice to our stockholders of corporate action by stockholders by written consent, as required by Section 228 of the General Corporation Law of the State of Delaware and our bylaws.

This information statement is being furnished to you to inform you that holders of shares representing a majority of the voting power of shares of our common stock, par value $.001 per share, have adopted, by written consent, resolutions to remove without cause two directors as members of the board of directors of Broadcaster, Inc. (the "Company").

As of the date hereof, we had 300,000,000 shares of common stock authorized, of which 51,342,221 shares were outstanding. Each outstanding share of common stock is entitled to one vote per share.

The approval of the holders of a majority of the outstanding shares of our common stock is required to remove Dr. Vincent Orza and Paul Goodman. Under Delaware law and our organizational documents, the Corporation's stockholders are permitted to act by written consent in lieu of a meeting to effect such removal. Written consents to remove Dr. Vincent Orza and Paul Goodman were delivered to the Corporation from stockholders holding approximately 58% of the voting power of the Corporation's common stock.

We will bear the expenses relating to this information statement, including expenses in connection with preparing and mailing this information statement and all documents that now accompany or may in the future supplement it. We contemplate that brokerage houses, custodians, nominees, and fiduciaries will forward this information statement to the beneficial owners of our common stock held of record by these persons and we will reimburse them for their reasonable expenses incurred in this process.

This Information Statement is being furnished by the Company pursuant to Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, and in connection with certain actions approved by written consent, dated December 21, 2007, of stockholders holding a majority in voting power of the Corporation's outstanding common stock to remove the directors described above pursuant to the General Corporation Law of the State of Delaware and the Company's Restated Certificate of Incorporation, as amended (the "Certificate of Incorporation") and its Amended and Restated By-laws, as amended (the "Bylaws").

We are distributing this Information Statement to our stockholders in full satisfaction of the notice requirements of Section 228(e) of the General Corporation Law of the State of Delaware. No additional action will be undertaken by us with respect to the receipt of the written consent, and our stockholders are not entitled to any appraisal rights under Delaware law, our Certificate of Incorporation or our Bylaws as a result of the actions to be taken pursuant to the written consent described above.

Only one information statement is being delivered to multiple stockholders sharing an address, unless we have received contrary instructions from one or more of the stockholders. We will undertake to deliver promptly upon written or oral request a separate copy of the information statement to a stockholder at a shared address to which a single copy of the information statement was delivered. You may make a written or oral request by sending a written notification to our principal executive offices stating your name, your shared address, and the address to which we should direct the additional copy of the information statement or by calling our principal executive offices at (818) 206-9274. If multiple stockholders sharing an address have received one copy of this information statement and would prefer us to mail each stockholder a separate copy of future mailings, you may send notification to or call our principal executive offices. Additionally, if current stockholders with a shared address received multiple copies of this information statement and would prefer us to mail one copy of future mailings to stockholders at the shared address, notification of that request may also be made by mail or telephone call to our principal executive offices.

## DESCRIPTION OF ACTIONS TAKEN

### Written Consent Executed and Delivered by the Consenting Stockholders

On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement.

### Vote Required; Manner of Approval

Under our Certificate of Incorporation and the General Corporation Law of the State of Delaware, directors may be removed from our Board of Directors, with or without cause, by the holders of a majority in voting power of the shares entitled to vote at an election of directors. The Delaware General Corporation Law and our bylaws provide that stockholders may take action without a meeting of stockholders if a consent or consents in writing, setting forth the action so taken, signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting of stockholders at which all shares entitled to vote thereon were present and voted. As a result, the removal of directors from our Board of Directors may be effected by a written consent or consents executed by the holders of a majority of the outstanding shares of our Common Stock. As of December 21, 2007, 9 people held of record 58% of the outstanding shares of our Common Stock. As such, the written consent executed and delivered on December 21, 2007 is sufficient to remove Dr. Vincent Orza and Paul Goodman from the Corporation's Board of Directors and no further vote, approval or consent of stockholders is required to approve this action. The Delaware General Corporation Law provides that the written consent is effective when executed by the holders of the number of shares of Common Stock required to take the action and delivered to the Company. Under Rule 14c-2 promulgated under the Securities Exchange Act of 1934, as amended, the action taken by the stockholders to remove Dr. Vincent Orza and Paul Goodman as members of our Board of Directors cannot take effect until 20 days after this Information Statement is sent to our Stockholders. Therefore, the removal of Dr. Vincent Orza and Paul Goodman from the board of directors will be effective as of January    , 2008. Delaware law does not have a similar requirement.

### Outstanding Voting Stock of the Company

As of December 21, 2007, there were 51,342,221 shares of Common Stock issued and outstanding. Each share of Common Stock entitles the holder to one vote on all matters submitted to the shareholders.

## OUR BOARD OF DIRECTORS

The action by written consent removes Dr. Vincent Orza and Paul Goodman from our Board of Directors as of January ____, 2008. Following the removal of Dr. Orza, and Paul Goodman the remaining directors of the Company will be Martin Wade, Blair Mills, and Richard Berman. Our bylaws require that the number of Directors be at least three. After the removal, the Board of Directors will be composed of the requisite number of Directors specified in our bylaws. Additional information regarding each of our directors is set forth below.

### Directors Removed

*Vincent F. Orza, Jr., age 57.* Dr. Orza became a director of Broadcaster in July 2007. Dr. Orza is Dean of the Meinders School of Business of Oklahoma City University. Prior to his current position with Oklahoma City University, Dr. Orza served as a trustee of Oklahoma City University, taught economics and marketing for 16 years at the University of Central Oklahoma and received an Ed.D. degree from the University of Oklahoma. Dr. Orza also serves as a news anchor for an Oklahoma City network affiliate and is a regular columnist for a local newspaper. He brings public company experience having been the founder, Chairman and CEO of Eateries, Inc., an operator and franchisor of a chain of restaurants operating in 20 states, which traded on The Nasdaq Stock Market before this company went private in 2003. Dr. Orza ran twice for Governor of Oklahoma.

*Paul Goodman. age 46.* Mr. Goodman became a director in May 2007. Mr. Goodman is a partner in the New York City law firm of Cyruli Shanks & Zizmor LLP and concentrates on the representation of Internet and new media clients handling a wide range of corporate and financing transactions including venture capital, angel round investing and mergers and acquisitions. He was formerly a faculty member of the Queens College Computer Science Department and is the author of five books on computer programming. Mr. Goodman became a director of Maxus Technology Corporation in December 2006. He has also been on the board of directors of SecureLogic Corp. since 1999. He serves on the Audit Committee of each of these corporations. Mr. Goodman became president and sole director of Activeworlds Corp. (OTCBB: AWLD.OB) in July 2007. Mr. Goodman received his law degree from the City University of New York and also holds a Bachelors and Masters Degree in Computer Science.

### Directors Not Removed

*Martin R. Wade, III, age 57.* Mr. Wade became a director and Chief Executive Officer of Broadcaster in August 2001. He has a proven track record in mergers and acquisitions and investment banking. Mr. Wade served from 1998 to 2000 as an M&A banker at Prudential Securities and from 1996 to 1998 as a Managing Director in Mergers and Acquisition at Salomon Brothers. From 1991 to 1996, Mr. Wade was National Head of Investment Banking at Price Waterhouse, LLC. Mr. Wade also spent six years in the M&A department at Bankers Trust and eight years at Lehman Brothers Kuhn Loeb. Mr. Wade is credited with participating in over 200 M&A transactions involving various clients such as, Nike, Cornerstone National Gas Company, Landmark Graphics and Redken Laboratories, Inc. He also serves on the Boards of Directors for Alliance One International, Inc. (NYSE: AOI), NexMed (NasdaqCM: NEXM), Advaxis, Inc. (OTCBB:ADXS.OB) and Command Security Corp (AMEX: MOC).

*Richard J. Berman, age 65.* Mr. Berman became a director of Broadcaster in February 2002. His business career spans over 35 years of venture capital, management and merger and acquisitions experience. In the last five years, Mr. Berman has served as a professional director and/or officer of about a dozen public and private companies. He is currently Chief Executive Officer of NexMed (NasdaqCM: NEXM), a biotech company; Chairman of National Investment Managers, a public company in pension administration and investment management; and Chairman of Candidate Resources, a private company delivering HR services over the web. The public companies that Mr. Berman is a director of are Dyadic International, Inc. (AMEX: DIL), Broadcaster, Inc, Easylink Services International Corp. (NasdaqCM: ESIC), MediaBay, Inc. (OTC: MBAY.PK), NexMed, Inc. (NasdaqCM: NEXM), GVI Security Solutions Inc. (OTCBB: GVSS.OB), National Investment Managers (OTCBB: NIVM.OB), Nayna Networks, Inc. (OTCBB: NAYN.OB) and Advaxis, Inc (OTCBB: ADXS.OB). From 1998 - 2000, he was employed by Internet Commerce Corporation as Chairman and CEO. Previously, Mr. Berman worked at Goldman Sachs; was Senior Vice President of Bankers Trust Company, where he started the M&A and Leveraged Buyout Departments; created the largest battery company in the world by merging Prestolite, General Battery and Exide to form Exide (NYSE); helped create what is now Soho (NYC) by developing five buildings; and advised on over $4 billion of M&A transactions. He is a past Director of the Stern School of Business of NYU.

*Blair Mills. age 43.* Mr. Mills became a director in May 2007. Mr. Mills joined the company in June 2006 as Chief Financial Officer. Previously, he served as Chief Financial Officer of AccessMedia beginning in May 2005. Prior to that date, Mr. Mills served in various management positions at several Internet-based businesses, including most recently Longview Media, Inc. from September 2000 through September 2006. Mr. Mills has also served as an independent consultant to small businesses and emerging growth companies. Mr. Mills is a Chartered Accountant in Canada and a Certified Public Accountant in Illinois

## SECURITY OWNERSHIP

The following table sets forth, as of December 21, 2007 information concerning the beneficial ownership of common stock by each director of the Company, the Chief Executive Officer and the other compensated executive officers provided that their annual compensation exceeds $100,000, and all directors and executive officers as a group. Unless otherwise indicated below, the business address for each named individual is the principal executive office address, which is 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311. According to rules adopted by the Securities and Exchange Commission, a person is the "beneficial owner" of securities if he or she has, or shares, the power to vote such securities or to direct their investment. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

The table also sets forth, as of December 21, 2007 the name, address, stock ownership and voting power of each person or group of persons known by the Company to own beneficially more than 5% of the outstanding shares of Common Stock. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

| Name and Address(1) | Amount and Nature Of Beneficial Ownership | Percentage of Class |
|---|---|---|
| Martin Wade, III (2) | 198,333 | * |
| Blair Mills | 75,000 | * |
| Richard Berman (3) | 296,250 | * |
| Paul Goodman (3) | 6,250 | * |
| Vincent F. Orza, Jr. (4) | 32,750 | * |
| Nolan Quan (5) | 22,490,000 | 43.8% |
| Michael Gardner (6) | 10,697,150 | 20.8% |
| Digital Creative Development Corp (7) | 3,018,579 | 5.9% |
| All officers and directors as a group (3 people) | 608,583 | 1.87% |

(1)   Unless otherwise indicated, the address for each is c/o Broadcaster, Inc., 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311
(2)   c/o Bay tree Capital, The Trump Building, 40 Wall Street, New York, NY 10005
(3)   420 Lexington Avenue, Suite 450, New York, NY 10170
(4)   2501 n. Blackwelder, Oklahoma City, OK 73106
(5)   Represents 22,490,000 shares, 50,000 of which are owned by a family trust of which Mr. Quan is a trustee and the balance by the limited liability companies, and Mr. Nolan Quan, one of our principal shareholders, is the managing member of four LLCs, Broadcaster LLC 9,640,000 shares, Software People LLC 5,120,000 shares, Trans Global Media LLC 5,120,000 shares and Accessmedia Technologies LLC 2,560,000 shares.
(6)   Represents 10,647,150 shares, including 1,875,000 shares owned by Baytree. The numbers owned of record and beneficially by Mr. Gardner do not include 1,544,594 shares of our common stock owned by MBYI Liquidating Trust. Mr. Gardner owns a 6.7% interest in the trust as a result of an unrelated transaction, but is not a beneficial owner of the shares under the rules of the SEC. The shares held by the trust may be publicly sold at any time without restriction.

(7)  720 Fifth Avenue, 10th Floor, New York, NY 10019

## INTEREST OF CERTAIN PERSONS IN THE REMOVAL

The security ownership of certain beneficial owners and management are set forth above in the Section entitled "Security Ownership of Certain Beneficial Owners and Management." Except as disclosed above, none of the following persons has any substantial interest, direct or indirect, in the matter to be acted upon:

(1)     Any director or officer of the Company since January 1, 2007;
(2)     Associates or affiliates of the persons described in (1) and (2).

## NO APPRAISAL RIGHTS

Our Stockholders are not entitled to appraisal rights with respect to the actions to be taken pursuant to the written consent under Delaware law, our Certificate of Incorporation or our Bylaws.

## DISTRIBUTION OF INFORMATION STATEMENT

We will pay the costs of distributing this Information Statement to our stockholders. The distribution will be made by mail.

## FORWARD-LOOKING STATEMENTS

This information statement may contain certain "forward-looking" statements (as that term is defined in the Private Securities Litigation Reform Act of 1995 or by the U.S. Securities and Exchange Commission in its rules, regulations and releases) representing our expectations or beliefs regarding our company. These forward-looking statements include, but are not limited to, statements concerning our operations, economic performance, financial condition, and prospects and opportunities. For this purpose, any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the generality of the foregoing, words such as "may," "will," "expect," "believe," "anticipate," "intend," "could," "estimate," "might," or "continue" or the negative or other variations thereof or comparable terminology are intended to identify forward-looking statements. These statements, by their nature, involve substantial risks and uncertainties, certain of which are beyond our control, and actual results may differ materially depending on a variety of important factors, including factors discussed in this and other of our filings with the U.S. Securities and Exchange Commission.

## ADDITIONAL INFORMATION

We are subject to the informational reporting requirements of the Exchange Act and file reports, proxy statements and other information required under the Exchange Act with the SEC. Such reports, proxy statements and other information may be inspected and copied at the public reference facilities maintained by the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. Copies of such materials and information from the SEC can be obtained at existing published rates from the Public Reference Section of the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. The SEC also maintains a site on the Internet at http://www.sec.gov that contains reports, proxy and information statements and other information regarding registrants that file electronically with the SEC which may be downloaded free of charge.

## INCORPORATION OF FINANCIAL INFORMATION

We "incorporate by reference" into this Information Statement the information in certain documents we file with the SEC, which means that we can disclose important information to you by referring you to those documents. We incorporate by reference into this information statement the following documents we have previously filed with the SEC: our quarterly report on Form 10-QSB for the quarterly period ended September 30, 2007 and our Registration Statement on Form SB-2. You may request a copy of these filings at no cost, by writing or telephoning us at the following address:

Broadcaster, Inc.
9201 Oakdale Avenue
Suite 200
Chatswoth, California 91311

As we obtained the requisite stockholder vote for the removal of the director described in this information statement upon delivery of written consents from the holders of a majority of our outstanding shares of common

stock, **WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** This information statement is for informational purposes only. Please read this information statement carefully.

**EXHIBIT E**

PRER14C 1 broadcaster14c.htm REVISED PRELIMINARY

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**SCHEDULE 14C INFORMATION**
(Amendment No. 1)

**Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934**

Check the appropriate box:

- ☒ Preliminary Information Statement
- ✳ Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))
- ✳ Definitive Information Statement

# BROADCASTER, INC.
(Name of Registrant As Specified In Its Charter)

Payment of Filing Fee (Check the Appropriate Box):

- ☒ No fee required
- ✳ Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

1. Title of each class of securities to which transaction applies:

2. Aggregate number of securities to which transaction applies:

3. Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11

4. Proposed maximum aggregate value of transaction

5. Total fee paid

✳ Check box if any party of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

**BROADCASTER, INC.**
9201 Oakdale Avenue, Suite 200
Chatsworth, California 91311
(818) 206-9274

## NOTICE OF STOCKHOLDER ACTION BY WRITTEN CONSENT

TO ALL STOCKHOLDERS OF BROADCASTER, INC.:

The purpose of this letter is to inform you that on December 21, 2007 the holders of a majority in voting power of the outstanding stock of Broadcaster, Inc. (the "Corporation") executed and delivered a written consent adopting a resolution to remove without cause two directors, Dr. Vincent Orza and Paul Goodman, as members of the board of directors of the Corporation.

The holders of shares representing 58% of our voting power have executed a written consent in favor of the removal of two directors from the Board of Directors of the Corporation. The removal of the directors is described in greater detail in the information statement accompanying this notice. The consents that we have received constitute the only stockholder approval required to remove the directors under the General Corporation Law of the State of Delaware and the Corporation's certificate of incorporation and bylaws. In accordance with the requirements of Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, the removal of directors provided for in the consent will not be effective until January __, 2008.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY**. Because the written consent of holders of a majority in voting power of the Corporation's outstanding stock satisfies all applicable stockholder voting requirements, we are not asking you for a proxy; please do not send us one.

The accompanying information statement is for information purposes only. Please read it carefully.

January __, 2008

/s/ MARTIN WADE, III
Martin Wade, III
Chairman and Chief Executive
Officer

**BROADCASTER, INC.**
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311


**INFORMATION STATEMENT**

January __, 2008

## WE ARE NOT ASKING YOU FOR A PROXY AND
## YOU ARE REQUESTED NOT TO SEND US A PROXY.

This information statement is being mailed on or about January __, 2008, to the stockholders of record of Broadcaster, Inc. at the close of business on December 21, 2007 (the "Record Date"). This information statement is being sent to you for information purposes only. No action is requested or required on your part. This information statement constitutes notice to our stockholders of corporate action by stockholders by written consent, as required by Section 228 of the General Corporation Law of the State of Delaware and our bylaws.

This information statement is being furnished to you to inform you that holders of shares representing a majority of the voting power of shares of our common stock, par value $.001 per share, have adopted, by written consent, resolutions to remove without cause two directors as members of the board of directors of Broadcaster, Inc. (the "Company").

As of the date hereof, we had 300,000,000 shares of common stock authorized, of which 51,342,221 shares were outstanding. Each outstanding share of common stock is entitled to one vote per share.

The approval of the holders of a majority of the outstanding shares of our common stock is required to remove Dr. Vincent Orza and Paul Goodman. Under Delaware law and our organizational documents, the Corporation's stockholders are permitted to act by written consent in lieu of a meeting to effect such removal. Written consents to remove Dr. Vincent Orza and Paul Goodman were delivered to the Corporation from stockholders holding approximately 58% of the voting power of the Corporation's common stock.

We will bear the expenses relating to this information statement, including expenses in connection with preparing and mailing this information statement and all documents that now accompany or may in the future supplement it. We contemplate that brokerage houses, custodians, nominees, and fiduciaries will forward this information statement to the beneficial owners of our common stock held of record by these persons and we will reimburse them for their reasonable expenses incurred in this process.

This Information Statement is being furnished by the Company pursuant to Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, and in connection with certain actions approved by written consent, dated December 21, 2007, of stockholders holding a majority in voting power of the Corporation's outstanding common stock to remove the directors described above pursuant to the General Corporation Law of the State of Delaware and the Company's Restated Certificate of Incorporation, as amended (the "Certificate of Incorporation") and its Amended and Restated By-laws, as amended (the "Bylaws").

We are distributing this Information Statement to our stockholders in full satisfaction of the notice requirements of Section 228(e) of the General Corporation Law of the State of Delaware. No additional action will be undertaken by us with respect to the receipt of the written consent, and our stockholders are not entitled to any appraisal rights under Delaware law, our Certificate of Incorporation or our Bylaws as a result of the actions to be taken pursuant to the written consent described above.

Only one information statement is being delivered to multiple stockholders sharing an address, unless we have received contrary instructions from one or more of the stockholders. We will undertake to deliver promptly upon written or oral request a separate copy of the information statement to a stockholder at a shared address to which a single copy of the information statement was delivered. You may make a written or oral request by sending a written notification to our principal executive offices stating your name, your shared address, and the address to which we should direct the additional copy of the information statement or by calling our principal executive offices at (818) 206-9274. If multiple stockholders sharing an address have received one copy of this information statement and would prefer us to mail each stockholder a separate copy of future mailings, you may send notification to or call our principal executive offices. Additionally, if current stockholders with a shared address received multiple copies of this information statement and would prefer us to mail one copy of future mailings to stockholders at the shared address, notification of that request may also be made by mail or telephone call to our principal executive offices.

## DESCRIPTION OF ACTIONS TAKEN

### Written Consent Executed and Delivered by the Consenting Stockholders

On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors and the fact that based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry. A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement.

### Vote Required; Manner of Approval

Under our Certificate of Incorporation and the General Corporation Law of the State of Delaware, directors may be removed from our Board of Directors, with or without cause, by the holders of a majority in voting power of the shares entitled to vote at an election of directors. The Delaware General Corporation Law and our bylaws provide that stockholders may take action without a meeting of stockholders if a consent or consents in writing, setting forth the action so taken, signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting of stockholders at which all shares entitled to vote thereon were present and voted. As a result, the removal of directors from our Board of Directors may be effected by a written consent or consents executed by the holders of a majority of the outstanding shares of our Common Stock. As of December 21, 2007, 9 people held of record 58% of the outstanding shares of our Common Stock. As such, the written consent executed and delivered on December 21, 2007 is sufficient to remove Dr. Vincent Orza and Paul Goodman from the Corporation's Board of Directors and no further vote, approval or consent of stockholders is required to approve this action. The Delaware General Corporation Law provides that the written consent is effective when executed by the holders of the number of shares of Common Stock required to take the action and delivered to the Company. Under Rule 14c-2 promulgated under the Securities Exchange Act of 1934, as amended, the action taken by the stockholders to remove Dr. Vincent Orza and Paul Goodman as members of our Board of Directors cannot take effect until 20 days after this Information Statement is sent to our Stockholders. Therefore, the removal of Dr. Vincent Orza and Paul Goodman from the board of directors will be effective as of January __, 2008. Delaware law does not have a similar requirement.

### Outstanding Voting Stock of the Company

As of December 21, 2007, there were 51,342,221 shares of Common Stock issued and outstanding. Each share of Common Stock entitles the holder to one vote on all matters submitted to the shareholders.

# OUR BOARD OF DIRECTORS

The action by written consent removes Dr. Vincent Orza and Paul Goodman from our Board of Directors as of January ___, 2008. Following the removal of Dr. Orza, and Paul Goodman the remaining directors of the Company will be Martin Wade, Blair Mills, and Richard Berman. Our bylaws require that the number of Directors be at least three. After the removal, the Board of Directors will be composed of the requisite number of Directors specified in our bylaws. Additional information regarding each of our directors is set forth below.

## Directors Removed

*Vincent F. Orza, Jr., age 57.* Dr. Orza became a director of Broadcaster in July 2007. Dr. Orza is Dean of the Meinders School of Business of Oklahoma City University. Prior to his current position with Oklahoma City University, Dr. Orza served as a trustee of Oklahoma City University, taught economics and marketing for 16 years at the University of Central Oklahoma and received an Ed.D. degree from the University of Oklahoma. Dr. Orza also serves as a news anchor for an Oklahoma City network affiliate and is a regular columnist for a local newspaper. He brings public company experience having been the founder, Chairman and CEO of Eateries, Inc., an operator and franchisor of a chain of restaurants operating in 20 states, which traded on The Nasdaq Stock Market before this company went private in 2003. Dr. Orza ran twice for Governor of Oklahoma.

*Paul Goodman. age 46.* Mr. Goodman became a director in May 2007. Mr. Goodman is a partner in the New York City law firm of Cyruli Shanks & Zizmor LLP and concentrates on the representation of Internet and new media clients handling a wide range of corporate and financing transactions including venture capital, angel round investing and mergers and acquisitions. He was formerly a faculty member of the Queens College Computer Science Department and is the author of five books on computer programming. Mr. Goodman became a director of Maxus Technology Corporation in December 2006. He has also been on the board of directors of SecureLogic Corp. since 1999. He serves on the Audit Committee of each of these corporations. Mr. Goodman became president and sole director of Activeworlds Corp. (OTCBB: AWLD.OB) in July 2007. Mr. Goodman received his law degree from the City University of New York and also holds a Bachelors and Masters Degree in Computer Science.

## Directors Not Removed

*Martin R. Wade, III, age 57.* Mr. Wade became a director and Chief Executive Officer of Broadcaster in August 2001. He has a proven track record in mergers and acquisitions and investment banking. Mr. Wade served from 1998 to 2000 as an M&A banker at Prudential Securities and from 1996 to 1998 as a Managing Director in Mergers and Acquisition at Salomon Brothers. From 1991 to 1996, Mr. Wade was National Head of Investment Banking at Price Waterhouse, LLC. Mr. Wade also spent six years in the M&A department at Bankers Trust and eight years at Lehman Brothers Kuhn Loeb. Mr. Wade is credited with participating in over 200 M&A transactions involving various clients such as, Nike, Cornerstone National Gas Company, Landmark Graphics and Redken Laboratories, Inc. He also serves on the Boards of Directors for Alliance One International, Inc. (NYSE: AOI), NexMed (NasdaqCM: NEXM), Advaxis, Inc. (OTCBB:ADXS.OB) and Command Security Corp (AMEX: MOC).

*Richard J. Berman, age 65.* Mr. Berman became a director of Broadcaster in February 2002. His business career spans over 35 years of venture capital, management and merger and acquisitions experience. In the last five years, Mr. Berman has served as a professional director and/or officer of about a dozen public and private companies. He is currently Chief Executive Officer of NexMed (NasdaqCM: NEXM), a biotech company; Chairman of National Investment Managers, a public company in pension administration and investment management; and Chairman of Candidate Resources, a private company delivering HR services over the web. The public companies that Mr. Berman is a director of are Dyadic International, Inc. (AMEX: DIL), Broadcaster, Inc, Easylink Services International Corp. (NasdaqCM: ESIC), MediaBay, Inc. (OTC: MBAY.PK), NexMed, Inc. (NasdaqCM: NEXM), GVI Security Solutions Inc. (OTCBB: GVSS.OB), National Investment Managers (OTCBB: NIVM.OB), Nayna Networks, Inc. (OTCBB: NAYN.OB) and Advaxis, Inc (OTCBB: ADXS.OB). From 1998 - 2000, he was employed by Internet Commerce Corporation as Chairman and CEO. Previously, Mr. Berman worked at Goldman Sachs; was Senior Vice President of Bankers Trust Company, where he started the M&A and Leveraged Buyout Departments; created the largest battery company in the world by merging Prestolite, General Battery and Exide to form Exide (NYSE); helped create what is now Soho (NYC) by developing five buildings; and advised on over $4 billion of M&A transactions. He is a past Director of the Stern School of Business of NYU.

*Blair Mills.* *age 43.* Mr. Mills became a director in May 2007. Mr. Mills joined the company in June 2006 as Chief Financial Officer. Previously, he served as Chief Financial Officer of AccessMedia beginning in May 2005. Prior to that date, Mr. Mills served in various management positions at several Internet-based businesses, including most recently Longview Media, Inc. from September 2000 through September 2006. Mr. Mills has also served as an independent consultant to small businesses and emerging growth companies. Mr. Mills is a Chartered Accountant in Canada and a Certified Public Accountant in Illinois.

## SECURITY OWNERSHIP

The following table sets forth, as of December 21, 2007 information concerning the beneficial ownership of common stock by each director of the Company, the Chief Executive Officer and the other compensated executive officers provided that their annual compensation exceeds $100,000, and all directors and executive officers as a group. Unless otherwise indicated below, the business address for each named individual is the principal executive office address, which is 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311. According to rules adopted by the Securities and Exchange Commission, a person is the "beneficial owner" of securities if he or she has, or shares, the power to vote such securities or to direct their investment. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

The table also sets forth, as of December 21, 2007 the name, address, stock ownership and voting power of each person or group of persons known by the Company to own beneficially more than 5% of the outstanding shares of Common Stock. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

| Name and Address(1) | Amount and Nature Of Beneficial Ownership | Percentage of Class |
|---|---|---|
| Martin Wade, III | 198,333 | * |
| Blair Mills | 75,000 | * |
| Richard Berman (2) | 296,250 | * |
| Paul Goodman (3) | 6,250 | * . |
| Vincent F. Orza, Jr. (4) | 32,750 | * |
| Nolan Quan (5) | 22,490,000 | 43.8% |
| Michael Gardner (6) | 10,697,150 | 20.8% |
| Digital Creative Development Corp (7) | 3,018,579 | 5.9% |
| All officers and directors as a group (3 people) | 608,583 | 1.87% |

(1)  Unless otherwise indicated, the address for each is c/o Broadcaster, Inc., 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311.
(2)  420 Lexington Avenue, Suite 450, New York, NY 10170.
(3)  420 Lexington Avenue, Suite 2330, New York, NY 10170
(4)  2501 n. Blackwelder, Oklahoma City, OK 73106.
(5)  Represents 22,490,000 shares, 50,000 of which are owned by a family trust of which Mr. Quan is a trustee and the balance by the limited liability companies, and Mr. Nolan Quan, one of our principal shareholders, is the managing member of four LLCs, Broadcaster LLC 9,640,000 shares, Software People LLC 5,120,000 shares, Trans Global Media LLC 5,120,000 shares and Accessmedia Technologies LLC 2,560,000 shares.
(6)  c/o Baytree Capital, The Trump Building, 40 Wall Street, New York, NY 10005. Represents 10,647,150 shares, including 1,875,000 shares owned by Baytree. The numbers owned of record and beneficially by Mr. Gardner do not include 1,544,594 shares of our common stock owned by MBYI Liquidating Trust. Mr. Gardner owns a 6.7% interest in the trust as a result of an unrelated transaction, but is not a beneficial owner of the shares under the rules of the SEC. The shares held by the trust may be publicly sold at any time without restriction.

(7)    720 Fifth Avenue, 10th Floor, New York, NY 10019.

## INTEREST OF CERTAIN PERSONS IN THE REMOVAL

The security ownership of certain beneficial owners and management are set forth above in the Section entitled "Security Ownership of Certain Beneficial Owners and Management." Except as disclosed above, none of the following persons has any substantial interest, direct or indirect, in the matter to be acted upon:

    (1)      Any director or officer of the Company since January 1, 2007;

    (2)      Associates or affiliates of the persons described in (1) and (2).

## NO APPRAISAL RIGHTS

Our Stockholders are not entitled to appraisal rights with respect to the actions to be taken pursuant to the written consent under Delaware law, our Certificate of Incorporation or our Bylaws.

## DISTRIBUTION OF INFORMATION STATEMENT

We will pay the costs of distributing this Information Statement to our stockholders. The distribution will be made by mail.

## FORWARD-LOOKING STATEMENTS

This information statement may contain certain "forward-looking" statements (as that term is defined in the Private Securities Litigation Reform Act of 1995 or by the U.S. Securities and Exchange Commission in its rules, regulations and releases) representing our expectations or beliefs regarding our company. These forward-looking statements include, but are not limited to, statements concerning our operations, economic performance, financial condition, and prospects and opportunities. For this purpose, any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the generality of the foregoing, words such as "may," "will," "expect," "believe," "anticipate," "intend," "could," "estimate," "might," or "continue" or the negative or other variations thereof or comparable terminology are intended to identify forward-looking statements. These statements, by their nature, involve substantial risks and uncertainties, certain of which are beyond our control, and actual results may differ materially depending on a variety of important factors, including factors discussed in this and other of our filings with the U.S. Securities and Exchange Commission.

## ADDITIONAL INFORMATION

We are subject to the informational reporting requirements of the Exchange Act and file reports, proxy statements and other information required under the Exchange Act with the SEC. Such reports, proxy statements and other information may be inspected and copied at the public reference facilities maintained by the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. Copies of such materials and information from the SEC can be obtained at existing published rates from the Public Reference Section of the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. The SEC also maintains a site on the Internet at http://www.sec.gov that contains reports, proxy and information statements and other information regarding registrants that file electronically with the SEC which may be downloaded free of charge.

## INCORPORATION OF FINANCIAL INFORMATION

We "incorporate by reference" into this Information Statement the information in certain documents we file with the SEC, which means that we can disclose important information to you by referring you to those documents. We incorporate by reference into this information statement the following documents we have previously filed with the SEC: our quarterly report on Form 10-QSB for the quarterly period ended September 30, 2007 and our Registration Statement on Form SB-2. You may request a copy of these filings at no cost, by writing or telephoning us at the following address:

Broadcaster, Inc.
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

As we obtained the requisite stockholder vote for the removal of the director described in this information statement upon delivery of written consents from the holders of a majority of our outstanding shares of common stock, **WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** This information statement is for informational purposes only. Please read this information statement carefully.

**EXHIBIT F**

PRER14C 1 broadcasterprer14ca2.htm AMEND NO. 2 OF FORM PRER14C
**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**SCHEDULE 14C INFORMATION**
(Amendment No. 2 )

**Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934**

Check the appropriate box:

☒     Preliminary Information Statement
✱     Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))
✱     Definitive Information Statement

# BROADCASTER, INC.
(Name of Registrant As Specified In Its Charter)

Payment of Filing Fee (Check the Appropriate Box):

☒     No fee required
✱     Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

1.     Title of each class of securities to which transaction applies:

       _____

2.     Aggregate number of securities to which transaction applies:

       _____

3.     Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11

       _____

4.     Proposed maximum aggregate value of transaction

       _____

5.     Total fee paid

       _____

✱     Check box if any party of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

**BROADCASTER, INC.**
**9201 Oakdale Avenue, Suite 200**
**Chatsworth, California 91311**
**(818) 206-9274**

## NOTICE OF STOCKHOLDER ACTION BY WRITTEN CONSENT

TO ALL STOCKHOLDERS OF BROADCASTER, INC.:

The purpose of this letter is to inform you that on December 21, 2007 the holders of a majority in voting power of the outstanding stock of Broadcaster, Inc. (the "Corporation") executed and delivered a written consent adopting a resolution to remove without cause two directors, Dr. Vincent Orza and Paul Goodman, as members of the board of directors of the Corporation.

The holders of shares representing 58% of our voting power have executed a written consent in favor of the removal of two directors from the Board of Directors of the Corporation. The removal of the directors is described in greater detail in the information statement accompanying this notice. The consents that we have received constitute the only stockholder approval required to remove the directors under the General Corporation Law of the State of Delaware and the Corporation's certificate of incorporation and bylaws. In accordance with the requirements of Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, the removal of directors provided for in the consent will not be effective until January __, 2008.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** Because the written consent of holders of a majority in voting power of the Corporation's outstanding stock satisfies all applicable stockholder voting requirements, we are not asking you for a proxy; please do not send us one.

The accompanying information statement is for information purposes only. Please read it carefully.

January __, 2008

/s/ MARTIN WADE, III
_____
Martin Wade, III
Chairman and Chief Executive
Officer

**BROADCASTER, INC.**
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

**INFORMATION STATEMENT**

January __, 2008

**WE ARE NOT ASKING YOU FOR A PROXY AND
YOU ARE REQUESTED NOT TO SEND US A PROXY.**

This information statement is being mailed on or about January __, 2008, to the stockholders of record of Broadcaster, Inc. at the close of business on December 21, 2007 (the "Record Date"). This information statement is being sent to you for information purposes only. No action is requested or required on your part. This information statement constitutes notice to our stockholders of corporate action by stockholders by written consent, as required by Section 228 of the General Corporation Law of the State of Delaware and our bylaws.

This information statement is being furnished to you to inform you that holders of shares representing a majority of the voting power of shares of our common stock, par value $.001 per share, have adopted, by written consent, resolutions to remove without cause two directors as members of the board of directors of Broadcaster, Inc. (the "Company").

As of the date hereof, we had 300,000,000 shares of common stock authorized, of which 51,342,221 shares were outstanding. Each outstanding share of common stock is entitled to one vote per share.

The approval of the holders of a majority of the outstanding shares of our common stock is required to remove Dr. Vincent Orza and Paul Goodman. Under Delaware law and our organizational documents, the Corporation's stockholders are permitted to act by written consent in lieu of a meeting to effect such removal. Written consents to remove Dr. Vincent Orza and Paul Goodman were delivered to the Corporation from stockholders holding approximately 58% of the voting power of the Corporation's common stock.

We will bear the expenses relating to this information statement, including expenses in connection with preparing and mailing this information statement and all documents that now accompany or may in the future supplement it. We contemplate that brokerage houses, custodians, nominees, and fiduciaries will forward this information statement to the beneficial owners of our common stock held of record by these persons and we will reimburse them for their reasonable expenses incurred in this process.

This Information Statement is being furnished by the Company pursuant to Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, and in connection with certain actions approved by written consent, dated December 21, 2007, of stockholders holding a majority in voting power of the Corporation's outstanding common stock to remove the directors described above pursuant to the General Corporation Law of the State of Delaware and the Company's Restated Certificate of Incorporation, as amended (the "Certificate of Incorporation") and its Amended and Restated By-laws, as amended (the "Bylaws").

We are distributing this Information Statement to our stockholders in full satisfaction of the notice requirements of Section 228(e) of the General Corporation Law of the State of Delaware. No additional action will be undertaken by us with respect to the receipt of the written consent, and our stockholders are not entitled to any appraisal rights under Delaware law, our Certificate of Incorporation or our Bylaws as a result of the actions to be taken pursuant to the written consent described above.

Only one information statement is being delivered to multiple stockholders sharing an address, unless we have received contrary instructions from one or more of the stockholders. We will undertake to deliver promptly upon written or oral request a separate copy of the information statement to a stockholder at a shared address to which a single copy of the information statement was delivered. You may make a written or oral request by sending a written notification to our principal executive offices stating your name, your shared address, and the address to which we should direct the additional copy of the information statement or by calling our principal executive offices at (818) 206-9274. If multiple stockholders sharing an address have received one copy of this information statement and would prefer us to mail each stockholder a separate copy of future mailings, you may send notification to or call our principal executive offices. Additionally, if current stockholders with a shared address received multiple copies of this information statement and would prefer us to mail one copy of future mailings to stockholders at the shared address, notification of that request may also be made by mail or telephone call to our principal executive offices.

## DESCRIPTION OF ACTIONS TAKEN

**Written Consent Executed and Delivered by the Consenting Stockholders**

On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. The fact that, based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry also contributed to such lack of confidence . A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement.

**Vote Required; Manner of Approval**

Under our Certificate of Incorporation and the General Corporation Law of the State of Delaware, directors may be removed from our Board of Directors, with or without cause, by the holders of a majority in voting power of the shares entitled to vote at an election of directors. The Delaware General Corporation Law and our bylaws provide that stockholders may take action without a meeting of stockholders if a consent or consents in writing, setting forth the action so taken, signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting of stockholders at which all shares entitled to vote thereon were present and voted. As a result, the removal of directors from our Board of Directors may be effected by a written consent or consents executed by the holders of a majority of the outstanding shares of our Common Stock. As of December 21, 2007, 9 people held of record 58% of the outstanding shares of our Common Stock. As such, the written consent executed and delivered on December 21, 2007 is sufficient to remove Dr. Vincent Orza and Paul Goodman from the Corporation's Board of Directors and no further vote, approval or consent of stockholders is required to approve this action. The Delaware General Corporation Law provides that the written consent is effective when executed by the holders of the number of shares of Common Stock required to take the action and delivered to the Company. Under Rule 14c-2 promulgated under the Securities Exchange Act of 1934, as amended, the action taken by the stockholders to remove Dr. Vincent Orza and Paul Goodman as members of our Board of Directors cannot take effect until 20 days after this Information Statement is sent to our Stockholders. Therefore, the removal of Dr. Vincent Orza and Paul Goodman from the board of directors will be effective as of January __, 2008. Delaware law does not have a similar requirement.

**Outstanding Voting Stock of the Company**

As of December 21, 2007, there were 51,342,221 shares of Common Stock issued and outstanding. Each share of Common Stock entitles the holder to one vote on all matters submitted to the shareholders.

## OUR BOARD OF DIRECTORS

The action by written consent removes Dr. Vincent Orza and Paul Goodman from our Board of Directors as of January ___, 2008. Following the removal of Dr. Orza, and Paul Goodman the remaining directors of the Company will be Martin Wade, Blair Mills, and Richard Berman. Our bylaws require that the number of Directors be at least three. After the removal, the Board of Directors will be composed of the requisite number of Directors specified in our bylaws. Additional information regarding each of our directors is set forth below.

### Directors Removed

*Vincent F. Orza, Jr., age 57.* Dr. Orza became a director of Broadcaster in July 2007. Dr. Orza is Dean of the Meinders School of Business of Oklahoma City University. Prior to his current position with Oklahoma City University, Dr. Orza served as a trustee of Oklahoma City University, taught economics and marketing for 16 years at the University of Central Oklahoma and received an Ed.D. degree from the University of Oklahoma. Dr. Orza also serves as a news anchor for an Oklahoma City network affiliate and is a regular columnist for a local newspaper. He brings public company experience having been the founder, Chairman and CEO of Eateries, Inc., an operator and franchisor of a chain of restaurants operating in 20 states, which traded on The Nasdaq Stock Market before this company went private in 2003. Dr. Orza ran twice for Governor of Oklahoma.

*Paul Goodman. age 46.* Mr. Goodman became a director in May 2007. Mr. Goodman is a partner in the New York City law firm of Cyruli Shanks & Zizmor LLP and concentrates on the representation of Internet and new media clients handling a wide range of corporate and financing transactions including venture capital, angel round investing and mergers and acquisitions. He was formerly a faculty member of the Queens College Computer Science Department and is the author of five books on computer programming. Mr. Goodman became a director of Maxus Technology Corporation in December 2006. He has also been on the board of directors of SecureLogic Corp. since 1999. He serves on the Audit Committee of each of these corporations. Mr. Goodman became president and sole director of Activeworlds Corp. (OTCBB: AWLD.OB) in July 2007. Mr. Goodman received his law degree from the City University of New York and also holds a Bachelors and Masters Degree in Computer Science.

### Directors Not Removed

*Martin R. Wade, III, age 57.* Mr. Wade became a director and Chief Executive Officer of Broadcaster in August 2001. He has a proven track record in mergers and acquisitions and investment banking. Mr. Wade served from 1998 to 2000 as an M&A banker at Prudential Securities and from 1996 to 1998 as a Managing Director in Mergers and Acquisition at Salomon Brothers. From 1991 to 1996, Mr. Wade was National Head of Investment Banking at Price Waterhouse, LLC. Mr. Wade also spent six years in the M&A department at Bankers Trust and eight years at Lehman Brothers Kuhn Loeb. Mr. Wade is credited with participating in over 200 M&A transactions involving various clients such as, Nike, Cornerstone National Gas Company, Landmark Graphics and Redken Laboratories, Inc. He also serves on the Boards of Directors for Alliance One International, Inc. (NYSE: AOI), NexMed (NasdaqCM: NEXM), Advaxis, Inc. (OTCBB:ADXS.OB) and Command Security Corp (AMEX: MOC).

*Richard J. Berman, age 65.* Mr. Berman became a director of Broadcaster in February 2002. His business career spans over 35 years of venture capital, management and merger and acquisitions experience. In the last five years, Mr. Berman has served as a professional director and/or officer of about a dozen public and private companies. He is currently Chief Executive Officer of NexMed (NasdaqCM: NEXM), a biotech company; Chairman of National Investment Managers, a public company in pension administration and investment management; and Chairman of Candidate Resources, a private company delivering HR services over the web. The public companies that Mr. Berman is a director of are Dyadic International, Inc. (AMEX: DIL), Broadcaster, Inc, Easylink Services International Corp. (NasdaqCM: ESIC), MediaBay, Inc. (OTC: MBAY.PK), NexMed, Inc. (NasdaqCM: NEXM), GVI Security Solutions Inc. (OTCBB: GVSS.OB), National Investment Managers (OTCBB: NIVM.OB), Nayna Networks, Inc. (OTCBB: NAYN.OB) and Advaxis, Inc (OTCBB: ADXS.OB). From 1998 - 2000, he was employed by Internet Commerce Corporation as Chairman and CEO. Previously, Mr. Berman worked at Goldman Sachs; was Senior Vice President of Bankers Trust Company, where he started the M&A and Leveraged Buyout Departments; created the largest battery company in the world by merging Prestolite, General Battery and Exide to form Exide (NYSE); helped create what is now Soho (NYC) by developing five buildings; and advised on over $4 billion of M&A transactions. He is a past Director of the Stern School of Business of NYU.

*Blair Mills. age 43.* Mr. Mills became a director in May 2007. Mr. Mills joined the company in June 2006 as Chief Financial Officer. Previously, he served as Chief Financial Officer of AccessMedia beginning in May 2005. Prior to that date, Mr. Mills served in various management positions at several Internet-based businesses, including most recently Longview Media, Inc. from September 2000 through September 2006. Mr. Mills has also served as an independent consultant to small businesses and emerging growth companies. Mr. Mills is a Chartered Accountant in Canada and a Certified Public Accountant in Illinois.

## SECURITY OWNERSHIP

The following table sets forth, as of December 21, 2007 information concerning the beneficial ownership of common stock by each director of the Company, the Chief Executive Officer and the other compensated executive officers provided that their annual compensation exceeds $100,000, and all directors and executive officers as a group.  Unless otherwise indicated below, the business address for each named individual is the principal executive office address, which is 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311. According to rules adopted by the Securities and Exchange Commission, a person is the "beneficial owner" of securities if he or she has, or shares, the power to vote such securities or to direct their investment. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

The table also sets forth, as of December 21, 2007 the name, address, stock ownership and voting power of each person or group of persons known by the Company to own beneficially more than 5% of the outstanding shares of Common Stock. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

| Name and Address(1) | Amount and Nature Of Beneficial Ownership | Percentage of Class |
|---|---|---|
| Martin Wade, III | 198,333 | * |
| Blair Mills | 75,000 | * |
| Richard Berman (2) | 296,250 | * |
| Paul Goodman (3) | 6,250 | * |
| Vincent F. Orza, Jr. (4) | 32,750 | * |
| Nolan Quan (5) | 22,490,000 | 43.8% |
| Michael Gardner (6) | 10,697,150 | 20.8% |
| Digital Creative Development Corp (7) | 3,018,579 | 5.9% |
| All officers and directors as a group (6 people) | 23,098,583 | 44.99% |

(1)   Unless otherwise indicated, the address for each is c/o Broadcaster, Inc., 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311.
(2)   420 Lexington Avenue, Suite 450, New York, NY 10170.
(3)   420 Lexington Avenue, Suite 2330, New York, NY 10170
(4)   2501 n. Blackwelder, Oklahoma City, OK 73106.
(5)   Represents 22,490,000 shares, 50,000 of which are owned by a family trust of which Mr. Quan is a trustee and the balance by the limited liability companies, and Mr. Nolan Quan, one of our principal shareholders, and President is the managing member of four LLCs, Broadcaster LLC 9,640,000 shares, Software People LLC 5,120,000 shares, Trans Global Media LLC 5,120,000 shares and Accessmedia Technologies LLC 2,560,000 shares. Mr. Quan's affiliated entities have provided services to the Company for which such entities have received compensation. During the year ended June 30, 2007, the Company incurred expenses of $1,849,000 related to services provided by Alchemy, which is controlled by Mr. Nolan Quan. Interest expenses for the year ended June 30, 2007 included $69,000 related to a loan in the principal amount of $1,725,000 from Mr. Nolan Quan. The Company also paid Mr. Quan an aggregate of $86,000 during the year ended June 30, 2007 for the purchase of two licenses owned by him and consulting fees of $12,000. In addition, during the year ended June 30, 2007, the Company paid another entity of which Mr. Quan is a controlling shareholder, $150,000 for the purchase of a license. Mr Quan's wife and son have provided services to the Company and received an aggregate of $104,480 for such services during the year ended June 30, 2007. See the Company's Quarterly Report of Form 10Q filed with the Securities and Exchange

Commission on November 14, 2007

and the Company's Annual Report on Form 10-K filed on October 15, 2007 for a more detailed description of the services performed by such affiliated entities and the compensation paid to Mr. Nolan and such entities for such services.

(6) c/o Baytree Capital, The Trump Building, 40 Wall Street, New York, NY 10005. Represents 10,647,150 shares, including 1,875,000 shares owned by Baytree. The numbers owned of record and beneficially by Mr. Gardner do not include 1,544,594 shares of our common stock owned by MBYI Liquidating Trust. Mr. Gardner owns a 6.7% interest in the trust as a result of an unrelated transaction, but is not a beneficial owner of the shares under the rules of the SEC. The shares held by the trust may be publicly sold at any time without restriction.

(7) 720 Fifth Avenue, 10th Floor, New York, NY 10019.

## INTEREST OF CERTAIN PERSONS IN THE REMOVAL

The security ownership of certain beneficial owners and management are set forth above in the Section entitled "Security Ownership of Certain Beneficial Owners and Management." Except as disclosed above, none of the following persons has any substantial interest, direct or indirect, in the matter to be acted upon:

(1)     Any director or officer of the Company since January 1, 2007;

(2)     Associates or affiliates of the persons described in (1) and (2).

## NO APPRAISAL RIGHTS

Our Stockholders are not entitled to appraisal rights with respect to the actions to be taken pursuant to the written consent under Delaware law, our Certificate of Incorporation or our Bylaws.

## DISTRIBUTION OF INFORMATION STATEMENT

We will pay the costs of distributing this Information Statement to our stockholders. The distribution will be made by mail.

## FORWARD-LOOKING STATEMENTS

This information statement may contain certain "forward-looking" statements (as that term is defined in the Private Securities Litigation Reform Act of 1995 or by the U.S. Securities and Exchange Commission in its rules, regulations and releases) representing our expectations or beliefs regarding our company. These forward-looking statements include, but are not limited to, statements concerning our operations, economic performance, financial condition, and prospects and opportunities. For this purpose, any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the generality of the foregoing, words such as "may," "will," "expect," "believe," "anticipate," "intend," "could," "estimate," "might," or "continue" or the negative or other variations thereof or comparable terminology are intended to identify forward-looking statements. These statements, by their nature, involve substantial risks and uncertainties, certain of which are beyond our control, and actual results may differ materially depending on a variety of important factors, including factors discussed in this and other of our filings with the U.S. Securities and Exchange Commission.

## ADDITIONAL INFORMATION

We are subject to the informational reporting requirements of the Exchange Act and file reports, proxy statements and other information required under the Exchange Act with the SEC. Such reports, proxy statements and other information may be inspected and copied at the public reference facilities maintained by the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. Copies of such materials and information from the SEC can be obtained at existing published rates from the Public Reference Section of the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. The SEC also maintains a site on the Internet at http://www.sec.gov that contains reports, proxy and information statements and other information regarding registrants that file electronically with the SEC which may be downloaded free of charge.

## INCORPORATION OF FINANCIAL INFORMATION

We "incorporate by reference" into this Information Statement the information in certain documents we file with the SEC, which means that we can disclose important information to you by referring you to those documents. We incorporate by reference into this information statement the following documents we have previously filed with the SEC: our quarterly report on Form 10-QSB for the quarterly period ended September 30, 2007 and our Registration Statement on Form SB-2. You may request a copy of these filings at no cost, by writing or telephoning us at the following address:

Broadcaster, Inc.
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

As we obtained the requisite stockholder vote for the removal of the director described in this information statement upon delivery of written consents from the holders of a majority of our outstanding shares of common stock, **WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** This information statement is for informational purposes only. Please read this information statement carefully.

ANNEX A

<h1 style="text-align:center">FORM OF CONSENT</h1>

<h2 style="text-align:center">BROADCASTER, INC.</h2>

**Consent of Stockholders Representing a Majority in Voting Power of the Outstanding Stock
Pursuant to Section 228 of the General Corporation Law of the State of Delaware**

The undersigned, constituting holders of a majority in voting power of the outstanding shares of Broadcaster, Inc., a Delaware corporation (the "Corporation"), and acting hereunder without the convening of a formal meeting pursuant to Section 228 of the General Corporation Law of the State of Delaware, do hereby consent in writing to the adoption of and do hereby adopt the following resolutions:

WHEREAS, the Board of Directors of the Corporation is presently comprised of Martin R. Wade, III, Richard J. Berman, Blair Mills, Paul Goodman and Dr. Vincent F. Orza, Jr.; and

WHEREAS, the undersigned have deemed it advisable and in the best interests of the Corporation that Dr. Vincent F. Orza, Jr. and Paul Goodman be removed without cause from the Board of Directors of the Corporation;

NOW, THEREFORE, BE IT AND IT HEREBY IS RESOLVED, that as of the Effective Date (as defined below) Dr. Vincent Orza, Jr. and Paul Goodman shall be removed without cause as members of the Board of Directors of the Corporation; and it is further

RESOLVED, that the Corporation be, and hereby is, authorized, empowered and directed to cause an information statement in accordance with Regulation 14C promulgated by the Securities and Exchange Commission (the "SEC") with respect to the actions taken in the foregoing resolution and to file a Preliminary Schedule 14C with the SEC as soon thereafter as practicable and (unless the Corporation receives notice that the Preliminary Schedule 14C will be subject to review by the SEC) to cause the Definitive Schedule 14 C to be filed with the SEC and information statement to be mailed to the Corporation's shareholders in accordance with the rules of the SEC on the first business day that is at least 10 days after the filing of the Preliminary Schedule 14C (the "Mailing Date"). The foregoing resolution shall become effective on the date (the "Effective Date") that is 20 days after the Mailing Date; and it is further

RESOLVED, that Martin Wade, III is hereby authorized to execute and deliver on behalf of the Corporation all such further documents, certificates, or instruments, to take on behalf of the Corporation all such further actions, and to pay on behalf of the Corporation all such expenses that he determines to be necessary or desirable in order to carry out the foregoing resolutions, the execution and delivery of any such documents, certificates, or instruments, the taking of any such actions, and the payment of any such expenses to be conclusive evidence of that determination.

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

By: _____

**EXHIBIT G**

PRER14C 1 broadcasterprer14ca2.htm AMEND NO. 3 OF FORM PRER14C

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**SCHEDULE 14C INFORMATION**
**(Amendment No. 3)**

**Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934**

Check the appropriate box:

⊠    Preliminary Information Statement
✳    Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))
✳    Definitive Information Statement

# BROADCASTER, INC.

(Name of Registrant As Specified In Its Charter)

Payment of Filing Fee (Check the Appropriate Box):

⊠    No fee required
✳    Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

1.    Title of each class of securities to which transaction applies:

_____

2.    Aggregate number of securities to which transaction applies:

_____

3.    Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11

_____

4.    Proposed maximum aggregate value of transaction

_____

5.    Total fee paid

_____

✳    Check box if any party of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

**BROADCASTER, INC.**
**9201 Oakdale Avenue, Suite 200**
**Chatsworth, California 91311**
**(818) 206-9274**

## NOTICE OF STOCKHOLDER ACTION BY WRITTEN CONSENT

TO ALL STOCKHOLDERS OF BROADCASTER, INC.:

The purpose of this letter is to inform you that on December 21, 2007 the holders of a majority in voting power of the outstanding stock of Broadcaster, Inc. (the "Corporation") executed and delivered a written consent adopting a resolution to remove without cause two directors, Dr. Vincent Orza and Paul Goodman, as members of the board of directors of the Corporation.

The holders of shares representing 58% of our voting power have executed a written consent in favor of the removal of two directors from the Board of Directors of the Corporation. The removal of the directors is described in greater detail in the information statement accompanying this notice. The consents that we have received constitute the only stockholder approval required to remove the directors under the General Corporation Law of the State of Delaware and the Corporation's certificate of incorporation and bylaws. In accordance with the requirements of Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, the removal of directors provided for in the consent will not be effective until January __, 2008.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** Because the written consent of holders of a majority in voting power of the Corporation's outstanding stock satisfies all applicable stockholder voting requirements, we are not asking you for a proxy; please do not send us one.

The accompanying information statement is for information purposes only. Please read it carefully.

January __, 2008

/s/ MARTIN WADE, III
Martin Wade, III
Chairman and Chief Executive
Officer

**BROADCASTER, INC.**
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

**INFORMATION STATEMENT**

January ___, 2008

### WE ARE NOT ASKING YOU FOR A PROXY AND
### YOU ARE REQUESTED NOT TO SEND US A PROXY.

This information statement is being mailed on or about January ___, 2008, to the stockholders of record of Broadcaster, Inc. at the close of business on December 21, 2007 (the "Record Date"). This information statement is being sent to you for information purposes only. No action is requested or required on your part. This information statement constitutes notice to our stockholders of corporate action by stockholders by written consent, as required by Section 228 of the General Corporation Law of the State of Delaware and our bylaws.

This information statement is being furnished to you to inform you that holders of shares representing a majority of the voting power of shares of our common stock, par value $.001 per share, have adopted, by written consent, resolutions to remove without cause two directors as members of the board of directors of Broadcaster, Inc. (the "Company").

As of the date hereof, we had 300,000,000 shares of common stock authorized, of which 51,342,221 shares were outstanding. Each outstanding share of common stock is entitled to one vote per share.

The approval of the holders of a majority of the outstanding shares of our common stock is required to remove Dr. Vincent Orza and Paul Goodman. Under Delaware law and our organizational documents, the Corporation's stockholders are permitted to act by written consent in lieu of a meeting to effect such removal. Written consents to remove Dr. Vincent Orza and Paul Goodman were delivered to the Corporation from stockholders holding approximately 58% of the voting power of the Corporation's common stock.

We will bear the expenses relating to this information statement, including expenses in connection with preparing and mailing this information statement and all documents that now accompany or may in the future supplement it. We contemplate that brokerage houses, custodians, nominees, and fiduciaries will forward this information statement to the beneficial owners of our common stock held of record by these persons and we will reimburse them for their reasonable expenses incurred in this process.

This Information Statement is being furnished by the Company pursuant to Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, and in connection with certain actions approved by written consent, dated December 21, 2007, of stockholders holding a majority in voting power of the Corporation's outstanding common stock to remove the directors described above pursuant to the General Corporation Law of the State of Delaware and the Company's Restated Certificate of Incorporation, as amended (the "Certificate of Incorporation") and its Amended and Restated By-laws, as amended (the "Bylaws").

We are distributing this Information Statement to our stockholders in full satisfaction of the notice requirements of Section 228(e) of the General Corporation Law of the State of Delaware. No additional action will be undertaken by us with respect to the receipt of the written consent, and our stockholders are not entitled to any appraisal rights under Delaware law, our Certificate of Incorporation or our Bylaws as a result of the actions to be taken pursuant to the written consent described above.

Only one information statement is being delivered to multiple stockholders sharing an address, unless we have received contrary instructions from one or more of the stockholders. We will undertake to deliver promptly upon written or oral request a separate copy of the information statement to a stockholder at a shared address to which a single copy of the information statement was delivered. You may make a written or oral request by sending a written notification to our principal executive offices stating your name, your shared address, and the address to which we should direct the additional copy of the information statement or by calling our principal executive offices at (818) 206-9274. If multiple stockholders sharing an address have received one copy of this information statement and would prefer us to mail each stockholder a separate copy of future mailings, you may send notification to or call our principal executive offices. Additionally, if current stockholders with a shared address received multiple copies of this information statement and would prefer us to mail one copy of future mailings to stockholders at the shared address, notification of that request may also be made by mail or telephone call to our principal executive offices.

## DESCRIPTION OF ACTIONS TAKEN

### Written Consent Executed and Delivered by the Consenting Stockholders

On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. The fact that, based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry also contributed to such lack of confidence. There were three meetings of the Board of Directors that were held by the Company by telephonic conference (November 26th, December 3rd and 13th, 2007) at which the manner of the shut down was discussed. Messrs. Wade, Berman, Mills and Goodman were present at each meeting. Dr. Orza was present at two of those meetings. At each meeting several non board members were present by invitation. Messrs. Quan, Harris and Gardner were present by invitation at all three meetings and Mr. Herman was present by invitation at the December 13, 2007 meeting. At each meeting there was a disagreement about the how to deal with terminating employees and how to preserve the value of the assets. On December 13, 2007 the Board resolved to dismiss most of the employees by December 31, 2007 and such action has been implemented. A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement. Listed below is the name of each such consenting shareholder, the number of shares held by each such consenting shareholder and the percentage of beneficial ownership of the Company's common stock held by such consenting shareholder.

| Name | Amount of Beneficial Ownership | Percentage of Class |
|---|---|---|
| Software People LLC* (Wyoming LLC) | 5,120,000 | 9.97% |
| Trans Global Media LLC* | 5,120,000 | 9.97% |
| Broadcaster, LLC* | 9,640,000 | 18.78% |
| Accessmedia Technologies *LLC | 2,560,000 | 4.99% |
| Rosen Quan Family Trust* | 50,000 | .10% |
| Gary Herman | 225,000 | .44% |
| Strategic Turnaround Equity Partners, LP | 605,925 | 1.18% |
| Treeline Investment Partners, LP | 312,500 | .61% |
| Thomas P. Kikis & Kikis Family Foundation | 237,500 | .46% |
| Andrew and Catherine Garroni Living Trust | 25,000 | .05% |
| Trinad Capital Master Fund Ltd. | 562,133 | 1.09% |
| Willow Creek Capital Management WCCP, WC Offshore Fund, WC Long Biased Funds | 2,300,500 | 4.48% |
| Digital Creative Development Corp. | 3,018,579 | 5.88% |
| | 29,777,137 | 58.00% |

* Please note that Mr. Nolan Quan controls the vote with respect to these entities

**Vote Required; Manner of Approval**

Under our Certificate of Incorporation and the General Corporation Law of the State of Delaware, directors may be removed from our Board of Directors, with or without cause, by the holders of a majority in voting power of the shares entitled to vote at an election of directors. The Delaware General Corporation Law and our bylaws provide that stockholders may take action without a meeting of stockholders if a consent or consents in writing, setting forth the action so taken, signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting of stockholders at which all shares entitled to vote thereon were present and voted. As a result, the removal of directors from our Board of Directors may be effected by a written consent or consents executed by the holders of a majority of the outstanding shares of our Common Stock. As of December 21, 2007, the entities and individuals listed above held of record 58% of the outstanding shares of our Common Stock. As such, the written consent executed and delivered on December 21, 2007 is sufficient to remove Dr. Vincent Orza and Paul Goodman from the Corporation's Board of Directors and no further vote, approval or consent of stockholders is required to approve this action. The Delaware General Corporation Law provides that the written consent is effective when executed by the holders of the number of shares of Common Stock required to take the action and delivered to the Company. Under Rule 14c-2 promulgated under the Securities Exchange Act of 1934, as amended, the action taken by the stockholders to remove Dr. Vincent Orza and Paul Goodman as members of our Board of Directors cannot take effect until 20 days after this Information Statement is sent to our Stockholders. Therefore, the removal of Dr. Vincent Orza and Paul Goodman from the board of directors will be effective as of January __, 2008. Delaware law does not have a similar requirement.

**Outstanding Voting Stock of the Company**

As of December 21, 2007, there were 51,342,221 shares of Common Stock issued and outstanding. Each share of Common Stock entitles the holder to one vote on all matters submitted to the shareholders.

# OUR BOARD OF DIRECTORS

The action by written consent removes Dr. Vincent Orza and Paul Goodman from our Board of Directors as of January ___, 2008. Following the removal of Dr. Orza, and Paul Goodman the remaining directors of the Company will be Martin Wade, Blair Mills, and Richard Berman. Our bylaws require that the number of Directors be at least three. After the removal, the Board of Directors will be composed of the requisite number of Directors specified in our bylaws. Additional information regarding each of our directors is set forth below.

## Directors Removed

*Vincent F. Orza, Jr., age 57.* Dr. Orza became a director of Broadcaster in July 2007. Dr. Orza is Dean of the Meinders School of Business of Oklahoma City University. Prior to his current position with Oklahoma City University, Dr. Orza served as a trustee of Oklahoma City University, taught economics and marketing for 16 years at the University of Central Oklahoma and received an Ed.D. degree from the University of Oklahoma. Dr. Orza also serves as a news anchor for an Oklahoma City network affiliate and is a regular columnist for a local newspaper. He brings public company experience having been the founder, Chairman and CEO of Eateries, Inc., an operator and franchisor of a chain of restaurants operating in 20 states, which traded on The Nasdaq Stock Market before this company went private in 2003. Dr. Orza ran twice for Governor of Oklahoma.

*Paul Goodman. age 46.* Mr. Goodman became a director in May 2007. Mr. Goodman is a partner in the New York City law firm of Cyruli Shanks & Zizmor LLP and concentrates on the representation of Internet and new media clients handling a wide range of corporate and financing transactions including venture capital, angel round investing and mergers and acquisitions. He was formerly a faculty member of the Queens College Computer Science Department and is the author of five books on computer programming. Mr. Goodman became a director of Maxus Technology Corporation in December 2006. He has also been on the board of directors of SecureLogic Corp. since 1999. He serves on the Audit Committee of each of these corporations. Mr. Goodman became president and sole director of Activeworlds Corp. (OTCBB: AWLD.OB) in July 2007. Mr. Goodman received his law degree from the City University of New York and also holds a Bachelors and Masters Degree in Computer Science.

## Directors Not Removed

*Martin R. Wade, III, age 57.* Mr. Wade became a director and Chief Executive Officer of Broadcaster in August 2001. He has a proven track record in mergers and acquisitions and investment banking. Mr. Wade served from 1998 to 2000 as an M&A banker at Prudential Securities and from 1996 to 1998 as a Managing Director in Mergers and Acquisition at Salomon Brothers. From 1991 to 1996, Mr. Wade was National Head of Investment Banking at Price Waterhouse, LLC. Mr. Wade also spent six years in the M&A department at Bankers Trust and eight years at Lehman Brothers Kuhn Loeb. Mr. Wade is credited with participating in over 200 M&A transactions involving various clients such as, Nike, Cornerstone National Gas Company, Landmark Graphics and Redken Laboratories, Inc. He also serves on the Boards of Directors for Alliance One International, Inc. (NYSE: AOI), NexMed (NasdaqCM: NEXM), Advaxis, Inc. (OTCBB:ADXS.OB) and Command Security Corp (AMEX: MOC).

*Richard J. Berman, age 65.* Mr. Berman became a director of Broadcaster in February 2002. His business career spans over 35 years of venture capital, management and merger and acquisitions experience. In the last five years, Mr. Berman has served as a professional director and/or officer of about a dozen public and private companies. He is currently Chief Executive Officer of NexMed (NasdaqCM: NEXM), a biotech company; Chairman of National Investment Managers, a public company in pension administration and investment management; and Chairman of Candidate Resources, a private company delivering HR services over the web. The public companies that Mr. Berman is a director of are Dyadic International, Inc. (AMEX: DIL), Broadcaster, Inc, Easylink Services International Corp. (NasdaqCM: ESIC), MediaBay, Inc. (OTC: MBAY.PK), NexMed, Inc. (NasdaqCM: NEXM), GVI Security Solutions Inc. (OTCBB: GVSS.OB), National Investment Managers (OTCBB: NIVM.OB), Nayna Networks, Inc. (OTCBB: NAYN.OB) and Advaxis, Inc (OTCBB: ADXS.OB). From 1998 - 2000, he was employed by Internet Commerce Corporation as Chairman and CEO. Previously, Mr. Berman worked at Goldman Sachs; was Senior Vice President of Bankers Trust Company, where he started the M&A and Leveraged Buyout Departments; created the largest battery company in the world by merging Prestolite, General Battery and Exide to form Exide (NYSE); helped create what is now Soho (NYC) by developing five buildings; and advised on over $4 billion of M&A transactions. He is a past Director of the Stern School of Business of NYU.

*Blair Mills.* age 43. Mr. Mills became a director in May 2007. Mr. Mills joined the company in June 2006 as Chief Financial Officer. Previously, he served as Chief Financial Officer of AccessMedia beginning in May 2005. Prior to that date, Mr. Mills served in various management positions at several Internet-based businesses, including most recently Longview Media, Inc. from September 2000 through September 2006. Mr. Mills has also served as an independent consultant to small businesses and emerging growth companies. Mr. Mills is a Chartered Accountant in Canada and a Certified Public Accountant in Illinois.

## SECURITY OWNERSHIP

The following table sets forth, as of December 21, 2007 information concerning the beneficial ownership of common stock by each director of the Company, the Chief Executive Officer and the other compensated executive officers provided that their annual compensation exceeds $100,000, and all directors and executive officers as a group. Unless otherwise indicated below, the business address for each named individual is the principal executive office address, which is 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311. According to rules adopted by the Securities and Exchange Commission, a person is the "beneficial owner" of securities if he or she has, or shares, the power to vote such securities or to direct their investment. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

The table also sets forth, as of December 21, 2007 the name, address, stock ownership and voting power of each person or group of persons known by the Company to own beneficially more than 5% of the outstanding shares of Common Stock. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

| Name and Address(1) | Amount and Nature Of Beneficial Ownership | Percentage of Class |
|---|---|---|
| Martin Wade, III | 198,333 | * |
| Blair Mills | 75,000 | * |
| Richard Berman (2) | 296,250 | * |
| Paul Goodman (3) | 6,250 | * |
| Vincent F. Orza, Jr. (4) | 32,750 | * |
| Nolan Quan (5) | 22,490,000 | 43.8% |
| Michael Gardner (6) | 10,697,150 | 20.8% |
| Digital Creative Development Corp (7) | 3,018,579 | 5.9% |
| All officers and directors as a group (6 people) | 23,098,583 | 44.99% |

(1)  Unless otherwise indicated, the address for each is c/o Broadcaster, Inc., 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311.

(2)  420 Lexington Avenue, Suite 450, New York, NY 10170.

(3)  420 Lexington Avenue, Suite 2330, New York, NY 10170

(4)  2501 n. Blackwelder, Oklahoma City, OK 73106.

(5)  Represents 22,490,000 shares, 50,000 of which are owned by a family trust of which Mr. Quan is a trustee and the balance by the limited liability companies. Mr. Nolan Quan, one of our principal shareholders, and President is the managing member of four LLCs, Broadcaster LLC 9,640,000 shares, Software People LLC 5,120,000 shares, Trans Global Media LLC 5,120,000 shares and Accessmedia Technologies LLC 2,560,000 shares. Mr. Quan's affiliated entities have provided services to the Company for which such entities have received compensation. During the year ended June 30, 2007, the Company incurred expenses of $1,849,000 related to services provided by Alchemy, which is controlled by Mr. Nolan Quan. Interest expenses for the year ended June 30, 2007 included $69,000 related to a loan in the principal amount of $1,725,000 from Mr. Nolan Quan. The Company also paid Mr. Quan an aggregate of $86,000 during the year ended June 30, 2007 for the purchase of two licenses owned by him and consulting fees of $12,000. In addition, during the year ended June 30, 2007, the Company paid another entity of which Mr. Quan is a controlling shareholder, $150,000 for the purchase of a license. Mr Quan's wife and son have

provided services to the Company and received an aggregate of $104,480 for such services during the year ended June 30, 2007. See the Company's

Quarterly Report of Form 10Q filed with the Securities and Exchange Commission on November 14, 2007 and the Company's Annual Report on Form 10-K filed on October 15, 2007 for a more detailed description of the services performed by such affiliated entities and the compensation paid to Mr. Nolan and such entities for such services.

(6) c/o Baytree Capital, The Trump Building, 40 Wall Street, New York, NY 10005. Represents 10,647,150 shares, including 1,875,000 shares owned by Baytree. The numbers owned of record and beneficially by Mr. Gardner do not include 1,544,594 shares of our common stock owned by MBYI Liquidating Trust. Mr. Gardner owns a 6.7% interest in the trust as a result of an unrelated transaction, but is not a beneficial owner of the shares under the rules of the SEC. The shares held by the trust may be publicly sold at any time without restriction.

(7) 720 Fifth Avenue, 10th Floor, New York, NY 10019.

## INTEREST OF CERTAIN PERSONS IN THE REMOVAL

The security ownership of certain beneficial owners and management are set forth above in the Section entitled "Security Ownership of Certain Beneficial Owners and Management." Except as disclosed above, none of the following persons has any substantial interest, direct or indirect, in the matter to be acted upon:

(1)     Any director or officer of the Company since January 1, 2007;
(2)     Associates or affiliates of the persons described in (1) and (2).

## NO APPRAISAL RIGHTS

Our Stockholders are not entitled to appraisal rights with respect to the actions to be taken pursuant to the written consent under Delaware law, our Certificate of Incorporation or our Bylaws.

## DISTRIBUTION OF INFORMATION STATEMENT

We will pay the costs of distributing this Information Statement to our stockholders. The distribution will be made by mail.

## FORWARD-LOOKING STATEMENTS

This information statement may contain certain "forward-looking" statements (as that term is defined in the Private Securities Litigation Reform Act of 1995 or by the U.S. Securities and Exchange Commission in its rules, regulations and releases) representing our expectations or beliefs regarding our company. These forward-looking statements include, but are not limited to, statements concerning our operations, economic performance, financial condition, and prospects and opportunities. For this purpose, any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the generality of the foregoing, words such as "may," "will," "expect," "believe," "anticipate," "intend," "could," "estimate," "might," or "continue" or the negative or other variations thereof or comparable terminology are intended to identify forward-looking statements. These statements, by their nature, involve substantial risks and uncertainties, certain of which are beyond our control, and actual results may differ materially depending on a variety of important factors, including factors discussed in this and other of our filings with the U.S. Securities and Exchange Commission.

## ADDITIONAL INFORMATION

We are subject to the informational reporting requirements of the Exchange Act and file reports, proxy statements and other information required under the Exchange Act with the SEC. Such reports, proxy statements and other information may be inspected and copied at the public reference facilities maintained by the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. Copies of such materials and information from the SEC can be obtained at existing published rates from the Public Reference Section of the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. The SEC also maintains a site on the Internet at http://www.sec.gov that contains reports, proxy and information statements and other information regarding registrants that file electronically with the SEC which may be downloaded free of charge.

## INCORPORATION OF FINANCIAL INFORMATION

We "incorporate by reference" into this Information Statement the information in certain documents we file with the SEC, which means that we can disclose important information to you by referring you to those documents. We incorporate by reference into this information statement the following documents we have previously filed with the SEC: our quarterly report on Form 10-QSB for the quarterly period ended September 30, 2007 and our Registration Statement on Form SB-2. You may request a copy of these filings at no cost, by writing or telephoning us at the following address:

Broadcaster, Inc.
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

As we obtained the requisite stockholder vote for the removal of the director described in this information statement upon delivery of written consents from the holders of a majority of our outstanding shares of common stock, **WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** This information statement is for informational purposes only. Please read this information statement carefully.

**FORM OF CONSENT**

**BROADCASTER, INC.**

Consent of Stockholders Representing a Majority in Voting Power of the Outstanding Stock
Pursuant to Section 228 of the General Corporation Law of the State of Delaware

The undersigned, constituting holders of a majority in voting power of the outstanding shares of Broadcaster, Inc., a Delaware corporation (the "Corporation"), and acting hereunder without the convening of a formal meeting pursuant to Section 228 of the General Corporation Law of the State of Delaware, do hereby consent in writing to the adoption of and do hereby adopt the following resolutions:

WHEREAS, the Board of Directors of the Corporation is presently comprised of Martin R. Wade, III, Richard J. Berman, Blair Mills, Paul Goodman and Dr. Vincent F. Orza, Jr.; and

WHEREAS, the undersigned have deemed it advisable and in the best interests of the Corporation that Dr. Vincent F. Orza, Jr. and Paul Goodman be removed without cause from the Board of Directors of the Corporation;

NOW, THEREFORE, BE IT AND IT HEREBY IS RESOLVED, that as of the Effective Date (as defined below) Dr. Vincent Orza, Jr. and Paul Goodman shall be removed without cause as members of the Board of Directors of the Corporation; and it is further

RESOLVED, that the Corporation be, and hereby is, authorized, empowered and directed to cause an information statement in accordance with Regulation 14C promulgated by the Securities and Exchange Commission (the "SEC") with respect to the actions taken in the foregoing resolution and to file a Preliminary Schedule 14C with the SEC as soon thereafter as practicable and (unless the Corporation receives notice that the Preliminary Schedule 14C will be subject to review by the SEC) to cause the Definitive Schedule 14 C to be filed with the SEC and information statement to be mailed to the Corporation's shareholders in accordance with the rules of the SEC on the first business day that is at least 10 days after the filing of the Preliminary Schedule 14C (the "Mailing Date"). The foregoing resolution shall become effective on the date (the "Effective Date") that is 20 days after the Mailing Date; and it is further

RESOLVED, that Martin Wade, III is hereby authorized to execute and deliver on behalf of the Corporation all such further documents, certificates, or instruments, to take on behalf of the Corporation all such further actions, and to pay on behalf of the Corporation all such expenses that he determines to be necessary or desirable in order to carry out the foregoing resolutions, the execution and delivery of any such documents, certificates, or instruments, the taking of any such actions, and the payment of any such expenses to be conclusive evidence of that determination.

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

By: _____

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------- X
                                                        :
PAUL GOODMAN,                                           :
                                                        :
                    Plaintiff,                          :
                                                        :
            -against-                                   :
                                                        :   NY County Clerk's Index No. 100707/08
MARTIN WADE, NOLAN QUAN, BLAIR                          :
MILLS, BROADCASTER, INC., GARY                          :   **AFFIRMATION OF MICHAEL P. ZWEIG**
HERMAN, BRUCE GALLOWAY, THOMAS                         :   **IN OPPOSITION TO PLAINTIFF'S**
KIKIS, KIKIS FAMILY FOUNDATION,                        :   **MOTION FOR A PRELIMINARY**
WILLOW CREEK CAPITAL                                   :   **INJUNCTION WITH TEMPORARY**
MANAGEMENT, TRINIDAD CAPITAL                           :   **RESTRAINING ORDER**
MASTER FUND, LTD., AARON BROWN,                        :
ANDREW GARRONI, STRATEGIC                              :
TURNAROUND EQUITY PARTNERS, LP                         :
(CAYMAN) and DIGITAL CREATIVE                          :
DEVELOPMENT CORPORATION,                               :
                                                        :
                    Defendants.                        :
                                                        :
-------------------------------------------------------- X

        MICHAEL P. ZWEIG, an attorney duly admitted to practice before the Courts of

the State of New York, affirms as follows under penalty of perjury:

1.       I am a partner of Loeb & Loeb LLP, counsel for Defendant Broadcaster Inc.

("Broadcaster"). I have personal knowledge of the matters set forth herein and

respectfully submit this affirmation in connection with Broadcaster's special appearance[1]

herein. This matter arises out of an application for a preliminary injunction and

temporary restraining order, based upon a Summons with Notice which has yet to be

personally served on any defendant. Based upon the "notice" provided by Plaintiff to

---

[1] As set forth herein, Broadcaster makes this special appearance to advise the Court that
Plaintiff's application is jurisdictionally defective. Broadcaster expressly reserves its right to object to
jurisdiction and service, and to seek the dismissal of the action on such bases, if necessary, at a later time.

date of his claims, Plaintiff Paul Goodman objects to the content of mandatory Securities Exchange Commission ("SEC") disclosures filed (and to be filed) by Broadcaster as required by the federal securities law, as part of an ongoing efforts by Broadcaster to remove Plaintiff as a director of Broadcaster. Plaintiff contends that the SEC-required disclosures, which attempt to describe the judgments and opinions that led to the decision to seek Goodman's removal, are "defamatory."

2.    <u>Summary</u> -- As set forth more fully below, Plaintiff's motion for a preliminary injunction with temporary restraining order, which was brought on by Order to Show Cause dated January 16, 2008, must be denied on two threshold, but fundamental, jurisdictional grounds. First, Plaintiff has failed to comply with the Order of this Court, dated January 16, 2008, which expressly required that the Order to Show Cause and Summons with Notice be personally served upon Defendants by hand. Service was not effected by hand on any of the 14 Defendants, and only one Defendant, Broadcaster, was sent a copy of the papers, and this was done via e-mail. Second, the exercise of personal jurisdiction over Broadcaster (or any of the other 13 putative Defendants) in New York would be improper in any event, given that Broadcaster is indisputably a Delaware corporation and the "acts" complained of are Broadcaster's filings with the SEC offices in Washington, D.C. As importantly, were this Court to address the merits of Plaintiff's application at this time, Plaintiff has, in any event, failed to meet his heavy burden of establishing likelihood of success on the merits, irreparable harm, or to show that the balance of equities lies in his favor.

## INTRODUCTION

3.      Plaintiff Paul Goodman, a member of the Broadcaster board of directors whose official removal is currently pending pursuant to an admittedly properly conducted shareholder vote (Paul Goodman Aff. at ¶ 24) (hereinafter, the Consenting Shareholders), has now purported to initiate this action, together with a motion for preliminary injunctive relief, seeking to enjoin Defendants from making alleged defamatory statements (which reflect Defendants' views regarding Plaintiff's "business judgment") made in mandatory SEC disclosures filed in connection with his removal.  Plaintiff's affidavit, which dwells on personal attacks, inaccurate characterizations and irrelevancies (expressed through conclusory and inflammatory rhetoric) provides no basis for the grant of the extraordinary and drastic relief requested therein.  As set forth herein, there are a myriad of reasons, both procedural and on the merits, mandating that Plaintiff's motion be denied and that the action be dismissed:

i)      First, as noted above, Plaintiff did not comply with this Court's January 16, 2008 Order which required that the Order to Show Cause and underlying Summons with Notice "be personally served upon the Defendants by hand delivery on or before January 18, 2008." This fatal procedural defect alone mandates the denial of the motion.

ii)      Even had Plaintiff properly served the Order to Show Cause as ordered by this Court – which he did not – the action nonetheless is subject to dismissal because there is no proper basis for this Court to exercise personal jurisdiction over Broadcaster,[2] a Delaware corporation with its principal place of business in California (see Goodman

---

[2] Plaintiff has also wrongfully named thirteen Broadcaster directors and/or shareholders as Defendants in this action. Plaintiff has failed to serve any of these Defendants. In addition, because SEC filings are deemed a corporate act of Broadcaster, no basis exists for the exercise of personal jurisdiction over these additional Defendants.

Aff., Exhibit E, at 2, 3). Notably, while Plaintiff asserts that jurisdiction would be proper pursuant to CPLR § 302(a)(3)(ii) (see Goodman Aff. at ¶ 7), that section does not confer personal jurisdiction where, as here, the underlying gravamen of the action is one for defamation.

      iii)    Nor does Plaintiff even approach satisfying his heavy burden of establishing the requisite likelihood of success, irreparable harm or balance of the equities in his favor necessary to support the current motion. It is well established that statements made in mandatory SEC disclosures, such as the filings at issue here, are privileged. Plaintiff himself concedes that the SEC specifically requested the detailed disclosures of which he now (belatedly) complains. Even were the statements not privileged, any statement summarizing the views and opinions of the "Consenting Shareholders" with respect to Goodman's business experience (or judgment) necessarily are matters of opinion, which the Consenting Shareholders have the right, and obligation, to express and disclose without fear of retribution or intimidation.

      iv)    In any event, the vague and non-specific injunction sought by Plaintiff as to "future statements" concerning Plaintiff's "business judgment" is wholly improper; it is a brazen prior restraint on speech, and is so vague (and potentially chilling) of speech as to be not only unconstitutional, but wholly unenforceable.

      v)    Nor has Plaintiff met his burden of establishing imminent irreparable harm or hardship. The harm allegedly to be "suffered" by Plaintiff is wholly speculative, and unpleaded, except in conclusory terms, and as the courts have long recognized, would be compensable in monetary damages in any event (notwithstanding that such damage is non-existent).

4.      In view of the foregoing, Plaintiff's motion for preliminary injunctive relief should be denied.

## ARGUMENT

### The Court Lacks Jurisdiction As Neither the Order to Show Cause Nor Summons with Notice Were Served in Accordance With This Court's Order, and Personal Jurisdiction Over Defendants Is Lacking in Any Event

5.      <u>Deficient Service</u> -- "The method of service provided for in an Order to Show Cause is jurisdictional in nature and must be strictly complied with." <u>See</u>, <u>e.g.</u>, <u>Scharmann's Inc. v. 388 West Broadway LLC</u>, 258 A.D.2d 262, 262, 685 N.Y.S.2d 33, 34 (1st Dep't 1999) (affirming denial of motion based upon failure of proper service); <u>Turkish v. Turkish</u>, 126 A.D.2d 436, 439, 510 N.Y.S.2d 582, 585 (1st Dep't 1987) ("Since plaintiff did not strictly comply with the provisions for service set forth in the initial order to show cause, there was no jurisdiction over defendant, and [plaintiff's] proceeding should have been dismissed."); <u>McGreevy v. Simon</u>, 220 A.D.2d 713, 714, 633 N.Y.S.2d 177, 178 (2d Dep't 1995) ("Because the petitioner failed to properly serve Simon, a 'necessary party' pursuant to the order to show cause, the Supreme Court was without jurisdiction to entertain this proceeding.").

6.      Here, the Court's January 16, 2008 Order to Show Cause specifically provided for "by hand" personal service upon Defendants:

> ORDERED, that service of a copy of this order and all papers upon which it is based, along with service of the summons with notice, *be personally served* upon the Defendants by hand delivery on or before January 18, 2008, be deemed good and sufficient service. (emphasis applied)

Order to Show Cause at 2 (this Court explicitly <u>deleted</u> a provision requested by Plaintiff permitting service "by fax").

7.     Plaintiff, however, failed to properly serve Broadcaster by hand, as required by the Court's Order.  Indeed, there has been no indication that Plaintiff even attempted to comply.  Instead, flaunting the Court's Order, Plaintiff merely forwarded the Order to Show Cause and underlying Summons with Notice to Blair Mills, an officer of Broadcaster, in California, via e-mail, on January 18, 2008 (a true and correct copy of which is attached hereto as Exhibit A).  In e-mailing the Order to Show Cause, Plaintiff admitted that service had not been made "by hand" by including a form "acknowledgment of service," threatening "if the Statement of Service is not returned, you will be responsible for the costs of serving the Summons upon you."  See Exhibit A. Such service was not authorized by the Court.

8.     Because Broadcaster, as well as all of the other named Defendants, would, according to Plaintiff's Summons with Notice, be necessary parties to these injunction proceedings, and because none were personally served "by hand" in accordance with this Court's January 16, 2008 Order (and Plaintiff purported to give notice to only one Defendant, Broadcaster, via an unauthorized means of service), this Court lacks jurisdiction over the proceeding and the application must be denied and/or dismissed. McGreevy, 220 A.D.2d at 713, 633 N.Y.S.2d at 177; see also Editorial Photocolor Archives, Inc. v. Granger Collection, 61 N.Y.2d 517, 523, 474 N.Y.S.2d 964, 967 (1984) (vacating preliminary injunction and holding that "[a] judgment or order issued without subject matter jurisdiction is void, and that defect may be raised at any time and may not be waived."). See Hart Island Committee v. Koch, 150 A.D.2d 269, 272, 541 N.Y.S.2d 790, 791 (1st Dep't 1989) ("The law is well established that unless there is an underlying action which

confers statutory authority on the court to grant a preliminary injunction, the court has no jurisdiction to award such relief.") (internal quotation and citations omitted).

9.    <u>Deficient Personal Jurisdiction</u> -- There are a multitude of additional reasons, beyond Plaintiff's failure to comply with this Court's Order, as to why the instant application is deficient and without merit. To start, there is no basis for this Court to exercise personal jurisdiction over Defendant Broadcaster, nor is any set forth or established. In his affidavit (at ¶ 7), Plaintiff wrongly asserts that jurisdiction would be proper pursuant to CPLR § 302(a)(3)(ii). That section of the long-arm statute, however, is wholly inapplicable as a basis for jurisdiction where, as here, the underlying cause of action is one for defamation. <u>See</u> CPLR § 302(a)(3) ("… [A] court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent: (3) commits a tortious act without the state causing injury to person or property within the state, <u>except as to a cause of action for defamation of character</u> arising from the act ….") (emphasis added); <u>Findlay v. Duthuit</u>, 86 A.D.2d 789, 790, 446 N.Y.S.2d 951, 953 (1st Dep't 1982) ("In looking for the reality and the essence of the action and not its mere name, we conclude from a fair reading of the complaint that plaintiff's claims do indeed sound in defamation of character which cause is exempt from acts by a non-domiciliary which may serve as a basis for long-arm jurisdiction under CPLR 302(a)(2) and (3).").

10.    Because the Court lacks jurisdiction over these preliminary injunctive proceedings, and cannot otherwise exercise personal jurisdiction over Broadcaster (or the other Defendants) in this action, the current motion must be denied and the action dismissed.

defamatory statements complained of constitute non-actionable opinion which, as a matter of law, cannot support a defamation action.

14.  Impermissible Prior Restraint -- It is well established, as the First Department has held, that prior restraints – *i.e.*, injunctions on speech – "are not permissible, as here, merely to enjoin the publication of libel." Rosenberg Diamond Dev. Corp., 290 A.D.2d at 239, 735 N.Y.S.2d at 529 (vacating temporary restraining order prohibiting dissemination of libelous or slanderous material); see also Ramos v. Madison Square Garden Corp., 257 A.D.2d 492, 492, 684 N.Y.S.2d 212, 213 (1st Dep't 1999) ("Even if some form of equitable remedy were appropriate for defamation, a dubious proposition at best, the particular equitable relief here sought, in the nature of a prior restraint, is strongly disfavored and would be wholly inappropriate in the present context."); Metropolitan Opera Ass'n Inc. v. Local 100, Hotel Employees and Restaurant Employees Int'l Union, 239 F.3d 172, 177 (2d Cir. 2001) ("[F]or almost a century the Second Circuit has subscribed to the majority view that, absent extraordinary circumstances, injunctions should not issue in defamation cases;" holding that even "intimidation" and "coercion" do not constitute "extraordinary circumstances" such to support the issuance of a prior restraint).

15.  Because Plaintiff here has not established his right to relief, and because he could pursue monetary damages for any purported future defamation, this case falls far from that "single, extremely narrow class of cases" where future publication "*would be so dangerous to fundamental government interests as to justify a prior restraint.*" See New York Times Co. v. United States ("Pentagon Papers Case"), 403 U.S. 713, 726 (1971) ("Any system of prior restraints of expression comes to this Court bearing a heavy

presumption against its constitutionality." <u>Id</u>. at 714) (emphasis added); <u>Metropolitan Opera Ass'n Inc.</u>, 239 F.3d at 177 ("[B]ecause ordinary libels may be remedied by damages, equity will not enjoin a libel absent extraordinary circumstances."); <u>Rombom v. Weberman</u>, 309 A.D.2d 844, 766 N.Y.S.2d 88 (2d Dep't 2003) (same). Nor is this the type of rare case in which a judgment <u>finding</u> defamation has already been issued, and an injunction sought with respect to any republication. <u>See, e.g.</u>, <u>Balboa Island Village Inn, Inc. v. Lemen</u>, 156 P.3d 339, 350 (Cal. 2007) ("In determining whether an injunction restraining defamation may be issued, therefore, it is crucial to distinguish requests for preventive relief prior to trial and post-trial remedies to prevent repetition of statements judicially determined to be defamatory. [...] The attempt to enjoin the initial distribution of defamatory material meets several barriers, the most impervious being the constitutional prohibitions against prior restraints on free speech and press....").

16.   <u>Privilege</u> -- Plaintiff's motion for a preliminary injunction must also be denied on the independent ground that the disclosures made in the subject SEC filings pursuant to Section 14(c) (or to be made) concerning Plaintiff's removal from the Broadcaster board of directors, and the beliefs and opinions of the consenting shareholders in connection therewith, are necessarily privileged. As the New York Court of Appeals held last year in similar circumstances, "[s]tatements made by an employer on a NASD employee termination notice are subject to an absolute privilege in a suit for defamation." <u>See</u> <u>Rosenberg v. MetLife, Inc.</u>, 8 N.Y.3d 359, 368, 834 N.Y.S.2d 494 (2007) (noting that the requirement for such compulsory filings had been delegated by the SEC to the NASD); <u>see also</u> <u>Carnegie Int'l Corp. v. Grant Thornton LLP</u>, 2006 WL 990960 (Md. Cir. Ct.

March 30, 2006) (holding that statements made in SEC filings were subject to absolute privilege in defamation suit).[3]

17.    Opinion -- The motion must also be denied on the independent ground that the statements at issue are non-actionable opinion.  To establish a cause of action for defamation, Plaintiff must allege a "false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se."  Dillon v. City of New York, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (dismissing complaint for defamation).  Ironically, Plaintiff's citation to Dillon and recitation of the defamation pleading standards stands is in stark contrast to adequacy of allegations (let alone proof) of each of these elements in Plaintiff's affidavit and Summons with Notice.  CPLR 3016(a) mandates that "the particular words complained of shall be set forth in the complaint . . . ."  See also Dillon, 261 A.D.2d at 38, 704 N.Y.S.2d at 5 ("The complaint also must allege the time, place and manner of the false statement and specify to whom it was made.").  Further, the false statement must "'tend[ ] to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'"  Rinaldi v. Holt, Rinehart & Winston, Inc., 42 N.Y.2d 369, 379, 397 N.Y.S.2d 943, 949 (1977) (quoting Sydney v. Macfadden Newspaper Pub. Corp., 242 N.Y. 208, 211-12 (1926)).

---

[3] Even were the Court to consider the statements contained in Broadcaster's SEC filings as only subject to qualified immunity, the motion for injunctive relief must nonetheless be denied because Plaintiff has not (and cannot) established that the statements were made with the requisite malice.  To the contrary, Plaintiff concedes in his Affidavit that Broadcaster's initial Form 14-c filing was not defamatory and that the later, more explanatory filings were required by the SEC.  See Goodman Aff. at ¶¶ 28-33.

18.    It is black-letter law that an "expression of pure opinion is not actionable." <u>Steinhilber v.</u>

<u>Alphonse</u>, 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 903 (1986).  According to the Court

of Appeals, "it is a settled rule that expressions of an opinion "'false or not, libelous or

not, are constitutionally protected and may not be the subject of private damage actions.'"

<u>Steinhilber</u>, 68 N.Y.2d at 286, 508 N.Y.S.2d at 901 (<u>quoting</u> <u>Rinaldi</u>, 42 N.Y.2d at 380,

397 N.Y.S.2d at 950).[4]

19.    Plaintiff does not allege, nor do his pleading establish, a viable cause of action for

defamation.  To the contrary, the statements at issue constitute non-actionable opinion, as

they merely set forth the Consenting Shareholders' reasoning in removing Plaintiff as a

director based upon the Shareholders' opinions and views of Plaintiff's business

judgment – a subject which is inherently a matter of opinion.[5]

---

[4] The New York Court of Appeals has set forth a four factor test to determine the difference between fact and opinion.  The four factors are as follows:

(1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might 'signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.'

<u>Steinhilber</u>, 68 N.Y.2d at 292, 508 N.Y.S.2d at 905-6 (<u>quoting</u> <u>Ollman v. Evans</u>, 750 F.2d 970, 983 (U.S. Dist. D.C. 1984)); <u>see also</u> <u>Brian v. Richardson</u>, 87 N.Y.2d 46, 51, 637 N.Y.S. 347, 350-51 (1995) (stating that "in distinguishing between actionable factual assertions and nonactionable opinion, the courts must consider the content of the communication as a whole, as well as its tone and apparent purpose" (<u>citing</u> <u>Immuno AG. v. Moor-Jankowski</u>, 77 N.Y.2d 235, 250, 566 N.Y.S.2d 906, 914 (1991)).  "In addition to considering the immediate context in which the disputed words appear, the courts are required to take into consideration the larger context in which the statements were published, including the nature of the particular forum." <u>Brian</u>, at 87 N.Y.2d at 51, 637 N.Y.S.2d at 351.

[5] Plaintiff also cannot plead or prove that the statements rise to the level of defamation *per se* because the statements reflecting at issue do not "affect Plaintiff in his trade, occupation, or profession." <u>Sterling Doubleday Enterprises, L.P. v. Marro</u>, 238 A.D.2d 502, 503, 656 N.Y.S.2d 676, 678 (2d Dep't 1997).

20.    While it is not unusual for terminated employees to attempt to cast their former employers' statements regarding their termination as "defamatory," the courts of New York are extremely reluctant to oblige the retaliatory whims of such former employees. See, e.g., Cutler v. Ensage, Inc., 2007 WL 4372919 at *8 (Sup. Ct. New York County Nov. 30, 2007).

### B.    Plaintiff Has Not Established Irreparable Harm

21.    Plaintiff also has not, and cannot, satisfy the critical element of irreparable harm. Plaintiff has an adequate remedy at law as "ordinary libels may be remedied by damages." Metropolitan Opera Ass'n, Inc., 239 F.3d at 177 (citing American Malting Co. v. Keitel, 209 F. 351, 354 (2d Cir. 1913)); see Ramos, 257 A.D.2d at 492, 684 N.Y.S.2d at 213 (dismissing cause of action for declaratory relief concerning alleged defamation, because post-publication damages were an adequate remedy at law). Further, Plaintiff cannot demonstrate that any irreparable injury is "likely" or "imminent, not remote or speculative . . ." and "incapable of being fully remedied by monetary damages." Shyron Bynog v. SL Green Realty Corp., 05 Civ. 0305, 2005 U.S. Dist. LEXIS 34617 at *6 (S.D.N.Y. Dec. 22, 2005).

22.    Plaintiff vaguely contends that he has, and will, suffer "incalculable damages" because he cannot know the extent of potential clients or business he may lose and therefore cannot be monetarily compensated.  However, a claim that "false statements may injure the plaintiff in his business or as to his property does not alone constitute a sufficient ground for issuance of an injunction." Bynog, 2005 U.S. Dist. LEXIS 34617 at *10 (quoting American Malting Co., 209 F. at 356).  Moreover, "[l]ost profits and tax benefits, however, difficult to compute they may be, are clearly compensable with money



damages," and thus do not constitute a showing of irreparable injury as per a preliminary injunction analysis. <u>Sterling Fifth Assocs. v. Carpentile Corporation, Inc.</u>, 5 A.D.3d 328, 329, 774 N.Y.S.2d 140, 142 (1ˢᵗ Dep't 2004).

### C. The Balance of the Equities Weighs Heavily Against the Issuance of a Preliminary Injunction

23. Plaintiff's motion must also be denied because the balance of the equities weighs heavily against the entry of such a prior restraint on speech. <u>See</u> <u>generally</u> <u>U.S. Re Cos.</u>, 41 A.D.3d at 152, 838 N.Y.S.2d at 37.

24. While Plaintiff conclusorily asserts that he may suffer "continued damage" should an injunction not be issued (Goodman Aff. at ¶ 72), such a conclusory and speculative claim is unsupported by any factual showing.

25. On the other hand, were an injunction issued, Broadcaster and its shareholders would be substantially harmed, indeed conceivably "held hostage" by a properly-terminated member of the Broadcaster board of directors, who is seeking to inhibit Broadcaster from being responsive to the SEC's requests for additional disclosure and to restrain the dissemination of the Consenting Shareholders' views, which harms both Broadcaster and the public.

26. Such harms are wholly unjustified here, especially as there has been absolutely no adjudication or finding that any of Broadcasters' past statements are defamatory in any way.

### The Preliminary Injunction Must Be Denied and the Temporary Restraining Order Vacated or Discontinued As Vague and Overly Broad

27. The scope of preliminary injunctive relief requested by Plaintiff is vague and overly broad. Indeed, the continuation of such restraints could conceivably present Broadcaster


with the Hobson's choice of choosing either to comply with the SEC's repeated requests for disclosure, or face a potential contempt proceeding for failing to comply with a prior restraint that is inherently vague.

28. Specifically, the Temporary Restraining Order submitted by Plaintiff provided:

> ORDERED that pending a hearing of this motion that the Defendants are hereby restrained from publishing or republishing, either electronically or in print, any false and/or defamatory statements in Securities and Exchange Commissions filings, regarding the business judgment of the Plaintiff.

29. The restraint requested by Plaintiff must be vacated because it is impermissibly vague and ambiguous. A party to be restrained is entitled to a clear denotation of what he or she is not permitted to do. See Int'l Latex Corp. v. Flexees, Inc., 281 A.D. 363, 368, 119 N.Y.S.2d 409, 414 (1st Dep't 1953). This Court itself has squarely held that in considering whether to enforce a preliminary injunction through civil contempt proceedings, the Court is required to find, made with reasonable certainty, that defendant violated a Court Order which "clearly express[es] an unequivocal mandate." See, e.g., Zodkevitch v. Feibush, 17 Misc. 3d 1106A, 2007 N.Y. Misc. LEXIS 6650 (Sup. Ct. New York County Sept. 11, 2007) (Tolub, J.); see also McCormick v. Axelrod, 59 N.Y.2d 574, 583, 466 N.Y.S.2d 279, 283-84 (1983) ("In order to find that contempt has occurred in a given case, it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect.").

30. No such "unequivocal mandate" is reflected in the overly broad and impermissibly vague language of the relief which Plaintiff seeks from this Court. Rather, the scope of the proposed restraint has, and appears intended to have, the effect of inhibiting Broadcaster from filing required SEC disclosures (specifically sought by the SEC and otherwise to be

filed this week) concerning the Consenting Shareholders' views and opinions with respect to Plaintiff's qualifications and business acumen, to the extent those views and opinions, along with other matters, formed the basis for Plaintiff's removal from the board of directors. Plaintiff purports not to be contesting or objecting to his removal as a director (Goodman Aff. ¶ 4). Although his conduct suggests otherwise, to the extent that the reasons for Plaintiff's removal rest in part upon the Consenting Shareholders' opinions regarding his business acumen and experience, Broadcaster is obligated to express such views in the required SEC disclosures.

31.    For all of the reasons set forth, Plaintiff's motion should be denied and the temporary restraining order issued by this Court be immediately vacated and/or discontinued.

Dated: New York, New York
        January 23, 2008

                              Michael P. Zweig



From: Paul Goodman [mailto:pgoodman@cszlaw.com]
Sent: Friday, January 18, 2008 1:08 PM
To: Blair Mills
Subject: <no subject>

Enclosed please find a New York Supreme Court Summons with Notice, as well as, Order to Show Cause. Yourself and Broadcaster, Inc. are two of the defendants in this action. Please note that oral argument of the Order to Show Cause is scheduled for Wednesday, January 23, 2008 at 2:15pm in Part 15, New York Supreme Court, 60 Centre Street, NY, NY.

The document entitled "Statement of Service" explains the return of the acknowledge of service which can be faxed to me at (646) 224-8516. Pursuant to the NY CPLR, if the Statement of Service is not returned, you will be responsible for the costs of serving the Summons upon you.


Paul Goodman

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------X

PAUL GOODMAN,

Plaintiff,

-against-                                          Index No. 100707/08

Complaint

MARTIN WADE, NOLAN QUAN, BLAIR MILLS,
BROADCASTER, INC., GARY HERMAN, BRUCE
GALLOWAY, THOMAS KIKIS, KIKIS FAMILY
FOUNDATION, WILLOW CREEK CAPITAL
MANAGEMENT, TRINAD CAPITAL MASTER
FUND, LTD., AARON BROWN, ANDREW GARRONI,
STRATEGIC TURNAROUND EQUITY PARTNERS, LP
(CAYMAN) AND DIGITAL CREATIVE DEVELOPMENT
CORPORATION,

Defendants.

-------------------------------------------------------------X

Plaintiff *Pro Se* Paul Goodman, for his complaint, alleges as follows:

THE PARTIES

1.    At all times hereinafter mentioned, Broadcaster, Inc ("Broadcaster") was
and still is a domestic corporation duly organized and existing under and by the virtue of
the laws of the State of Delaware.  At all times hereinafter mentioned, Broadcaster
maintained offices within the State of New York, County of New York and regularly
transacted and conducted business within the State of New York, County of New York.
Broadcaster is a publicly traded corporation with its stock listed for quotation on the
Over-the-Counter Bulletin Board ("OTCBB").

2.    At all times hereinafter mentioned, Plaintiff Paul Goodman maintained
offices within the State of New York, County of New York. At all times hereinafter

mentioned, Plaintiff Paul Goodman, was a member of the Board of Directors of Broadcaster. Plaintiff is duly admitted to the practice of law in the State of New York and maintains a corporate and corporate securities law practice focused on companies involved in the software and Web industries.

3.     At all times hereinafter mentioned, Defendant Martin Wade ("Wade") has been and still is the Chief Executive Officer of Broadcaster and a member of the Board of Directors of Broadcaster.  Defendant Wade has regularly transacted and conducted business within the State of New York, County of New York.

4.     At all times hereinafter mentioned, Defendant Nolan Quan ("Quan") has been and still is the President and Chief Operating Officer of Broadcaster.  Defendant Quan has regularly transacted and conducted business within the State of New York, County of New York.  Upon information and belief, Defendant Quan is a resident of the State of California.

5.     At all times hereinafter mentioned, Defendant Blair Mills ("Mills") has been and still is the Chief Financial Officer of Broadcaster and a member of the Board of Directors of Broadcaster.  Defendant Mills has regularly transacted and conducted business within the State of New York, County of New York.  Upon information and belief, Defendant Mills is a resident of the State of California.

6.     At all times hereinafter mentioned, Defendant Digital Creative Development Corporation has been a stockholder of Defendant Broadcaster. Upon information and belief, Defendant Digital Creative Development Corporation maintains its principal place of business in the State of New York and has regularly transacted and conducted business within the State of New York, County of New York.



7.     At all times hereinafter mentioned, Defendant Bruce Galloway, either directly and/or beneficially, has been stockholder of Defendant Broadcaster. Upon information and belief, Defendant Galloway has regularly transacted and conducted business within the State of New York, County of New York. Upon information and belief, Defendant Galloway is a resident of the State of New York.

8.     At all times hereinafter mentioned, Defendant Gary Herman has been, either directly and/or beneficially, a stockholder of Defendant Broadcaster. Defendant Herman has regularly transacted and conducted business within the State of New York, County of New York. Upon information and belief, Defendant Herman is a resident of the State of New York.

9.     At all times hereinafter mentioned, Defendant Thomas Kikis has been, either directly and/or beneficially, a stockholder of Defendant Broadcaster. Defendant Kikis has regularly transacted and conducted business within the State of New York. Upon information and belief, Defendant Kikis is a resident of the State of New York.

10.     At all times hereinafter mentioned, Defendant Kikis Family Foundation has been a stockholder of Defendant Broadcaster. Upon information and belief, Defendant Kikis Family Foundation maintains its principal place of business in the State of New York and has regularly transacted and conducted business within the State of New York.

11.     At all times hereinafter mentioned, Defendant Willow Creek Capital Management has been a stockholder of Defendant Broadcaster. Upon information and belief, Defendant Willow Creek Capital Management has regularly transacted and conducted business within the State of New York. Upon information and belief,

Defendant Willow Creek Capital Management maintains its principal place of business in the State of California.

12.    At all times hereinafter mentioned, Defendant Trinad Capital Master Fund, Ltd. has been a stockholder of Defendant Broadcaster. Defendant Trinad Capital Master Fund, Ltd. has regularly transacted and conducted business within the State of New York. Upon information and belief, Defendant Trinad Capital Master Fund, Ltd. is a resident of the State of California.

13.    At all times hereinafter mentioned, Defendant Aaron Brown has been, either directly and/or beneficially, a stockholder of Defendant Broadcaster. Upon information and belief, Defendant Brown has regularly transacted and conducted business within the State of New York. Upon information and belief, Defendant Aaron Brown is a resident of the State of California.

14.    At all times hereinafter mentioned, Defendant Strategic Turnaround Equity Partners, LP (Cayman) has been a stockholder of Defendant Broadcaster. Upon information and belief, Defendant Strategic Turnaround Equity Partners, LP (Cayman) maintains it principal place of business within the State of New York and has regularly transacted and conducted business within the State of New York.

15.    At all times hereinafter mentioned, Defendant Andrew Garonni has been a stockholder of Defendant Broadcaster and a long time business partner and associate of Defendants Wade, Quan and Mills. Defendant Garonni has regularly transacted and conducted business within the State of New York. Upon information and belief, Defendant Garonni is a resident of the State of California.

## BACKGROUND FACTS

16.    Upon information and belief, in December, 2007, Defendant Wade, acting outside his of capacity as the Chief Executive Office of Defendant Broadcaster conspired with Defendants Quan, Mills and Garonni and the other Defendants herein, and orchestrated an attempt to seize control Defendant Broadcaster by attempting to remove Broadcaster's two independent Directors, which included the Plaintiff.

17.    In connection therewith, Defendant Wade caused Defendant Broadcaster on behalf of themselves and the other Defendants, to wantonly and repeatedly publish numerous false, defamatory, malicious and misleading statements regarding Plaintiff's business judgment, honesty, integrity, virtue and reputation, all done with the specific intent of retaliating against the Plaintiff for his acts in revealing Defendants Wade, Quan, Mills and Garonni's mismanagement and fraudulent conversion of corporate funds. At the time of the publication of such statements, Defendant Wade was aware of the falsity thereof.

18.    On January 4, 2008, Defendant Wade caused Defendant Broadcaster to publish, on behalf of themselves and the other Defendants, on the Securities and Exchane Commission's (the "SEC) publicly available EDGAR system and Web site, found at www.sec.gov, an amendment to corporate filing known as a  Form 14C preliminary Information Statement (the "First Amendment") which was the instrumentality of the Defendants plans to retaliate against the Plaintiff by removing him from the Board of Directors of Defendant Broadcaster.  The First Amendment stated, in pertinent part, it states:



On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors and the fact that based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry.

19. Defendant Wade, on January 9, 2008, caused Defendant Broadcaster to publish, on the SEC's publicly available EDGAR system and Web site, on behalf of themselves, another Amendment to the preliminary Information Statement (the "Second Amendment"), which furthered the defamatory statements and falsehoods made against Plaintiff and states, in pertinent part:

Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. The fact that, based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry also contributed to such lack of confidence .

20. On January 11, 2008, Defendant Wade caused Defendant Broadcaster to publish, on the SEC's publicly available EDGAR system and Web site and Web site, on behalf of themselves and the other Defendants, yet another amendment to the preliminary Information Statement (the "Third Amendment"), which states:

Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. The fact that, based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry also contributed to such lack of confidence.

21.     On January 23, 2008, Defendant Wade caused Defendant Broadcaster to publish, on the SEC's publicly available EDGAR system, and Web site, on behalf of themselves and the other Defendants, yet another amendment to the preliminary Information Statement (the "Fourth Amendment"), repeating the false and defamatory statements contained in the First Amendment, Second Amendment and Third Amendment, and which states:

On December 21, 2007,  record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. Although the removal of the two directors is being effected without cause, the consenting shareholders have expressed a lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations among certain consenting shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. In forming their judgment, the consenting shareholders considered that, based upon their biographies and the above referenced conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry.



22.    On January 28, 2008, Defendant Wade caused Defendant Broadcaster to publish, on behalf of themselves and the other Defendants, <u>once again</u> caused Broadcaster to compound its retaliatory, malicious, improper and defamatory acts, by publishing <u>yet another amendment</u> to the preliminary Information Statement (the "Fifth Amendment"), which states:

> On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. By removing Dr. Orza and Mr. Goodman, two of the three independent directors currently on the Board of Directors will be removed. Although the removal of the two directors is being effected without cause, the consenting shareholders have expressed a lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations among certain consenting shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. In forming their judgment, the consenting shareholders considered that, based upon their biographies and the above referenced conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry.

23.    On February 4, 2008, Defendant Wade caused Defendant Broadcaster to publish, on behalf of themselves and the other Defendants, <u>yet another amendment</u> to the preliminary Information Statement (the "Sixth Amendment"), which states:

> On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. By removing Dr. Orza and Mr. Goodman, two of the three independent directors currently on the Board of Directors will be removed.

Although the removal of the two directors is being effected without cause, the consenting shareholders have expressed a lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations among certain consenting shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. In forming their judgment, the consenting shareholders considered that, based upon their biographies and the above referenced conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry.

24.    On or about February 15, 2008, the Sixth Amendment, in the form of a Definitive Information Statement was once again and further published via the distribution of the Sixth Amendment in the US Mail, to all of the hundreds of stockholders of Defendant Broadcaster, who included many of the friends and clients of the Plaintiff.

25.    All documents, published to the EDGAR system and Web site, including the Amendments become permanent public U.S. Federal government records, available to any user of the Web and are indexed by Google, Yahoo and the other search engines.

26.    In addition, all documents, published to the EDGAR system and Web site, are republished on dozens of other Web sites such as FreeEdgar.com and SEC-Info.com. The Defendants were aware that the each repeated publication of the Amendments would greatly increase the damage being done to Plaintiff's reputation and legal career.

27.    At the time that each of the Amendments were filed by Defendants, each of the Defendant knew of the falsity of the statements made in the Amendments regarding the Plaintiff and his qualifications and business judgment.

28.    While each of the Amendments assert that conversations have taken place between the Defendants and the Plaintiff, Defendants Wade, Quan and Mills knew that

such conversations never took place and yet, while aware of the falsity of such statements in the Amendments, caused the Amendments to be filed.

29.     While each of the Amendments asserts that conversations have taken place between the Defendants and the Plaintiff, Defendants Wade, Quan and Mills knew that Plaintiff had never met and never had any conversations with Defendants Galloway, Andrew Garroni and Thomas Kikis and had never met or had any conversations with representatives of Defendants Digital Creative Development Corporation, Kikis Family Foundation, Willow Creek Capital Management and Trinad Capital Master Fund, Ltd.

30.     Defendant Wade, knowing that the conversations cited in the Amendments never took place, executed each of the six Amendments with callous disregard thereof and caused them to be published to the general public.

31.     By implication, the statements contained in the six Amendments imply that the other Directors of Broadcaster had experience managing a "media" company on as a basis of comparison between them and the Plaintiff.

31.     By innuendo, the Defendants intended to make the public believe that the other three directors of Directors of Broadcaster were more qualified than Plaintiff. However, in fact, none of the other Directors have any such relevant experience.

32.     In addition, the reference to Defendant Broadcaster as a "media company", was false and intended to mislead the general public about Plaintiff. In fact, Defendant Broadcaster is not a "media company", is merely a poorly run and managed Web site company similar to the famous YouTube Web site, that was operated as a mere conduit through which Defendants Quan, Wade, Mills and Garonni could siphon off

millions of dollars of Broadcaster's funds through a series of transactions with empty shell corporations.

33.    Plaintiff was nominated as a Director of Defendant Broadcaster based upon the exact same biographical information the Defendants now disparagingly refer to in each of the six Amendments as making Plaintiff unqualified to be a Director of Defendant Broadcaster.

34.    Defendants Quan, Wade, Herman and Galloway voted in favor of Plaintiff's election to Defendant Broadcaster's Board of Directors in June, 2007 based upon the exact same biography they now claim is insufficient to allow Plaintiff to serve on Defendant Broadcaster's Board of Directors.

34.    Defendants' statements regarding Plaintiff in the six Amendments are not only false but completely inconsistent with their past actions and statements.

First Cause of Action<br>
Against All Defendants<br>
<u>(Defamation Per Se)</u>

35.    The statements about the Plaintiff contained in the Amendments are false and defamatory, were known to the Defendants to be false and defamatory, and were published by the Defendants willfully and maliciously with the intent to damage the Plaintiff's good name, and reputation as a corporate and securities attorney.

36.    Upon information and belief, the statements about the Plaintiff contained in the Amendments were maliciously published in order to retaliate against the Plaintiff for uncovering massive financial fraud being conducted by Defendants Wade, Quan and Mills in their effort to loot of Defendant Broadcaster of over $10 million in cash during 2006 and 2007 through a series of illegal shame transactions which accrued directly to

the benefit of Defendants Wade, Quan, Mills and Garonni and to the extreme detriment of the public stockholders of Defendant Broadcaster.

37.    As a result of the publication of the six Amendments and the wanton acts of the Defendants in connection therewith, the Plaintiff has been held up to public contempt, ridicule, disgrace and prejudice; has suffered great mental pain and anguish; and has been irreparably harmed in his law practice, good name, business reputation and social standing, and has lost the esteem and respect of friends, business associates, clients and the public in general, all based upon Defendants' statements known to them as having been untrue

38.    At the time that the Amendments were published on the EDGAR system and Web Site, the Defendants were aware that they would be permanently and continually available to any person researching either Defendant Broadcaster or the Plaintiff via an internet search engine such as Google or Yahoo.  Defendants were further aware that such statements in the Amendments could never be retracted or erased.

39.    At the time that the Amendments were published on the EDGAR system and Web site, the Defendants were aware their publication would permanently damage the Plaintiff's ability to meet and be retained by clients of Plaintiff's law practice and such damage would continue for the entire lifespan of Plaintiff's business.

40.    Defendants publishing of the Amendments on the EDGAR system and Web Site was done for the specific purpose of irreparably damaging the Plaintiff and his law practice and to permanently damage the Plaintiff's ability to earn a living as a corporate and securities lawyer.

41.    By reason of the foregoing, the Plaintiff has suffered damages in an amount to be determined upon the trial of this action but no less than $10 million.

Second Cause of Action
Against Defendants
Broadcaster, Wade, Quan, Mills and Garonni
(Prima Facie Tort)

42.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 41 above.

43.    The publishing of the Amendments by Defendants Broadcaster, Wade, Quan, Mills and Garonni was done with specific knowledge of the falsity of the statements regarding Plaintiff contained therein.

44.    The publishing of the Amendments by Defendants Broadcaster, Wade, Quan, Mills and Garonni was done with specific intent by the Defendants to damage the reputation, career and livelihood of the Plaintiff.

45.    The malicious and improper acts by Defendants Broadcaster, Wade, Quan, Mills and Garonni were done without justification and were all done in an act of retaliation for Plaintiff having exposed the fraudulent acts of Defendants Wade, Quan and Mills in looting Defendant Broadcaster of over $10 million.

46.    The malicious and improper acts by Defendants Broadcaster, Wade, Quan, Mills and Garonni have caused injury to Plaintiff and will continue to cause injury to the Plaintiff for the remainder of his professional career.

47.    By reason of the foregoing, the Plaintiff has suffered damages in an amount to be determined upon the trial of this action but no less than $10 million.

### Third Cause of Action
### Against All Defendants
### (Negligence)

48.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 47 above.

49.    Defendants owed a duty of care to the Plaintiff not to cause damage to the Plaintiff, his business reputation and career through the publication of false statements regarding the Plaintiff.

50.    Defendants are in breach of their duty to the Plaintiff through their publication of false and defamatory statements regarding the Plaintiff.

51.    The acts of Defendants are the actual and proximate cause of damage to the Plaintiff.

52.    By reason of the foregoing, the Plaintiff has suffered damages in an amount to be determined upon the trial of this action but no less than $10 million.

### Fourth Cause of Action
### Against Defendants
### Broadcaster, Wade, Quan, Mills and Garonni
### (Injurious Falsehood)

53.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 to 52 above.

54.    The publishing of the Amendments by Defendants Broadcaster, Wade, Quan and Mills was done with specific knowledge of the falsity of the statements regarding Plaintiff contained therein or acted in reckless disregard of their truth or falsity.

55.    The publishing of the Amendments by Defendants Broadcaster, Wade, Quan and Mills was done with specific intent by the Defendants to cause economic damage to the reputation, career and livelihood of the Plaintiff.

56.    By reason of the foregoing, the Plaintiff has suffered damages in an amount to be determined upon the trial of this action but no less than $10 million.

WHEREFORE, Plaintiff Paul Goodman demands judgment against Defendants as follows:

A.  On the First Cause of Action, against all Defendants in an amount to be determined but not less than $10 million plus other special, punitive and compensatory damages.

B.  On the Second Cause of Action Against Defendants Broadcaster, Wade, Quan, Mills and Garonni in an amount to be determined but not less than $10 million plus other special, punitive and compensatory damages.

C.  On the Third Cause of Action, against all Defendants in an amount to be determined but not less than $10 million plus other special, punitive and compensatory damages.

D.  On the Fourth Cause of Action Against Defendants Broadcaster, Wade, Quan, Mills and Garonni in an amount to be determined but not less than $10 million plus other special, punitive and compensatory damages.

Together with such further and other relief as the Court might find just and proper.

Dated :        New York, New York
               February 28, 2008


                              PAUL GOODMAN
                              Plaintiff Pro Se
                              420 Lexington Avenue
                              Suite 2320
                              New York, New York 10170
                              (212) 661-6800