UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
PAUL GOODMAN,

                                    Plaintiff,

                                                                Case No. 08 CV 2851
        -against-                                               (Stanton, J.)


MARTIN WADE, NOLAN QUAN, BLAIR MILLS,
BROADCASTER, INC., GARY HERMAN, BRUCE
GALLOWAY, THOMAS KIKIS, KIKIS FAMILY
FOUNDATION, WILLOW CREEK CAPITAL
MANAGEMENT, TRINAD CAPITAL MASTER
FUND, LTD., AARON BROWN, ANDREW GARRONI,
STRATEGIC TURNAROUND EQUITY PARTNERS, LP
(CAYMAN) AND DIGITAL CREATIVE DEVELOPMENT
CORPORATION,

                                    Defendants.
--------------------------------------------------------------------X


PLAINITFF'S MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO REMAND
AND IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS OR TRANSFER</u>


                                        Paul Goodman
                                        Plaintiff *Pro Se*
                                        420 Lexington Avenue
                                        Suite 2320
                                        New York, New York 10170
                                        (212) 661-6800

# TABLE OF CONTENTS

Introduction.................................................................................... 1

Procedural Background...................................................................... 2

Background History........................................................................... 2

ARGUMENT

I. This Action Should Be Remanded To New York State Supreme Court................. 10

II. Alternatively, This Action Should Not Be Dismissed and Should Not Be
    Transferred................................................................................. 14

    A. Defendant's Motion to Dismiss Should Be Denied............................. 15

    B. Defendants' Motion for Transfer Should Be Denied........................... 29

Conclusion...................................................................................... 33

## TABLE OF AUTTHORITIES

**Cases**                                                                Page(s)

*Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge North Am., Inc.,*
    474 F.Supp.2d 474, 484 (S.D.N.Y.2007)………………………………….    30

*Bivas v. State,*
    97 Misc.2d 524, 411 N.Y.S.2d 854…………………………………….    27

*Burns Jackson Miller Summit & Spitzer v. Lindner,*
    59 N.Y.2d 314 (1983)…………………………………………………..    27

*Cianci v New Times Pub. Co.,*
    639 F2d 54, 64, 65 (2d Cir)…………………………………………….    21

*Cuomo v. Lilco,*
    589 F. Supp. 1387, 1391 (E.D.N.Y. 1984)…………………………….    10

*D.H. Blair & Co., Inc.,* 462 F.3d at 106-07………………………………..    28

*Dealtime.com v. McNulty,*
    123 F.Supp.2d 750, 755 (S.D.N.Y.2000) …………………………….    28

*Dillon v. City of New York,*
    261 A.D.2d 34, 38 (1999)……………………………………………..    15

*Distefano v. Carozzi North Am., Inc.,*
    No. 98 CV 7137(SJ), 2002 WL 31640476, at *4 (E.D.N.Y. 2002)………..    30

*Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978)…………    29

*Giffuni v. Feingold,*
    299 A.D.2d at 266, 749 N.Y.S.2d 716 (1st Dept 2002)………………….    22

*Glass v. S & M NuTec,*
    456 F.Supp.2d 498, 501 (S.D.N.Y.2006)……………………………….    28

*Gross v. British Broadcasting Corp.,*
    386 F.3d 224, 230 (2d Cir. 2004)……….....................................    29

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501, 508 (1947) ………………………………………........    29

*Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.,*
  No. 04-CV-629 (ARR)(ASC), 2004 WL 1812821,
  at *4 (E.D.N.Y. July 19, 2004)..................................... 28

*Hotchner v Castillo-Puche,*
  551 F2d 910, 913 (2d Cir)*, cert denied sub nom.*
  *Hotchner v Doubleday & Co.,* 434 US 834................................. 21

*In re Hanger Orthopedic Group, Inc. Sec. Litig.,*
  418 F.Supp.2d 164, 167-68.(E.D.N.Y.2006)..................................... 28

*In re Indep. Energy Holdings PLC,*
  154 F.Supp.2d 741, 747 (S.D.N.Y.2001)..................................... 15

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,*
  419 F.Supp.2d 395, 402 (S.D.N.Y.2005)..................................... 28

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,*
  32 F.3d 697, 699 (2d Cir.1994)..................................... 15, 26

*Luisi v. JWT Group, Inc.*
  128 Misc.2d 291, 294 (1985), affd 67 N.Y.2d 914 (1986)..................... 21

*Nappi v. Inc. Vil. of Lynbrook,*
  *19 A.D.3d 565, 566, 796 N.Y.S.2d 537*............................................. 27

*O'Hopp v. ContiFinancial Corp.,*
  88 F.Supp.2d 31, 34 (E.D.N.Y.2000)............................................. 29

*Porter v. Saar,*
  260 A.D.2d 165, 167 (1999)..................................... 16

*Rand v New York Times Co.,*
  75 AD2d 417, 422 (1st Dept 1980)..................................... 21

*Sterling Doubleday Enterprises, L.P. v. Marro,*
  238 A.D.2d 502, 503 (1997)..................................... 16

*Thomas v. City of New York,*
  143 F.3d 31, 36-37 (2d Cir.1998)..................................... 15

*Warlock Enterprises v. City Center Assocs.,*
  204 A.D.2d 438, 438 (1994)..................................... 16

**Statutes**

28 U.S.C. § 1332 ................................................................... 10
28 U.S.C. §1404.................................................................... 28
28 U.S.C. §1441.................................................................... 10
FRCP 12(b)(6)...................................................................... 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PAUL GOODMAN,

                                        Plaintiff,

          -against-                                    Case No. 08 CV 2851
                                                       (Stanton, J.)

MARTIN WADE, NOLAN QUAN, BLAIR MILLS,
BROADCASTER, INC., GARY HERMAN, BRUCE
GALLOWAY, THOMAS KIKIS, KIKIS FAMILY
FOUNDATION, WILLOW CREEK CAPITAL
MANAGEMENT, TRINAD CAPITAL MASTER
FUND, LTD., AARON BROWN, ANDREW GARRONI,
STRATEGIC TURNAROUND EQUITY PARTNERS, LP
(CAYMAN) AND DIGITAL CREATIVE DEVELOPMENT
CORPORATION,

                                        Defendants.
------------------------------------------------------------------X

PLAINITFF'S MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO REMAND
AND IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR TRANSFER

Introduction

          Plaintiff submits this Memorandum in support of his Cross-Motion for remand to

New York Supreme Court and in the alternative, in opposition to Defendants' Motion to

Dismiss or Transfer.  As will be shown herein, Defendant Broadcaster improperly

removed this action alleging diversity of citizenship while being keenly aware that six of

the Defendants, was well as the Plaintiff, were all New York residents.  Thus, this action

should be remanded to New York Supreme Court.  In the alternative, Defendants' motion

to dismiss or transfer should be denied in its entirety.

Defendants have filed a joint Memorandum of Law with the action brought by *Michael Gardner v. Martin Wade* 08-cv-2850 (the "Gardner Case"). This case bears no relationship to the Gardner Case and it is inexplicable why Defendants have attempted to combine the two cases together as if they were consolidated, which they are not. Defendants even caption their memorandum as if the cases were consolidated. It is respectfully submitted that Defendants motion in the Gardner case is unrelated to the facts in the instant case and as such, the Court should disregard the contents of Defendants' joint memorandum as being inapplicable to their motion in this action.

## Procedural Background

This action was commenced in New York Supreme Court on January 15, 2008 by the filing of a Summons With Notice together with an Order to Show Cause (with a temporary restraining order) seeking a preliminary injunction. On January 23, 2008, Plaintiff and Defendant Broadcaster appeared before Justice Tolub in New York Supreme Court and argued the Order to Show Cause which was denied. Thereafter, Defendant Broadcaster served a Demand for Complaint. On February 28, 2008, the Complaint was served. On March 19, 2008, Defendant Broadcaster improperly removed this action alleging diversity of citizen despite the existence of six separate defendants who are either citizens of New York or whose primary place of business is within New York County.

## Background History

On May 9, 2007, Plaintiff was elected to the Board of Directors of Defendant Broadcaster, Inc., a Delaware corporation ("Broadcaster") at its annual meeting of stockholders. Broadcaster is a publicly traded corporation with its stock listed for

2

quotation on the Over-the-Counter Bulletin Board ("OTCBB"). The Defendants herein (other than Broadcaster) are each stockholders of Broadcaster or individuals controlling the entities who executed a written consent of stockholders calling for Plaintiff's removal as a Director of Defendant Broadcaster. Defendant Wade is the Chief Executive Officer of Defendant Broadcaster. Defendant Quan is the President of Defendant Broadcaster and allegedly its largest shareholder. Defendant Mills is the Chief Financial Officer of Defendant Broadcaster.

From the time that Plaintiff was elected to the Board of Directors, he became a vocal critic of Broadcaster's business model and management's inability to reduce costs and create a competitive business. Then, in December, 2007, Plaintiff discovered a series of transactions in which Broadcaster paid large sums to entities which appear to be secretly owned and/or controlled by management.

A brief history of Broadcaster will provide the Court with the context necessary to understand this motion.

    A. Broadcaster, in its current state, was created on June 2, 2006, when a company then known as International Microcomputer Software, Inc. ("IMSI") acquired a group of companies owned and/or controlled by Defendant Nolan Quan known as "AccessMedia". IMSI then changed its name to "Broadcaster, Inc." to reflect its new business.

    B. At such time, AccessMedia provided subscription-based entertainment videos over the Web. Apparently unknown to IMSI's management, the business tactics employed by Mr. Quan's companies to acquire subscribers were under investigation by the Federal Trade Commission ("FTC") and involved several practices determined by the FTC to be unlawful including secretly downloading "spyware software" on to consumer's computers and using extortionate tactics to getting consumers to pay fees to the company.

    C. By 2006, it was already well established that charging for content on the Internet was not a viable business concept and it became clear that the Broadcaster had to quickly adopt a new business model.

D.  On or about December 7, 2006, Broadcaster changed it business model by dropping its dubious subscription-based business and re-launching as a video Web site that was similar to the famous YouTube Web site.

E.  Even with a new business model, Broadcaster continued to employ dubious business tactics.  Instead of trying to promote the Broadcaster.com through normal promotional channels such as doing joint ventures with other companies Web companies, Defendant Quan employed a questionable practice of "purchasing Web traffic".  In actuality, what Defendant Quan did was to use an affiliated entity to activate existing "spyware" software (which they had for many years tricked consumers into downloading) to make the Broadcaster.com Web site automatically appear on the computers of unwitting consumers.

F.  Thus, an unwitting computer user might be searching with Google or Yahoo and without any action on their part, the Broadcaster.com home page appeared.  When this happened, over 99% of such users simply either ignored the Broadcaster.com home page or instantly closed it.

G.  This promotional tactic was poorly received by computer users who were often annoyed and dismayed by having the Broadcaster.com Web site appear on their computers.  Many computer users believed Broadcaster.com to be a computer virus.

H.  The costs to Broadcaster for this were tremendous.  For the 12 month period ending June 30, 2007, Broadcaster paid over $6 million for this "traffic generation".  It now seems that this money was paid to one or more entities which were housed within Broadcaster's own California offices and secretly owned and/or controlled by Defendant Quan and possibly other long time business associates of Defendant Quan.  In fact, according to the FTC, these entities and Broadcaster were a "common enterprise".

All throughout this time, Defendant Wade, even though he was CEO of

Broadcaster, failed to take any action to curtail the misdeeds and self dealing of

Defendant Quan.  As a result of Defendants Quan and Wade's mismanagement and

apparent self-dealing, Broadcaster showed an operating loss of over $16 million for the

year ending June 30, 2007 and an operating loss of over $3.1million for the three months

ending September 30, 2007.  As recently as March, 2008, Broadcaster was still losing

over $1 million per month.  Despite these huge, continuing losses, management, led by

Defendants Wade and Quan, made no attempts to curtail spending.

4

Since during the same period of time Broadcaster received very little revenue from its advertising business model, huge losses continued to mount threatening the viability of the company's survival. As a result of the huge operating losses, during that period of time, Broadcaster's stock price dropped over 90%.

As would any responsible Director, Plaintiff and another Director, Dr, Vincent Orza (who subsequently resigned under the Defendants' blistering personal attacks on him) demanded that management take immediate and drastic steps to stop the pointless spending of additional cash for a failed business. Each complaint was met by disinterest and literal distain by Defendant's Wade, Quan and Mills. It then escalated to Defendants Wade, Quan and Mills purposefully ignoring Board of Directors resolutions requiring the termination of the company's operating business and laying off all staff. It should be noted that even without any revenue, Broadcaster continued to employ Defendant Quan's wife and son in unnecessary positions.

Specifically, at two Board meetings conducted on November 26, 2007 and November 27, 2007, the Board voted to terminate all employees and yet, Defendant's Wade, Quan and Mills refused to comply. At the same meetings, the Board voted to pursue other business opportunities for the company. Then, at a meeting in December 13, 2007, when the Board authorized the execution of a letter of intent for the acquisition of a company called "JamNow", the Defendants' true intentions became clear. Not wanting to see the Company acquire JamNow and the simultaneous termination of its current business, Defendant Quan improperly instructed the CEO, Defendant Wade, to present to the Board yet another potential acquisition, a Web hosting company known as

5

"WebHost4Life." WebHost4Life is a company which is a significant client of one of Defendant Quan's private ventures known as "Alchemy Communications".

In order to continue their scheme, Defendants Wade, Quan and Mills solicited other stockholders of Broadcaster to remove Plaintiff and Dr. Orza as Directors of Broadcaster, allegedly, "not for cause". The group of stockholders organized by Defendants Wade, Quan and Mills purportedly constituted a majority and on or about December 21, 2007, each executed a written consent to remove Plaintiff and Dr. Orza from the Board of Directors (the "Written Consent")(Exhibit "B"). Simultaneously, Defendant Wade, acting without the Board of Director's knowledge or consent, withdrew the executed JamNow letter of intent.

However, in order to effectuate such removal, the Defendants had to cause Broadcaster to comply with the requirements of Section 14 of the Securities Act of 1934, as amended (the '34 Act"). Defendant Wade, acting on behalf of Broadcaster, was none to happy to help the other Defendants in this task. Even though Broadcaster was not an party to the attempt to remove Plaintiff and Dr. Orza, he fired Broadcaster's outside corporate counsel and then hired a new law firm, at Broadcaster's sole expense, to prepare and file the Information Statement on behalf of the other Defendants.

This Information Statement and it amendments is the gravamen of this action.

Late in the afternoon of Friday, December 21, 2007, Defendant Wade caused Defendant Broadcaster to file a preliminary Information Statement on the SEC's EDGAR Web site. A complete copy is attached in Exhibit "B" to Plaintiff's Declaration. The Information Statement contained the following description of the action being taken:

> On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock

6

outstanding as of December 21, 2007, executed and delivered a written
consent providing for the removal without cause of two directors, Dr.
Vincent Orza and Paul Goodman from their positions on our Board of
Directors. A copy of the written consent of the majority stockholders is
attached as Annex A to this Information Statement.

Apparently, the SEC's Corporation Finance staff was not satisfied with the level

of disclosure in the December 21, 2007 preliminary Information Statement, and

Broadcaster amended the Information Statement to explain the basis of the removal. <u>This

is where Broadcaster and the other Defendants went from filing just a perfunctory

document to publishing defamatory statements.</u> On January 4, 2008, Defendant Wade

caused Broadcaster to publish an amendment to the preliminary Information Statement

(the "First Amendment") (Exhibit "B"), which adds the first instance of <u>false and

defamatory statements.</u> In pertinent part, it states:

On December 21, 2007, record holders of 29,777,137 shares of our
Common Stock, representing approximately 58% of such Common Stock
outstanding as of December 21, 2007, executed and delivered a written
consent providing for the removal without cause of two directors, Dr.
Vincent Orza and Paul Goodman from their positions on our Board of
Directors. <u>Although the removal of the two directors is being effected
without cause, it is motivated by the shareholders' lack of confidence in
the business judgment of the two directors being removed. Such lack of
confidence is the result of recent conversations between the shareholders
and the directors and the fact that based upon their biographies and
conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior
experience in managing companies in the media industry.</u> (emphasis added
to show language added)

Apparently, the SEC's Corporation Finance staff was <u>still</u> not satisfied with the

level of disclosure in the Information Statement, and so, <u>once again,</u> Defendant Wade, on

January 9, 2008, caused Broadcaster to compound its improper and defamatory acts by

publishing yet another Amendment to the preliminary Information Statement (the

"Second Amendment") (Exhibit "B"), which furthers the falsehoods and states, in

pertinent part:

> Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. <u>Such lack of confidence is the result of recent conversations between the shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price.</u> The fact that, based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry also contributed to such lack of confidence. (emphasis added to show language added).

This then continued <u>yet one more time</u> on January 11, 2008, when Defendant

Wade, <u>once again</u> caused Broadcaster to compound its improper and defamatory acts,

this time ratcheting up the personal attacks, by publishing <u>yet another amendment</u> to the

preliminary Information Statement (the "Third Amendment") (Exhibit "B"), which states:

> Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations between the shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. The fact that, based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry also contributed to such lack of confidence.<u> There were three meetings of the Board of Directors that were held by the Company by telephonic conference (November 26th, December 3rd and 13th, 2007) at which the manner of the shut down was discussed. Messrs. Wade, Berman, Mills and Goodman were present at each meeting. Dr. Orza was present at two of those meetings. At each meeting several non board members were present by invitation. Messrs. Quan, Harris and Gardner were present by invitation at all three meetings and Mr. Herman was present by invitation at the December 13, 2007 meeting. At each meeting there was a disagreement about the how to deal with terminating employees and how to preserve the value of the</u>

8

assets. On December 13, 2007 the Board resolved to dismiss most of the
employees by December 31, 2007 and such action has been implemented.
A copy of the written consent of the majority stockholders is attached as
Annex A to this Information Statement. Listed below is the name of each
such consenting shareholder, the number of shares held by each such
consenting shareholder and the percentage of beneficial ownership of the
Company's common stock held by such consenting shareholder.
(emphasis added to show language added).

At the time of the commencement of this action, only three Amendments had

been filed, but thereafter, Defendant Broadcaster filed three more, then filed the

Definitive Information Statement (Exhibit "B") and then mailed the Definitive

Information Statement to each of its stockholders.  In total, the following documents were

published by Defendant Broadcaster, at the direction of the other Defendants, containing

the defamatory statements:

     A.  Broadcaster Preliminary Information Statement Amendment 1 dated
January 4, 2008.

     B.  Broadcaster Preliminary Information Statement Amendment 2 dated
January 10, 2008.

     C.  Broadcaster Preliminary Information Statement Amendment 3 dated
January 11, 2008.

     D.  Broadcaster Preliminary Information Statement Amendment 4 dated
January 23, 2008.

     E.  Broadcaster Preliminary Information Statement Amendment 5 dated
January 28, 2008.

     F.  Broadcaster Preliminary Information Statement Amendment 6 dated
February 4, 2008.

     G.  Broadcaster Definitive Information Statement dated February 23, 2008

(Collectively, the Information Statement and all the Amendments will be referred to

herein as the "Information Statements").

ARGUMENT

I.  This Action Should Be Remanded To New York State Supreme Court

It is respectfully submitted that there exists a strong and compelling basis to remand this case back to New York State Supreme Court from which it was improperly removed by Defendant Broadcaster.  Without diversity of citizenship, this Court has no subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1441(a) and therefore, remand is proper and the Court has no jurisdiction to decide the Defendants' motion.  Pursuant to 28 U.S.C. § 1441(c), if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  The removing Defendant bears the burden of establishing that it falls within this Court's removal jurisdiction. *Cuomo v. Lilco*, 589 F. Supp. 1387, 1391 (E.D.N.Y. 1984). Defendant Broadcaster, by its own admission, cannot met this burden and this action should be remanded to New York State Supreme Court.

While this case was removed based upon alleged diversity jurisdiction pursuant to 28 USC §1332, the removing Defendant actually admits that no diversity exists.  Yet, in a text book case of frivolous behavior, Defendant Broadcaster removed this action anyway. As show in the Notice of Removal, Defendant Broadcaster was keenly aware that Plaintiff and six of the Defendants (Herman, Galoway, Kikis, Kikis Family Foundation, Strategic Turnaround Equity Partners, LP (Cayman) and Defendant Digital Creative Development Corporation) (collectively, the "New York Defendants") are each New York residents.  As stated by the Removing Defendant in the Notice of Removal:

> 5.  Plaintiff is a citizen of the state of New York
>
> 6.  (a) Defendant Wade is a citizen of the State of New Jersey. (b) Defendant Quan is a citizen of the State of California. (c) Defendant Mills is a

citizen of Canada, is in the United States on a visa, and is currently awaiting a green card. (d) Defendant Broadcaster is a corporation organized under the laws of the State of Delaware, having its principal place of business in Chatsworth, California. (e) <u>Defendant Gary Herman is a citizen of the State of New York</u>. (f) <u>Defendant Bruce Galloway is a citizen of the State of New York</u>. (g) <u>Defendant Thomas Kikis is a citizen of the State of New York</u>. (h) <u>Defendant Kikis Family Foundation has its principal place of business in the State of New York</u>. (i) Defendant Willow Creek Capital Management has its principal place of business in the State of California. (j) Defendant Trinidad Capital Master Fund, Ltd. has its principal place of business in the State of California. (k) Aaron Brown is a citizen of the State of California. (k) Andrew Garroni is a citizen of the State of California. (m) <u>Defendant Strategic Turnaround Equity Partners, LP (Cayman) has its principal place of business in the State of New York</u>. (n) <u>Defendant Digital Creative Development Corporation has its principal place of business in the State of New York.</u> (emphasis added)

Yet, knowing that no diversity exists, Defendant Broadcaster sought to invent a theory by which it could attempt to justify its improper removal. That theory is that when Plaintiff commenced this action in New York Supreme Court, he named the New York Defendants for the sole purpose of destroying diversity jurisdiction and thus, preventing removal. This fiction is further continued in Defendant Broadcaster's allegation that the New York Defendants have been named "solely in their capacity as shareholders of Broadcaster." Paragraph 7, Notice of Removal. Neither is true and the New York Defendants are <u>each among the class of people</u> who made the defamatory statements which are the subject of this action.

While a plaintiff may not defeat a federal court's diversity jurisdiction by naming parties who have no real connection with the controversy, each of the New York Defendants, as admitted by Defendant Broadcaster, are primary actors in the defamation, were each signatories to the Written Consent and are the parties who Defendant

Broadcaster has identified as making and publishing the defamatory statements.[1] Thus, they have each been named as Defendants because of their defamatory acts and not in their capacity as a Broadcaster stockholder.

There is no doubt that the New York Defendants, as well as the other Defendants, caused the publication of the defamatory statements in the Information Statements. The Written Consent contains such instructions from the Defendants (including the New York Defendants) to Defendant Broadcaster, stating:

> RESOLVED, that the Corporation be, and hereby is, authorized, empowered and directed to cause an information statement in accordance with Regulation 14C promulgated by the Securities and Exchange Commission (the "SEC") with respect to the actions taken in the foregoing resolution and to file a Preliminary Schedule 14C with the SEC as soon thereafter as practicable and (unless the Corporation receives notice that the Preliminary Schedule 14C will be subject to review by the SEC) to cause the Definitive Schedule 14 C to be filed with the SEC and information statement to be mailed to the Corporation's shareholders in accordance with the rules of the SEC on the first business day that is at least 10 days after the filing of the Preliminary Schedule 14C (the "Mailing Date"). The foregoing resolution shall become effective on the date (the "Effective Date") that is 20 days after the Mailing Date. (emphasis added).

There is also no question that the defamatory statements contained in the Information Statements are attributable to the Defendants including the New York Defendants. This is made clear by the wording of the Information Statements. For example, in the Definitive Information Statement filed on February 13, 2008, it states:

> On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing

---

[1] Interestingly Defendant Broadcaster fails to note that all of the parties which executed the Written Consent were named as Defendants in this action along with Defendant Broadcaster, yet, Defendant Broadcaster does not allege that the non-New York Defendants were also improperly joined.

for the removal without cause of two directors, Dr. Vincent Orza and Paul
Goodman from their positions on our Board of Directors. By removing Dr.
Orza and Mr. Goodman, two of the independent directors currently on the
Board of Directors will be removed; however, we have recently added two
directors to our Board of Directors, both of whom are independent.
Therefore, after such removal, three independent directors will remain on our
Board of Directors. Although the removal of the two directors is being
effected without cause, the consenting shareholders have expressed a lack of
confidence in the business judgment of the two directors being removed.
Such lack of confidence is the result of recent conversations among certain
consenting shareholders and the directors regarding how to shut down the
Company's business operations in a manner that would preserve the value of
the Company's assets and share price. In forming their judgment, the
consenting shareholders considered that, based upon their biographies and
the above referenced conversations, neither Dr. Vincent Orza nor Paul
Goodman has any prior experience in managing companies in the media
industry. Mr. Goodman has subsequently disputed the judgment reached by
the consenting shareholders regarding his lack of prior experience in
managing companies in the media industry. (emphasis added).

As can be easily seen from the reference to "consenting shareholders" (i.e., those

stockholders who executed the Written Consent), the New York Defendants, as

"consenting shareholders" are proper Defendants in this action.  Simply put, the New

York Defendants are among the class of people who made the statements and thus, are

proper defendants. Since they are proper parties, no diversity exists and remand is

mandated.

This is further confirmed Broadcaster's counsel who on January 3, 2008, in a

letter to the SEC regarding the contents of the Information Statement, stated that all of the

statements contained in the Information Statement were made by the Defendants

(including the New York Defendants) (referring to them as "record holders" [of stock])

by acknowledging:

Each of the record holders engaged in private conversations with one or
more record holders as to the financial condition of the Company as well
as other companies in which they held a financial position and ways to
improve shareholder value. During the course of these conversations each

> <u>record holder expressed its interest in making a change in the composition</u>
> <u>of the board of directors</u> in order to improve shareholder value. (emphasis
> added).

http://www.sec.gov/Archives/edgar/data/814929/000111650208000012/filename1.htm

The burden of demonstrating that a defendant has been fraudulently joined falls squarely upon a defendant; in order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, <u>by clear and convincing evidence,</u> either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court. *Nemazee v. Premier, Inc.*, 232 F.Supp.2d 172 (S.D.N.Y. 2002). In fact, any possibility of recovery, even if slim, militates against a finding of fraudulent joinder. Defendant Broadcaster, as the removing Defendant, has not and cannot meet this high standard. In fact, Defendant Broadcaster itself has repeatedly identified the New York Defendants as among the class of parties that made the defamatory statements and published them and then caused them to be republished multiple times. Certainly no "clear and convincing evidence" has been presented by Defendants.

In light of the fact that there is no diversity of citizenship, it is respectfully submitted that this action has been improperly removed and should be remanded to New York Supreme Court.

## II.  Alternatively, This Action Should Not <u>Be Dismissed and Should Not Be Transferred</u>

Since removal is clearly warranted, it is respectfully submitted that this Court need not make any determination of Defendant Broadcaster's Motion To Dismiss or

14

Transfer. However, in the event that the Court should decide to hear Defendants' motion, it is respectfully submitted that, for the reasons shown below, such motions should be denied.

A.    Defendant's Motion to Dismiss Should Be Denied.

It is respectfully submitted that Defendants' motion to dismiss should be denied in its entirety on the basis that Plaintiff has properly pled the causes of action contained in the Complaint.  On a motion to dismiss pursuant to FRCP 12(b)(6), the Court must accept "as true the facts alleged in the complaint, *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699 (2d Cir.1994), and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas v. City of New York*, 143 F.3d 31, 36-37 (2d Cir.1998). The question for the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). All reasonable inferences are to be drawn in the plaintiff's favor, which often makes it "difficult to resolve [the claims] as a matter of law." *In re Indep. Energy Holdings PLC*, 154 F.Supp.2d 741, 747 (S.D.N.Y.2001).

1.  Defendants Statements Are Actionable.

The elements of defamation are a (a) false statement, (b) published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and (c) it must either cause special harm or constitute defamation *per se*. *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1999).  It is well settled that a defamatory statement is defamation per se if it imputes fraud, dishonesty, misconduct, or unfitness in conducting one's profession". It is also well established that words constitute

defamation *per se* if they affect the plaintiff in his trade, occupation, or profession"
*Sterling Doubleday Enterprises, L.P. v. Marro*, 238 A.D.2d 502, 503 (1997); *Warlock Enterprises v. City Center Assocs.*, 204 A.D.2d 438, 438 (1994).

The alleged defamatory words must be "construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, as opposed to having a forced, artificial construction imposed upon them. *Porter v. Saar*, 260 A.D.2d 165, 167 (1999). Statements which are not defamatory on their face may in fact be defamatory because of the use of innuendo.

It is respectfully submitted that the Complaint properly establishes these elements. In total, Defendants published and/or caused to be published seven separate versions of the Information Statement each repeating and republishing the defamatory statements. Each is fully set forth in the Complaint (¶¶ 31, 32 and 34, Complaint)[2].  More specifically, as alleged in Paragraph 20 of the Complaint, on January 4, 2008, Defendant Broadcaster, at the direction of the other Defendants, published an amendment to the preliminary Information Statement which added the first instance of <u>false and defamatory statements</u>.  In pertinent part, it states:

> On December 21, 2007,  record holders of 29,777,137 shares of our
> Common Stock, representing approximately 58% of such Common Stock
> outstanding as of December 21, 2007, executed and delivered a written
> consent providing for the removal without cause of two directors, Dr.
> Vincent Orza and Paul Goodman from their positions on our Board of
> Directors. <u>Although the removal of the two directors is being effected
> without cause, it is motivated by the shareholders' lack of confidence in
> the business judgment of the two directors being removed. Such lack of</u>

---

[2] At the time that the Complaint was served, only three amendments had been filed, in total, six were eventually filed.  Plaintiffs intends to file, as of right, or to request leave to file, an Amended Complaint which includes the additional Amendments as well as defamatory correspondence recently discovered.

confidence is the result of recent conversations between the shareholders and the directors and the fact that based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry. A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement. (emphasis added)

2. The Statements are False – The Cited Conversations Never Took Place.

Each of the Amendments asserts that conversations have taken place between the "shareholders," meaning the 14 stockholders who signed the Written Consent, and Plaintiff. In fact, no such conversations have ever taken place making Defendants' statements entirely false[3]. In actuality, Plaintiff has never even spoken to some of the signatories of the Written Consent, including Defendants Galloway, Brown, Ellin, Garroni and Kikis. In fact, prior to receiving a copy of the Written Consent, Plaintiff had never heard of several of those individuals, namely, Defendants Ellin, Brown and Kikis nor their corporate entities which also executed the Written consent. Yet, Defendants, knowing that these conversations never took place, caused the publication of each of the Amendments citing the non-existent conversation with Plaintiff.

Then, compounding this falsehood, in cagey fashion, the Third Amendment to the Information Statement states "At each meeting there was a disagreement about the how to deal with terminating employees and how to preserve the value of the assets" as if to suggest that a series of conversations took place at Board meetings between Plaintiff and the Defendants. While there were disagreements at the Board meetings, the statements in

---

[3] While the Third Amendment notes that one of the signatories of the written consent (Defendant Gary Herman) attended a Broadcaster Board of Directors meeting, by telephone, Plaintiff's short conversation with him involved his right to be present at the meeting. Plaintiff had no discussion regarding the business of Broadcaster with Defendant Herman.

17

the Amendments are completely and intentionally false. While, Defendant Quan was present at some or all of such meetings as an observer, the discussions were between the five Directors of Broadcaster and not among Plaintiff and the Defendant stockholders. In addition, the discussions did not "deal" with the best way to terminate employees. In fact, the discussions dealt with Plaintiff's (and three other Directors) vote against Defendant Quan's proposal that Broadcaster become an offshore Internet pornography Web business and disagreements with Defendant Wade for his refusal to terminate Broadcaster's employees after a four-to-one vote of the Board of Directors to do so (with Defendant Wade himself voting in favor of such termination of employees).

Thus, it is not an opinion as to whether the conversations took place, it is rather a fact that they did not. Therefore, the Amendments contain untrue statements about the Plaintiff purporting to be fact.

### 3. Statements Regarding Plaintiff's Experience Are Also False.

The statements made by Defendants regarding Plaintiff's experience are factually untrue and defamatory. Each of the published documents contains the phrase "based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry". This factual, but untrue statement, is used to support Defendants' defamatory conclusions such as the alleged lack of experience being the basis of the Defendants' "lack of confidence" in the Plaintiff. Simply stated, the statements made about Plaintiff's experience are untrue.

In fact, Plaintiff has more experience in advising companies in Defendant Broadcaster's industry than any other current or past member of Broadcaster's Board of Directors. Plaintiff was elected to the Board of Directors of Broadcaster at its annual

meeting of stockholders on May 9, 2007. Plaintiff had been nominated to the Board of

Directors by Defendant Wade based upon his experience as a securities lawyer, his

extensive background in working with small Internet companies similar to Broadcaster

and his prior working relationship with Defendant Wade, which included representing a

client which was acquired by Defendant Broadcaster's predecessor company.

It is important to note despite its assertion in the Information Statements that

Broadcaster is not a media company. In fact, it is merely a Web site company similar to

YouTube, which lets users create profiles, post videos to the site and use a webcam to

communicate directly to other user. It is in no way, shape or form, a media company in

the sense that the television networks or newspaper and magazines publishers are "media

companies". In fact, characterizing Broadcaster as a "media company" in the

Amendments was a clear attempt to trick the reader into believing that Defendants' false

and defamatory statements were true.

The truth is that Defendant Broadcaster is just another Web site among the

hundreds vying for the online video sharing and user generated content market, along

with companies such as YouTube, MySpace and Facebook. Nothing can show the falsity

of that description better that Defendant Broadcaster's own words contained in its Form

10-K filed for fiscal year 2007, in which Broadcaster describes itself as:

> Broadcaster, Inc. ("Broadcaster") is a Delaware corporation which is primarily
> engaged in the business of operating a Social Video Network over the Internet.
> Among its innovative features, Broadcaster's Social Video Network provides a
> two-way interactive video chat interface. Broadcaster's website which contains
> its Social Video Network is located at www.broadcaster.com. In July 2007, we
> released our free Social Video Network. (emphasis added).

By implication, the statements contained in the Amendments imply experience

managing a "media" company on the part of the three other Directors as a basis of

19

comparison between Plaintiff (and Dr. Orza) and the other Directors (at that time).  The Defendants intended to make the public believe that upon an objective comparison, the other Directors were more qualified than Plaintiff, as well as making the public believe that the Plaintiff is not qualified to provide advice to Internet companies, which is the basis of the Plaintiff's professional services.  In fact, none of the other Directors had or have any such relevant experience or were ever involved with a "media" company.

It was known to the Defendants, at the time that the statements were made, that the Plaintiff had extensive experience advising companies in the "new media" industry as the Internet industry has been commonly referred to in the last 10 years.  As an attorney and advisor to clients, Plaintiff has provided advice to and has served on the Board of Directors and advisory boards of over 50 new media companies since 1996[4].  These companies were involved in areas of the new media industry such as video e-mail, video search Web site, comparison shopping, airport luggage screening management, CD-ROM based interactive content distribution for major publishers such as General Media, Web sute development projects in the US and Canada, dating Web sites, Web-based electronic medical records systems, Web-based puzzle and game sites, Web-based financial derivatives brokerage, Web-based charter jet brokerage, financial data and analytics delivered over the Internet, Web search, Web-based offshore casinos, leisure and travel Web sites, Web domain registration, Web-based video news syndication in Europe, as well as, many other areas.

In comparison, Defendant Wade, Broadcaster's CEO sole experience with Web businesses was a venture that sold clip art and residential blueprints from a Web site, a

---

[4] In addition, Plaintiff holds a Bachelors and Masters Degree in Computer Science and spent six years on the computer science faculty of several colleges.

business which he did not even manage. Defendant Mills, Broadcaster's CFO's sole experience with Web businesses was some financial management roles in prior Internet pornography businesses operated by Defendant Quan. Neither of them, nor any of the Directors has any experience in managing a "media" company or even a "new media" company. Thus, there is no question as to the falsity of Defendants' statements regarding the business experience of the Plaintiff and no question that they represent defamation *per se.* An action in defamation *per se* may be maintained when a publication is defamatory upon its face while an action premised upon libel innuendo, which requires special damages, is necessary when the publication requires extrinsic evidence to explain its defamatory meaning. *Luisi v. JWT Group, Inc.* 128 Misc.2d 291, 294 (1985), *aff'd* 67 N.Y.2d 914 (1986).

Defendants argue that the statements contained in the Information Statements constitute nothing but mere opinion, and thus, protected speech. However, even statements which contain opinion may be deemed <u>actionable words</u> if the statement of opinion <u>implies</u> that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, are actionable as a "mixed opinion". *See, Hotchner v Castillo-Puche,* 551 F2d 910, 913 (2d Cir), *cert denied sub nom. Hotchner v Doubleday & Co.,* 434 US 834; cf. *Cianci v New Times Pub. Co.,* 639 F2d 54, 64, 65 (2d Cir). The actionable element of a "mixed opinion" is not the false opinion itself – it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking. *Rand v New York Times Co.,* 75 AD2d 417, 422 (1st Dept 1980) (where the complaint alleged not only

21

that the opinion was defamatory but that the accompanying recitation of facts upon which it was based was either a "gross distortion" or "misrepresentation of fact".)

Certainly, the statements made in the Information Statements, at worst, combine opinion with facts unknown to the reader and are therefore actionable. A defendants' statements cannot be shielded by the opinion privilege in circumstances where they imply the existence of undisclosed underlying facts that would support defendant's opinion and would be detrimental to the plaintiff. *Giffuni v. Feingold*, 299 A.D.2d at 266, 749 N.Y.S.2d 716 (1st Dept 2002). For example, the Definitive Information Statement filed on February 23, 2008 states:

> Although the removal of the two directors is being effected without cause, the consenting shareholders have expressed a lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations among certain consenting shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. In forming their judgment, the consenting shareholders considered that, based upon their biographies and the above referenced conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry.

In the Definitive Information Statement, as well as in the six Amendments where the same or similar language is used, references are made to "recent conversations" during which the Defendants formed conclusions about the Plaintiff's qualifications to serve as a Director of Defendant Broadcaster. Since the contents of those conversations are not disclosed to the reader, it leads the reader to believe that facts and not opinion are being conveyed and it is therefore, actionable. *Gross v. New York Times*, 603 N.Y.S.2d 813.

As an attorney, Plaintiff only need to show defamation *per se* and not have to establish actual damages to sustain an action against the Defendants. It is respectfully

22

submitted that the statements published by the Defendants regarding Plaintiff's business judgment constitute defamation *per se* both directly and by innuendo.

As a corporate and securities attorney, Plaintiff is retained by clients, especially clients within the Internet industry, to offer business and legal advice to them. The publishing of the Defendant's false statements are a direct and immediate threat to Plaintiff's business reputation and his ability to retain and find clients. Any existing or potential client researching Plaintiff on Google or Yahoo will easily uncover seven separate documents in which Plaintiff's business judgment and reputation are falsely questioned and maligned in a public forum[5]. It is also important to note that once posted to EDGAR, the documents containing the false and defamatory statements are permanent and can never be removed. Furthermore, since document published on EDGAR are in the public domain, there are numerous Web sites which republish those documents, examples of which are FreeEdgar.com and EdgarOnline.com. Thus, each publication is further compounded many times, making it more likely to be given heavy weight by the search engines.

It is important to note that the Plaintiff sits on the Board of three other publicly traded companies and the Defendants statements make it highly unlike he will ever be selected again to be elected to a Board of Directors. Thus, since the defamatory statements go directly to Plaintiff's profession, it is respectfully submitted that Plaintiff only need to show defamation *per se*, as has been done in the Complaint.

---

[5] It is important to note that each additional publication of such false statements amplifies the incalculable damage I am, and will in the future, suffer because of Defendants' malicious and defamatory attacks on myself.

Therefore, it is respectfully submitted that the causes of action contained in the Complaint are properly pled and should not be dismissed. In the alternative, in the event that the Court shall determined that any of the causes of action contained in the Complaint are not properly set forth, leave to amend the Complaint is hereby requested. In requesting such leave, it should be noted that Plaintiff's time to amend the Complaint, as of right, is yet to expire.

4.  Defendants Broadcaster, Wade, Quan and Mills Have Been Properly Served.

Defendant Broadcaster continues to assert that this action has never been properly served, a myth that flies in the face of reality. This action was served on Defendant Broadcaster January 18, 2008 pursuant to CPLR New York CPLR § 311 by delivery of the Summons with Notice and accompanying Order to Show Cause to the offices of Richard Berman, a Director of Defendant Broadcaster. Plaintiff was present at the time of service. Interestingly, although Defendant Broadcaster claims never to have been served, it sent counsel to argue the Order to Show Cause just days later on January 23, 2008. In February, 2008, Defendant Broadcaster served a Demand for Complaint, another act which belies a claim of no service.

Defendants Wade, Quan and Mills were served with the Summons and Complaint at their principal place of business on March 6, 2008 by a licensed Los Angeles County process server. Attached as Exhibit A to the Plaintiff's Declaration is the Affidavit of Service for Defendants Wade, Quan and Mills. In addition, service upon each of the New York Defendants was attempted by mail pursuant to CPLR 312-A, and in each case, the Acknowledge of Receipt was not returned. The Summons and Complaint have been

24

forwarded to a process server to serve these parties. Thus, there is no basis to dismiss this action for lack of jurisdiction.

5. Defendant's Motion is Unsupported By Any Party With Knowledge of the Facts.

Once again, as has been Defendants' practice during this litigation, Defendants' motion is unsupported by a declaration from any party with actual, personal knowledge of the fact. Instead, once more, as they have systematically done in this litigation, all Defendants offer is a declaration signed by counsel, who does not have any personal knowledge of the facts. Therefore, due to Defendants' blatant failure to submit any testimony from a party with personal knowledge, it is respectfully submitted that all of Plaintiff's factual statements should be deemed true and unrefutted.

6. The Defendant's Statements are Not Privileged.

While Defendants assert that the statements made in the Information Statements are privileged, no such privilege exists. In fact, the Defendants fail to cite statute, regulation or any case law which establishes the qualified privilege they claim immunity under. Thus, it is clear that no such privilege exists. In the past, the Defendants have attempted to rely on a line of cases involving statements made by registered broker/dealers in forms filed with the National Association of Securities Dealers regarding the termination of employment of licensed securities brokers. The public policy behind such privilege is to allow broker/dealer firms the ability to accurately report the facts of the termination of employment of a broker without the fear of litigation. This privilege does not extend to statements made in voluntary SEC filings and Defendants have not presented a statute, regulation or any case law which establishes the privilege they claim to exist. Therefore, it is respectfully submitted that the

25

Defendants statements are not privileged. Moreover, the statements made by the Defendants were clearly not made just in SEC filings, since the Information Statements and other related documents reference conversations which took place between the Defendants. Even if the claimed privilege exists, and it does not, it certainly would not cover the conversations between the parties which were then reported in the Information Statements.

7. The Defendants' Statements Were Made With Malice.

Even though the Plaintiff need not show malice, there can be no question as to the malicious intent of the Defendants. Defendants' defamatory acts have been taken against Plaintiff as a means of retaliating against my criticism of management and for disclosing this self-dealing transactions involving Defendant Quan and Defendant Broadcaster. Upon information and belief, Defendant Wade told third parties that the wording of the Amendments was intended as "pay back" for the Plaintiff's criticisms. Notably, the Third Amendment, which is the most vociferous, was posted the day after Plaintiff presented the Board of Directors with a 50-page document detailing undisclosed insider transactions at Broadcaster.

8. The Second, Third and Fourth Causes of Action Are Valid.

The Second, Third and Fourth Causes of Action each properly assert a valid causes of action against the Defendants. In considering a motion to dismiss, the Court must accept as true the facts alleged in the complaint, *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699 (2d Cir.1994). The Second Cause of Action alleges that the Defendants' acts were intentionally committed in retaliation and to damage the Plaintiff's livelihood constituting a prima facie tort. The elements that a

26

Plaintiff must plead to assert a valid cause of action for a prima facie tort are (1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983). Plaintiff has asserted each of these elements in the Complaint. ¶¶44, 43, 45 and 47, Complaint.

The Third Cause of Action alleges that the Defendants' acts were negligently committed. To establish a prima facie case of negligence, a plaintiff must establish the existence of a duty owed by a defendant to the plaintiff, a breach of that duty, and that such breach was a proximate cause of injury to the plaintiff. *Nappi v. Inc. Vil. of Lynbroo*k, 19 A.D.3d 565, 566, 796 N.Y.S.2d 537. Each of these elements have been properly asserted in the Complaint. ¶¶49, 50 and 51, Complaint.

Finally, the Third Cause of Action alleges that the Defendants' acts constitute the tort of injurious falsehood. The gravamen of tort of injurious falsehood is utterance of untrue statement about plaintiff's business or property which induces others to refrain from dealing with him, or otherwise deprives him of prospective economic advantage. *Bivas v. State*, 97 Misc.2d 524, 411 N.Y.S.2d 854. Each of these elements have been properly asserted in the Complaint. ¶¶54, 55 and 56, Complaint.

B.    Defendants' Motion for Transfer Should Be Denied.

It is respectfully submitted that Defendants' motion for transfer should also be denied in its entirety. It is respectfully submitted that the Defendants' desire to transfer this action, which sounds under New York common law, is nothing more than an attempt to prejudice the *pro se* Plaintiff herein based upon the greater resources of the Defendants, which includes Broadcaster's corporate bank account containing millions of

dollars, a five million dollar directors and officers insurance policy and being represented by multiple national law firms with offices in both Los Angeles and New York City.

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The Second Circuit has summarized some of the factors, among others, that a District Court is to consider in the exercise of its discretion:  (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties. *D.H. Blair & Co., Inc.*, 462 F.3d at 106-07 (*quoting Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y.2002)). Some courts have identified additional factors, including (1) "the forum's familiarity with governing law," and (2) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Glass v. S & M NuTec*, 456 F.Supp.2d 498, 501 (S.D.N.Y.2006); *accord In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F.Supp.2d 164, 167-68.(E.D.N.Y.2006); *see also Dealtime.com v. McNulty*, 123 F.Supp.2d 750, 755 (S.D.N.Y.2000).

There is no strict formula for the application of these factors and no single factor is determinative. *See, e.g., Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04-CV-629 (ARR)(ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.Supp.2d 395, 402 (S.D.N.Y.2005). Instead, these factors should be applied and weighed in the context of the individualized

circumstances of the particular case. The moving party, herein, the Defendants, bear the burden of making a showing that transfer is warranted in light of these factors. *See O'Hopp v. ContiFinancial Corp.,* 88 F.Supp.2d 31, 34 (E.D.N.Y.2000) (*citing Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978)). It is respectfully submitted that the Defendants have failed to meet their burden on any of the factors to be considered by this Court.

(1) Plaintiff's Choice of Forum – A plaintiff's choice of forum is "presumptively entitled to substantial deference." *Gross v. British Broadcasting Corp.,* 386 F.3d 224, 230 (2d Cir. 2004) (*citation omitted*); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").  Herein, the Plaintiff's choice of forum was New York Supreme Court, New York County.  This action was then removed by Defendant Broadcaster to this Court.  Plaintiff's choice of forum was a court located within New York County and the Defendants have made no showing which justifies tipping that balance towards them.

(2) The Convenience of the Witnesses – As primarily an action for defamation as well as other torts, the material witnesses are the parties themselves and thus, the convenience of the witnesses does not weigh in favor of the Defendants.  The parties/ witnesses in this action are scattered around the country with the majority of them in the New York metropolitan area.  Specifically, the following individuals are the material witnesses in this action.

Plaintiff – a New York resident

Defendant Martin Wade – a New Jersey resident

Defendant Bruce Galloway – a New York resident

Defendant Gary Herman– a New York resident

Defendant Nolan Quan – a California resident

Defendant Blair Mills – a California resident

Defendant Thomas Kikis – a New York resident

Defendant Digital Creative Development Corp. – by a New York resident

Defendant Andrew Garroni – a California resident

Defendant Aaron Brown – a California resident

Defendant Willow Creek Capital Management – principal place of business in California, testimony by an unknown party.

Defendant Trinidad Capital Master Fund, Ltd. – principal place of business in California, testimony by an unknown party.

It is important to note that because all of the material witnesses are parties, there are no non-parties who will be inconvenienced. Therefore, the convenience of the witnesses factor does not weigh towards the Defendants.

(3) The Location of Relevant Documents and Relative Ease of Access to Those Sources of Proof – Most, and probably all, of the relevant documents are in electronic form, comprised of filings on the SEC's EDGAR system and most likely, e-mails between the Defendants. Thus, there is no actual situs of the relevant documents and this factor does not weigh towards the Defendants. *See, e.g., Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge North Am., Inc.,* 474 F.Supp.2d 474, 484 (S.D.N.Y.2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *Distefano v. Carozzi North Am., Inc.,* No. 98 CV

7137(SJ), 2002 WL 31640476, at *4 (E.D.N.Y. 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, ... modern photocopying technology deprives this issue of practical or legal weight."). Thus, this factor is neutral and therefore, weighs in favor of the Plaintiff.

(4) The Convenience of the Parties – The convenience of the parties weighs heavily in favor of the Plaintiff. The Plaintiff, although an attorney, is a *pro se* litigant, in this action and is not being paid for his services by any party or third party. In fact, this litigation comes at great cost to the Plaintiff who has already spent hundreds of non-reimbursable billable hours litigating this action to seek redress for the harm intentionally done to him.

In the event that this action is transferred to California, the costs to Plaintiff to maintain this action will multiple several fold, including travel costs to attend hearings and time lost traveling between New York and Los Angeles. Defendants are keenly aware that a transfer would probably result in Plaintiff having to voluntarily dismiss this the action and it is respectfully submitted that this, is Defendants' true motivation for the transfer.

On the other hand, Defendants suffer little or none inconvenience if this action is maintained in the Southern District of New York. All of the individual Defendants are being indemnified by Defendant Broadcaster and have not, and apparently will, not spend any of their own money in defending this action. Even though (a) no formal demands for indemnification have been made and (b) indemnification may not be warranted, Defendant Broadcaster has stepped in to not only to pay their defense costs but to literally direct the defense of this action on their behalf. The individual Defendants can be

31

broken down into two classes, the management Defendants (Wade, Quan and Mills) and the stockholder Defendants. Defendant Broadcaster is being represented in this action by Loeb & Loeb, LLP. The management Defendants are being represented in this action by a second major firm, Howrey, LLP being paid by Defendant Broadcaster and apparently the stockholder Defendants are or will be represented by yet a third major law firm also being paid by Defendant Broadcaster. Thus, despite their defamatory and tortuous acts, the individual Defendants have not and will not expend a penny of their own money in their own defense. Further, despite Defendant Broadcaster having only marginal business activity, all three management Defendants Wade, Quan and Mills remain on its full time payroll at significant salaries of $225,000, $150,000 and $150,000, respectively and all time and expenses they incur in connection with this litigation are reimbursed by Broadcaster. More specifically, Defendant Wade has been paid an amazing $1,499,940 by Broadcaster in salary and bonuses, even though Broadcaster lost over $15,000,000 during the last 18 months alone. This includes bonuses of $415,000 and $160,000 during that 18 month period. Simultaneously, Defendant Quan has given Defendant Wade an option agreement to purchase 10,000,000 of Quan's personal Broadcaster shares, which option currently has a market value to Defendant Wade of over $5,000,000. This certainly explains Defendant Wade's motivation to use Broadcaster's checkbook to pay for the defense of Defendant Quan and his band of cronies.

Clearly, the individual Defendants would be well capable of litigating this action in New York on their own. However, since Broadcaster is paying their expenses, there is no question that the individual Defendants are not being prejudiced by this action

remaining in New York. Therefore, it is respectfully submitted that the convenience of the parties weighs heavily in favor of the Plaintiff.

(5) <u>The Locus of Operative Facts</u> – The publication of the defamatory statements that form the basis of the Complaint took place over the telephone and on the SEC's EDGAR Web site, and thus, in actuality, there is no locus of the operative facts. Therefore, this factor is at best, neutral.

(6) <u>The Availability of Process to Compel the Attendance of Unwilling Witnesses</u> – This factor favors neither party since most of the witnesses in this action are party witnesses.

(7) <u>The Relative Means of the Parties</u> – As discussed above, this factor weights heavily in favor of the Plaintiff.

The additional factors of (1) the forum's familiarity with governing law and (2) trial efficiency and the interest of justice, based on the totality of the circumstances, also weigh heavily in favor of the Plaintiff. This action is based upon New York common law, and thus, a Court located within New York will, by definition, have a much stronger familiarity with the underlying claims in this action than a California court, which, in all likelihood, has never heard an action brought under that statute. Thus, based upon the totality of the circumstances, it is respectfully submitted that transfer would not be appropriate.

<u>Conclusion</u>

It is respectfully submitted that the Plaintiff's Cross-Motion for remand should be granted or in the alternative, that the Defendants' motion for to dismiss or transfer be

33

denied in its entirety or in the alternative, leave to amend the Complaint should be

granted.

Dated :        New York, New York
               June 5, 2008


                                    Respectfully Submitted,


                                    _____
                                          Paul Goodman

                                    Plaintiff *Pro Se*
                                    420 Lexington Avenue
                                    Suite 2320
                                    New York, New York 10170
                                    (212) 661-6800