PRER14C 1 broadcasterprer14ca4.htm AMEND #4 OF PROXY STATEMENT

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### SCHEDULE 14C INFORMATION
(Amendment No. 4 )

**Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934**

Check the appropriate box:

☒ Preliminary Information Statement
✳ Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))
✳ Definitive Information Statement

# BROADCASTER, INC.
(Name of Registrant As Specified In Its Charter)

Payment of Filing Fee (Check the Appropriate Box):

☒ No fee required
✳ Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

1. Title of each class of securities to which transaction applies:

   _____

2. Aggregate number of securities to which transaction applies:

   _____

3. Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11

   _____

4. Proposed maximum aggregate value of transaction

   _____

5. Total fee paid

   _____

✳    Check box if any party of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

**BROADCASTER, INC.**
**9201 Oakdale Avenue, Suite 200**
**Chatsworth, California 91311**
**(818) 206-9274**

### NOTICE OF STOCKHOLDER ACTION BY WRITTEN CONSENT

TO ALL STOCKHOLDERS OF BROADCASTER, INC.:

The purpose of this letter is to inform you that on December 21, 2007 the holders of a majority in voting power of the outstanding stock of Broadcaster, Inc. (the "Corporation") executed and delivered a written consent adopting a resolution to remove without cause two directors, Dr. Vincent Orza and Paul Goodman, as members of the Board of Directors of the Corporation.

The holders of shares representing 58% of our voting power have executed a written consent in favor of the removal of two directors from the Board of Directors of the Corporation. The removal of the directors is described in greater detail in the information statement accompanying this notice. The consents that we have received constitute the only stockholder approval required to remove the directors under the General Corporation Law of the State of Delaware and the Corporation's certificate of incorporation and bylaws. In accordance with the requirements of Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, the removal of directors provided for in the consent will not be effective until February __, 2008.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY**. Because the written consent of holders of a majority in voting power of the Corporation's outstanding stock satisfies all applicable stockholder voting requirements, we are not asking you for a proxy; please do not send us one.

The accompanying information statement is for information purposes only. Please read it carefully.

January __, 2008

/s/ MARTIN WADE, III
Martin Wade, III
Chairman and Chief Executive
Officer

**BROADCASTER, INC.**
**9201 Oakdale Avenue**
**Suite 200**
**Chatsworth, California 91311**

## INFORMATION STATEMENT

January __, 2008

### WE ARE NOT ASKING YOU FOR A PROXY AND
### YOU ARE REQUESTED NOT TO SEND US A PROXY.

This information statement is being mailed on or about January __, 2008, to the stockholders of record of Broadcaster, Inc. at the close of business on December 21, 2007 (the "Record Date"). This information statement is being sent to you for information purposes only. No action is requested or required on your part. This information statement constitutes notice to our stockholders of corporate action by stockholders by written consent, as required by Section 228 of the General Corporation Law of the State of Delaware and our bylaws.

This information statement is being furnished to you to inform you that holders of shares representing a majority of the voting power of shares of our common stock, par value $.001 per share, have adopted, by written consent, resolutions to remove without cause two directors as members of the Board of Directors of Broadcaster, Inc. (the "Company").

As of the date hereof, we had 300,000,000 shares of common stock authorized, of which 51,342,221 shares were outstanding. Each outstanding share of common stock is entitled to one vote per share.

The approval of the holders of a majority of the outstanding shares of our common stock is required to remove Dr. Vincent Orza and Paul Goodman. Under Delaware law and our organizational documents, the Corporation's stockholders are permitted to act by written consent in lieu of a meeting to effect such removal. Written consents to remove Dr. Vincent Orza and Paul Goodman were delivered to the Corporation from stockholders holding approximately 58% of the voting power of the Corporation's common stock.

We will bear the expenses relating to this information statement, including expenses in connection with preparing and mailing this information statement and all documents that now accompany or may in the future supplement it. We contemplate that brokerage houses, custodians, nominees, and fiduciaries will forward this information statement to the beneficial owners of our common stock held of record by these persons and we will reimburse them for their reasonable expenses incurred in this process.

This Information Statement is being furnished by the Company pursuant to Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, and in connection with certain actions approved by written consent, dated December 21, 2007, of stockholders holding a majority in voting power of the Corporation's outstanding common stock to remove the directors described above pursuant to the General Corporation Law of the State of Delaware and the Company's Restated Certificate of Incorporation, as amended (the "Certificate of Incorporation") and its Amended and Restated By-laws, as amended (the "Bylaws").

We are distributing this Information Statement to our stockholders in full satisfaction of the notice requirements of Section 228(e) of the General Corporation Law of the State of Delaware. No additional action will be undertaken by us with respect to the receipt of the written consent, and our stockholders are not entitled to any appraisal rights under Delaware law, our Certificate of Incorporation or our Bylaws as a result of the actions to be taken pursuant to the written consent described above.

Only one information statement is being delivered to multiple stockholders sharing an address, unless we have received contrary instructions from one or more of the stockholders. We will undertake to deliver promptly upon written or oral request a separate copy of the information statement to a stockholder at a shared address to which a single copy of the information statement was delivered. You may make a written or oral request by sending a written notification to our principal executive offices stating your name, your shared address, and the address to which we should direct the additional copy of the information statement or by calling our principal executive offices at (818) 206-9274. If multiple stockholders sharing an address have received one copy of this information statement and would prefer us to mail each

stockholder a separate copy of future mailings, you may send notification to or call

our principal executive offices. Additionally, if current stockholders with a shared address received multiple copies of this information statement and would prefer us to mail one copy of future mailings to stockholders at the shared address, notification of that request may also be made by mail or telephone call to our principal executive offices.

## DESCRIPTION OF ACTIONS TAKEN

**Written Consent Executed and Delivered by the Consenting Stockholders**

On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. Although the removal of the two directors is being effected without cause, the consenting shareholders have expressed a lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations among certain consenting shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. In forming their judgment, the consenting shareholders considered that, based upon their biographies and the above referenced conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry. Mr. Goodman has subsequently disputed the judgment reached by the consenting shareholders regarding his lack of prior experience in managing companies in the media industry.

There were three meetings of the Board of Directors that were held by the Company by telephonic conference (November 26th, December 3rd and 13th, 2007) at which the manner of the shut down was discussed. Messrs. Wade, Berman, Mills and Goodman were present at each meeting. Dr. Orza was present at two of those meetings. At each meeting several non board members were present by invitation. Messrs. Quan, Harris and Gardner were present by invitation at all three meetings and Mr. Herman was present by invitation at the December 13, 2007 meeting. At each meeting there was a disagreement about how to deal with terminating employees and how to preserve the value of the assets.

At the November 26th meeting, it was resolved that the Company would implement a particular plan that had been presented to the Board which included the termination of employees and the formation of an oversight committee. However, there was no resolution as to the specifics of the implementation of the plan. All Board members, except Mr. Mills, voted in favor of the November resolutions. Mr. Mills was of the view that the Board was not considering all of the factors and was not considering the protection of shareholder value as a primary concern.

At the December 3rd, 2007 meeting, Mr. Wade and Mr. Goodman expressed disagreement about the specifics of the implementation of the plan. Both Mr. Wade and Mr. Mills expressed the view that employees should be given notice as well as severance pay consistent with either California law, terms of their employment agreement or past company practice. At the meeting, Mr. Goodman, Dr. Orza and Mr. Gardner expressed agreement with the notion that no notice was required prior to terminating the employees and that no severance payments should be made except if required in accordance with the terms of a written employment agreement. Mr. Berman suggested that no layoffs take place until the results of the merger discussions were known. A resolution was passed, which was supported by Messrs. Mills, Berman and Wade and opposed by Mr. Goodman and Dr. Orza , that the oversight committee meet later in the day or the next morning to discuss issues relating to implementation of the resolutions regarding the layoffs.

The manner of shutting down the Company's business operations so to preserve the value of the Company's assets and share price was also the subject of disagreement. Mr. Wade and Mr. Mills stated that, in order to preserve the Company's assets, enough employees needed to be retained to keep the website operational but not growing and to prepare and file all required regulatory filings. Mr. Goodman and Mr. Gardner expressed their opinion that a complete and total shut down of the business was required to conserve as much cash as possible and that the assets of the Company (the technology and the web site) had no value. Mr. Berman expressed his view that a merger transaction was the best way to quickly capture the value of any assets. In response to the views expressed at the meeting , Mr. Wade requested that the director's who did not feel that the Company assets had any value either visit the Company themselves or retain outside experts to value the technology and websites. Mr. Goodman expressed the view, joined in by Dr. Orza, that such action was a waste of time.

On December 13, 2007 the Board resolved to dismiss most of the employees by December 31, 2007 and such action has been implemented. As of December 31, 2007 only six employees remained at the Company. At the December 13, 2007 Board meeting, after it was stated that a majority of the shareholders were seeking the removal of two directors, there was another disagreement over two proposed merger candidates, JamNow and WebHost4Life. The Board passed a resolution, which was supported by Messrs. Berman, and Wade and opposed by Mr. Goodman( (Mr. Mills abstained ) that the Company proceed to investigate the possibility of merging with WebHost4Life and that the Board make a final decision on whether to acquire JamNow. At the direction of the majority of the Board, on December 21, 2007, the Company signed a non-binding letter of intent with JamNow. Despite the assurances from JamNow that the Company's due diligence of JamNow would be immediately arranged, no due diligence was arranged by JamNow by December 26, 2007 and there had been no response from JamNow or its advisors. On December 26th, having not received an executed copy of the letter of intent, and upon advice of outside counsel, the Company rescinded the letter of intent with JamNow. To date, no further action has been taken with respect to either merger candidate.

On January 10, 2008, following a conversation with Mr. Goodman, Mr. Berman, in his role as Chairman of the audit committee, appointed counsel to review all related party transactions of the Company. On January 11, 2008, Mr. Gardner, a shareholder of the Company, filed, as an exhibit to a Schedule 13D, a letter to Mr. Quan, which among other things, questioned payments made to Mr. Quan and his affiliates for services performed for the Company. The Company and management have denied all such allegations in Mr. Gardner's letter. The Company has stated that it has properly fulfilled its disclosure obligations with respect to all related party transactions and that all payments made were appropriate. Following the appointment by Mr. Berman, on January 15, 2008, the two other members of the audit committee authorized the finding of other independent counsel to represent the audit committee and to conduct an internal investigation of (a) related party transactions involved management and (b) transactions with parties known to and/or affiliated with management, to determine whether such transaction should have been deemed to be related party transactions. The Company intends to conduct this review in a prompt manner and to complete the review irrespective of the removal contemplated by this Schedule 14C.

A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement. Listed below is the name of each such consenting shareholder, the number of shares held by each such consenting shareholder and the percentage of beneficial ownership of the Company's common stock held by such consenting shareholder.

| Name | Amount of Beneficial Ownership | Percentage of Class |
|---|---|---|
| Software People LLC* (Wyoming LLC) | 5,120,000 | 9.97% |
| Trans Global Media LLC* | 5,120,000 | 9.97% |
| Broadcaster, LLC* | 9,640,000 | 18.78% |
| Accessmedia Technologies *LLC | 2,560,000 | 4.99% |
| Rosen Quan Family Trust* | 50,000 | .10% |
| Gary Herman | 225,000 | .44% |
| Strategic Turnaround Equity Partners, LP | 605,925 | 1.18% |
| Treeline Investment Partners, LP | 312,500 | .61% |
| Thomas P. Kikis & Kikis Family Foundation | 237,500 | .46% |
| Andrew and Catherine Garroni Living Trust | 25,000 | .05% |
| Trinad Capital Master Fund Ltd. | 562,133 | 1.09% |
| Willow Creek Capital Management WCCP, WC Offshore Fund, WC Long Biased Funds | 2,300,500 | 4.48% |
| Digital Creative Development Corp. | 3,018,579 | 5.88% |
| | 29,777,137 | 58.00% |

* Please note that Mr. Nolan Quan controls the vote with respect to these entities

**Vote Required; Manner of Approval**

Under our Certificate of Incorporation and the General Corporation Law of the State of Delaware, directors may be removed from our Board of Directors, with or without cause, by the holders of a majority in voting power of the shares entitled to vote at an election of directors. The Delaware General Corporation Law and our bylaws provide that stockholders may take action without a meeting of stockholders if a consent or consents in writing, setting forth the action so taken, signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting of stockholders at which all shares entitled to vote thereon were present and voted. As a result, the removal of directors from our Board of Directors may be effected by a written consent or consents executed by the holders of a majority of the outstanding shares of our Common Stock. As of December 21, 2007, the entities and individuals listed above held of record 58% of the outstanding shares of our Common Stock. As such, the written consent executed and delivered on December 21, 2007 is sufficient to remove Dr. Vincent Orza and Paul Goodman from the Corporation's Board of Directors and no further vote, approval or consent of stockholders is required to approve this action. The Delaware General Corporation Law provides that the written consent is effective when executed by the holders of the number of shares of Common Stock required to take the action and delivered to the Company. Under Rule 14c-2 promulgated under the Securities Exchange Act of 1934, as amended, the action taken by the stockholders to remove Dr. Vincent Orza and Paul Goodman as members of our Board of Directors cannot take effect until 20 days after this Information Statement is sent to our Stockholders. Therefore, the removal of Dr. Vincent Orza and Paul Goodman from the board of directors will be effective as of February ___, 2008. Delaware law does not have a similar requirement.

**Outstanding Voting Stock of the Company**

As of December 21, 2007, there were 51,342,221 shares of Common Stock issued and outstanding. Each share of Common Stock entitles the holder to one vote on all matters submitted to the shareholders.

## OUR BOARD OF DIRECTORS

The action by written consent removes Dr. Vincent Orza and Paul Goodman from our Board of Directors as of February ___, 2008. Following the removal of Dr. Orza, and Paul Goodman the remaining directors of the Company will be Martin Wade, Blair Mills, and Richard Berman. Our bylaws require that the number of Directors be at least three. After the removal, the Board of Directors will be composed of the requisite number of Directors specified in our bylaws. Additional information regarding each of our directors is set forth below.

**Directors Removed**

*Vincent F. Orza, Jr., age 57.* Dr. Orza became a director of Broadcaster in July 2007. Dr. Orza is Dean of the Meinders School of Business of Oklahoma City University. Prior to his current position with Oklahoma City University, Dr. Orza served as a trustee of Oklahoma City University, taught economics and marketing for 16 years at the University of Central Oklahoma and received an Ed.D. degree from the University of Oklahoma. Dr. Orza also serves as a news anchor for an Oklahoma City network affiliate and is a regular columnist for a local newspaper. He brings public company experience having been the founder, Chairman and CEO of Eateries, Inc., an operator and franchisor of a chain of restaurants operating in 20 states, which traded on The Nasdaq Stock Market before this company went private in 2003. Dr. Orza ran twice for Governor of Oklahoma.

*Paul Goodman. age 46.* Mr. Goodman became a director in May 2007. Mr. Goodman is a partner in the New York City law firm of Cyruli Shanks & Zizmor LLP and concentrates on the representation of Internet and new media clients handling a wide range of corporate and financing transactions including venture capital, angel round investing and mergers and acquisitions. He was formerly a faculty member of the Queens College Computer Science Department and is the author of five books on computer programming. Mr. Goodman became a director of Maxus Technology Corporation in December 2006. He has also been on the board of directors of SecureLogic Corp. since 1999. He serves on the Audit Committee of each of these corporations. Mr. Goodman became president and sole director of Activeworlds Corp. (OTCBB: AWLD.OB) in July 2007. Mr. Goodman received his law degree from the City University of New York and also holds a Bachelors and Masters Degree in Computer Science.

**Directors Not Removed**

*Martin R. Wade, III, age 57.* Mr. Wade became a director and Chief Executive Officer of Broadcaster in August 2001. He has a proven track record in mergers and acquisitions and investment banking. Mr. Wade served from 1998 to 2000 as an M&A banker at Prudential Securities and from 1996 to 1998 as a Managing Director in Mergers and Acquisition at Salomon Brothers. From 1991 to 1996, Mr. Wade was National Head of Investment Banking at Price Waterhouse, LLC. Mr. Wade also spent six years in the M&A department at Bankers Trust and eight years at Lehman Brothers Kuhn Loeb. Mr. Wade is credited with participating in over 200 M&A transactions involving various clients such as, Nike, Cornerstone National Gas Company, Landmark Graphics and Redken Laboratories, Inc. He also serves on the Boards of Directors for Alliance One International, Inc. (NYSE: AOI), NexMed (NasdaqCM: NEXM), Advaxis, Inc. (OTCBB:ADXS.OB) and Command Security Corp (AMEX: MOC).

*Richard J. Berman, age 65.* Mr. Berman became a director of Broadcaster in February 2002. His business career spans over 35 years of venture capital, management and merger and acquisitions experience. In the last five years, Mr. Berman has served as a professional director and/or officer of about a dozen public and private companies. He is currently Chief Executive Officer of NexMed (NasdaqCM: NEXM), a biotech company; Chairman of National Investment Managers, a public company in pension administration and investment management; and Chairman of Candidate Resources, a private company delivering HR services over the web. The public companies that Mr. Berman is a director of are Dyadic International, Inc. (AMEX: DIL), Broadcaster, Inc, Easylink Services International Corp. (NasdaqCM: ESIC), MediaBay, Inc. (OTC: MBAY.PK), NexMed, Inc. (NasdaqCM: NEXM), GVI Security Solutions Inc. (OTCBB: GVSS.OB), National Investment Managers (OTCBB: NIVM.OB), Nayna Networks, Inc. (OTCBB: NAYN.OB) and Advaxis, Inc (OTCBB: ADXS.OB). From 1998 - 2000, he was employed by Internet Commerce Corporation as Chairman and CEO. Previously, Mr. Berman worked at Goldman Sachs; was Senior Vice President of Bankers Trust Company, where he started the M&A and Leveraged Buyout Departments; created the largest battery company in the world by merging Prestolite, General Battery and Exide to form Exide (NYSE); helped create what is now Soho (NYC) by developing five buildings; and advised on over $4 billion of M&A transactions. He is a past Director of the Stern School of Business of NYU.

*Blair Mills. age 43.* Mr. Mills became a director in May 2007. Mr. Mills joined the company in June 2006 as Chief Financial Officer. Previously, he served as Chief Financial Officer of AccessMedia beginning in May 2005. Prior to that date, Mr. Mills served in various management positions at several Internet-based businesses, including most recently Longview Media, Inc. from September 2000 through September 2006. Mr. Mills has also served as an independent consultant to small businesses and emerging growth companies. Mr. Mills is a Chartered Accountant in Canada and a Certified Public Accountant in Illinois.

## SECURITY OWNERSHIP

The following table sets forth, as of December 21, 2007 information concerning the beneficial ownership of common stock by each director of the Company, the Chief Executive Officer and the other compensated executive officers provided that their annual compensation exceeds $100,000, and all directors and executive officers as a group. Unless otherwise indicated below, the business address for each named individual is the principal executive office address, which is 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311. According to rules adopted by the Securities and Exchange Commission, a person is the "beneficial owner" of securities if he or she has, or shares, the power to vote such securities or to direct their investment. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

The table also sets forth, as of December 21, 2007 the name, address, stock ownership and voting power of each person or group of persons known by the Company to own beneficially more than 5% of the outstanding shares of Common Stock. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

| Name and Address(1) | Amount and Nature Of Beneficial Ownership | Percentage of Class |
|---|---|---|
| Martin Wade, III | 198,333 | * |
| Blair Mills | 75,000 | * |
| Richard Berman (2) | 296,250 | * |
| Paul Goodman (3) | 6,250 | * |
| Vincent F. Orza, Jr. (4) | 32,750 | * |
| Nolan Quan (5) | 22,490,000 | 43.8% |
| Michael Gardner (6) | 10,697,150 | 20.8% |
| Digital Creative Development Corp (7) | 3,018,579 | 5.9% |
| All officers and directors as a group (6 people) | 23,098,583 | 44.99% |

(1)  Unless otherwise indicated, the address for each is c/o Broadcaster, Inc., 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311.
(2)  420 Lexington Avenue, Suite 450, New York, NY 10170.
(3)  420 Lexington Avenue, Suite 2330, New York, NY 10170
(4)  2501 n. Blackwelder, Oklahoma City, OK 73106.
(5)  Represents 22,490,000 shares, 50,000 of which are owned by a family trust of which Mr. Quan is a trustee and the balance by the limited liability companies. Mr. Nolan Quan, one of our principal shareholders, and President is the managing member of four LLCs, Broadcaster LLC 9,640,000 shares, Software People LLC 5,120,000 shares, Trans Global Media LLC 5,120,000 shares and Accessmedia Technologies LLC 2,560,000 shares. Mr. Quan's affiliated entities have provided services to the Company for which such entities have received compensation. During the year ended June 30, 2007, the Company incurred expenses of $1,849,000 related to services provided by Alchemy, which is controlled by Mr. Nolan Quan. Interest expenses for the year ended June 30, 2007 included $69,000 related to a loan in the principal amount of $1,725,000 from Mr. Nolan Quan. The Company also paid Mr. Quan an aggregate of $86,000 during the year ended June 30, 2007 for the purchase of two licenses owned by him and consulting fees of $12,000. In addition, during the year ended June 30, 2007, the Company paid another entity of which Mr. Quan is a controlling shareholder, $150,000 for the purchase of a license. Mr Quan's wife and son have

provided services to the Company and received an aggregate of $104,480 for such services during the year ended June 30, 2007. See the Company's

Quarterly Report of Form 10Q filed with the Securities and Exchange Commission on November 14, 2007 and the Company's Annual Report on Form 10-K filed on October 15, 2007 for a more detailed description of the services performed by such affiliated entities and the compensation paid to Mr. Nolan and such entities for such services.

(6)    c/o Baytree Capital, The Trump Building, 40 Wall Street, New York, NY 10005. Represents 10,647,150 shares, including 1,875,000 shares owned by Baytree. The numbers owned of record and beneficially by Mr. Gardner do not include 1,544,594 shares of our common stock owned by MBYI Liquidating Trust. Mr. Gardner owns a 6.7% interest in the trust as a result of an unrelated transaction, but is not a beneficial owner of the shares under the rules of the SEC. The shares held by the trust may be publicly sold at any time without restriction.

(7)    720 Fifth Avenue, 10th Floor, New York, NY 10019.

## INTEREST OF CERTAIN PERSONS IN THE REMOVAL

The security ownership of certain beneficial owners and management are set forth above in the Section entitled "Security Ownership of Certain Beneficial Owners and Management." Except as disclosed above, none of the following persons has any substantial interest, direct or indirect, in the matter to be acted upon:

(1)    Any director or officer of the Company since January 1, 2007;

(2)    Associates or affiliates of the persons described in (1) and (2).

## NO APPRAISAL RIGHTS

Our Stockholders are not entitled to appraisal rights with respect to the actions to be taken pursuant to the written consent under Delaware law, our Certificate of Incorporation or our Bylaws.

## DISTRIBUTION OF INFORMATION STATEMENT

We will pay the costs of distributing this Information Statement to our stockholders. The distribution will be made by mail.

## FORWARD-LOOKING STATEMENTS

This information statement may contain certain "forward-looking" statements (as that term is defined in the Private Securities Litigation Reform Act of 1995 or by the U.S. Securities and Exchange Commission in its rules, regulations and releases) regarding our expectations or beliefs regarding our company. These forward-looking statements include, but are not limited to, statements concerning our operations, economic performance, financial condition, and prospects and opportunities. For this purpose, any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the generality of the foregoing, words such as "may," "will," "expect," "believe," "anticipate," "intend," "could," "estimate," "might," or "continue" or the negative or other variations thereof or comparable terminology are intended to identify forward-looking statements. These statements, by their nature, involve substantial risks and uncertainties, certain of which are beyond our control, and actual results may differ materially depending on a variety of important factors, including factors discussed in this and other of our filings with the U.S. Securities and Exchange Commission.

## ADDITIONAL INFORMATION

We are subject to the informational reporting requirements of the Exchange Act and file reports, proxy statements and other information required under the Exchange Act with the SEC. Such reports, proxy statements and other information may be inspected and copied at the public reference facilities maintained by the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. Copies of such materials and information from the SEC can be obtained at existing published rates from the Public Reference Section of the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. The SEC also maintains a site on the Internet at http://www.sec.gov that contains reports, proxy and information statements and other information regarding registrants that file electronically with the SEC which may be downloaded free of charge.

## INCORPORATION OF FINANCIAL INFORMATION

We "incorporate by reference" into this Information Statement the information in certain documents we file with the SEC, which means that we can disclose important information to you by referring you to those documents. We incorporate by reference into this information statement the following documents we have previously filed with the SEC: our quarterly report on Form 10-QSB for the quarterly period ended September 30, 2007 and our Registration Statement on Form SB-2. You may request a copy of these filings at no cost, by writing or telephoning us at the following address:

Broadcaster, Inc.
9201 Oakdale Avenue
Suite 200
Chatswoth, California 91311

As we obtained the requisite stockholder vote for the removal of the director described in this information statement upon delivery of written consents from the holders of a majority of our outstanding shares of common stock, **WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** This information statement is for informational purposes only. Please read this information statement carefully.

**ANNEX A**

**FORM OF CONSENT**

**BROADCASTER, INC.**

<u>Consent of Stockholders Representing a Majority in Voting Power of the Outstanding Stock
Pursuant to Section 228 of the General Corporation Law of the State of Delaware</u>

The undersigned, constituting holders of a majority in voting power of the outstanding shares of Broadcaster, Inc., a Delaware corporation (the "Corporation"), and acting hereunder without the convening of a formal meeting pursuant to Section 228 of the General Corporation Law of the State of Delaware, do hereby consent in writing to the adoption of and do hereby adopt the following resolutions:

WHEREAS, the Board of Directors of the Corporation is presently comprised of Martin R. Wade, III, Richard J. Berman, Blair Mills, Paul Goodman and Dr. Vincent F. Orza, Jr.; and

WHEREAS, the undersigned have deemed it advisable and in the best interests of the Corporation that Dr. Vincent F. Orza, Jr. and Paul Goodman be removed without cause from the Board of Directors of the Corporation;

NOW, THEREFORE, BE IT AND IT HEREBY IS RESOLVED, that as of the Effective Date (as defined below) Dr. Vincent Orza, Jr. and Paul Goodman shall be removed without cause as members of the Board of Directors of the Corporation; and it is further

RESOLVED, that the Corporation be, and hereby is, authorized, empowered and directed to cause an information statement in accordance with Regulation 14C promulgated by the Securities and Exchange Commission (the "SEC") with respect to the actions taken in the foregoing resolution and to file a Preliminary Schedule 14C with the SEC as soon thereafter as practicable and (unless the Corporation receives notice that the Preliminary Schedule 14C will be subject to review by the SEC) to cause the Definitive Schedule 14 C to be filed with the SEC and information statement to be mailed to the Corporation's shareholders in accordance with the rules of the SEC on the first business day that is at least 10 days after the filing of the Preliminary Schedule 14C (the "Mailing Date"). The foregoing resolution shall become effective on the date (the "Effective Date") that is 20 days after the Mailing Date; and it is further

RESOLVED, that Martin Wade, III is hereby authorized to execute and deliver on behalf of the Corporation all such further documents, certificates, or instruments, to take on behalf of the Corporation all such further actions, and to pay on behalf of the Corporation all such expenses that he determines to be necessary or desirable in order to carry out the foregoing resolutions, the execution and delivery of any such documents, certificates, or instruments, the taking of any such actions, and the payment of any such expenses to be conclusive evidence of that determination.

This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

By: _____

PRER14C 1 broadcaster14c.htm AMENDMENT NO. 5

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**SCHEDULE 14C INFORMATION**
**(Amendment No. 5)**

**Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934**

Check the appropriate box:

    ☒    Preliminary Information Statement
    ✱    Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))
    ✱    Definitive Information Statement

# BROADCASTER, INC.

(Name of Registrant As Specified In Its Charter)

Payment of Filing Fee (Check the Appropriate Box):

    ☒    No fee required
    ✱    Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

1.     Title of each class of securities to which transaction applies:

    _____

2.     Aggregate number of securities to which transaction applies:

    _____

3.     Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11

    _____

4.     Proposed maximum aggregate value of transaction

    _____

5.     Total fee paid

    _____

✱    Check box if any party of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

**BROADCASTER, INC.**
9201 Oakdale Avenue, Suite 200
Chatsworth, California 91311
(818) 206-9274

## NOTICE OF STOCKHOLDER ACTION BY WRITTEN CONSENT

TO ALL STOCKHOLDERS OF BROADCASTER, INC.:

The purpose of this letter is to inform you that on December 21, 2007 the holders of a majority in voting power of the outstanding stock of Broadcaster, Inc. (the "Corporation") executed and delivered a written consent adopting a resolution to remove without cause two directors, Dr. Vincent Orza and Paul Goodman, as members of the Board of Directors of the Corporation.

The holders of shares representing 58% of our voting power have executed a written consent in favor of the removal of two directors from the Board of Directors of the Corporation. The removal of the directors is described in greater detail in the information statement accompanying this notice. The consents that we have received constitute the only stockholder approval required to remove the directors under the General Corporation Law of the State of Delaware and the Corporation's certificate of incorporation and bylaws. In accordance with the requirements of Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, the removal of directors provided for in the consent will not be effective until February __, 2008.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** Because the written consent of holders of a majority in voting power of the Corporation's outstanding stock satisfies all applicable stockholder voting requirements, we are not asking you for a proxy; please do not send us one.

The accompanying information statement is for information purposes only. Please read it carefully.

January __, 2008

/s/ MARTIN WADE, III
_____
Martin Wade, III
Chairman and Chief Executive
Officer

**BROADCASTER, INC.**
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

### INFORMATION STATEMENT

January __, 2008

### WE ARE NOT ASKING YOU FOR A PROXY AND
### YOU ARE REQUESTED NOT TO SEND US A PROXY.

This information statement is being mailed on or about January __, 2008, to the stockholders of record of Broadcaster, Inc. at the close of business on December 21, 2007 (the "Record Date"). This information statement is being sent to you for information purposes only. No action is requested or required on your part. This information statement constitutes notice to our stockholders of corporate action by stockholders by written consent, as required by Section 228 of the General Corporation Law of the State of Delaware and our bylaws.

This information statement is being furnished to you to inform you that holders of shares representing a majority of the voting power of shares of our common stock, par value $.001 per share, have adopted, by written consent, resolutions to remove without cause two directors as members of the Board of Directors of Broadcaster, Inc. (the "Company").

As of the date hereof, we had 300,000,000 shares of common stock authorized, of which 51,342,221 shares were outstanding. Each outstanding share of common stock is entitled to one vote per share.

The approval of the holders of a majority of the outstanding shares of our common stock is required to remove Dr. Vincent Orza and Paul Goodman. Under Delaware law and our organizational documents, the Corporation's stockholders are permitted to act by written consent in lieu of a meeting to effect such removal. Written consents to remove Dr. Vincent Orza and Paul Goodman were delivered to the Corporation from stockholders holding approximately 58% of the voting power of the Corporation's common stock. By removing Dr. Orza and Mr. Goodman, two of the three independent directors currently on the Board of Directors will be removed.

We will bear the expenses relating to this information statement, including expenses in connection with preparing and mailing this information statement and all documents that now accompany or may in the future supplement it. We contemplate that brokerage houses, custodians, nominees, and fiduciaries will forward this information statement to the beneficial owners of our common stock held of record by these persons and we will reimburse them for their reasonable expenses incurred in this process.

This Information Statement is being furnished by the Company pursuant to Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, and in connection with certain actions approved by written consent, dated December 21, 2007, of stockholders holding a majority in voting power of the Corporation's outstanding common stock to remove the directors described above pursuant to the General Corporation Law of the State of Delaware and the Company's Restated Certificate of Incorporation, as amended (the "Certificate of Incorporation") and its Amended and Restated By-laws, as amended (the "Bylaws").

We are distributing this Information Statement to our stockholders in full satisfaction of the notice requirements of Section 228(e) of the General Corporation Law of the State of Delaware. No additional action will be undertaken by us with respect to the receipt of the written consent, and our stockholders are not entitled to any appraisal rights under Delaware law, our Certificate of Incorporation or our Bylaws as a result of the actions to be taken pursuant to the written consent described above.

Only one information statement is being delivered to multiple stockholders sharing an address, unless we have received contrary instructions from one or more of the stockholders. We will undertake to deliver promptly upon written or oral request a separate copy of the information statement to a stockholder at a shared address to which a single copy of the information statement was delivered. You may make a written or oral request by sending a written notification to our principal executive offices stating your name, your shared address, and the address to which we should direct the additional copy of the information statement or by calling our principal executive offices

at (818) 206-9274. If multiple stockholders sharing an address have received one copy of this information statement and would prefer us to mail each stockholder a separate copy of future mailings, you may send notification to or call our principal executive offices. Additionally, if current stockholders with a shared address received multiple copies of this information statement and would prefer us to mail one copy of future mailings to stockholders at the shared address, notification of that request may also be made by mail or telephone call to our principal executive offices.

## DESCRIPTION OF ACTIONS TAKEN

### Written Consent Executed and Delivered by the Consenting Stockholders

On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. By removing Dr. Orza and Mr. Goodman, two of the three independent directors currently on the Board of Directors will be removed. Although the removal of the two directors is being effected without cause, the consenting shareholders have expressed a lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations among certain consenting shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. In forming their judgment, the consenting shareholders considered that, based upon their biographies and the above referenced conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry. Mr. Goodman has subsequently disputed the judgment reached by the consenting shareholders regarding his lack of prior experience in managing companies in the media industry.

There were three meetings of the Board of Directors that were held by the Company by telephonic conference (November 26th, December 3rd and 13th, 2007) at which the manner of the shut down was discussed. Messrs. Wade, Berman, Mills and Goodman were present at each meeting. Dr. Orza was present at two of those meetings. At each meeting several non board members were present by invitation. Messrs. Quan, Harris and Gardner were present by invitation at all three meetings and Mr. Herman was present by invitation at the December 13, 2007 meeting. At each meeting there was a disagreement about how to deal with terminating employees and how to preserve the value of the assets.

At the November 26th meeting, it was resolved that the Company would implement a particular plan that had been presented to the Board which included the termination of employees and the formation of an oversight committee. However, there was no resolution as to the specifics of the implementation of the plan. All Board members, except Mr. Mills, voted in favor of the November resolutions. Mr. Mills was of the view that the Board was not considering all of the factors and was not considering the protection of shareholder value as a primary concern.

At the December 3rd, 2007 meeting, Mr. Wade and Mr. Goodman expressed disagreement about the specifics of the implementation of the plan. Both Mr. Wade and Mr. Mills expressed the view that employees should be given notice as well as severance pay consistent with either California law, terms of their employment agreement or past company practice. At the meeting, Mr. Goodman, Dr. Orza and Mr. Gardner expressed agreement with the notion that no notice was required prior to terminating the employees and that no severance payments should be made except if required in accordance with the terms of a written employment agreement. Mr. Berman suggested that no layoffs take place until the results of the merger discussions were known. A resolution was passed, which was supported by Messrs. Mills, Berman and Wade and opposed by Mr. Goodman and Dr. Orza , that the oversight committee meet later in the day or the next morning to discuss issues relating to implementation of the resolutions regarding the layoffs.

The manner of shutting down the Company's business operations so to preserve the value of the Company's assets and share price was also the subject of disagreement. Mr. Wade and Mr. Mills stated that, in order to preserve the Company's assets, enough employees needed to be retained to keep the website operational but not growing and to prepare and file all required regulatory filings. Mr. Goodman and Mr. Gardner expressed their opinion that a complete and total shut down of the business was required to conserve as much cash as possible and that the assets of the Company (the technology and the web site) had no value. Mr. Berman expressed his view that a merger transaction was the best way to quickly capture the value of any assets. In response to the views expressed at the meeting, Mr. Wade requested that the director's who did not feel that the Company assets had any value either visit the Company themselves or retain outside experts to value the technology and websites. Mr. Goodman expressed the view, joined in by Dr. Orza, that such action was a waste of time.

On December 13, 2007 the Board resolved to dismiss most of the employees by December 31, 2007 and such action has been implemented. As of December 31, 2007 only six employees remained at the Company.

At the December 13, 2007 Board meeting, after it was stated that a majority of the shareholders were seeking the removal of two directors, there was another disagreement over two proposed merger candidates, JamNow and WebHost4Life. The Board discussed a proposed engagement letter retaining the services of Baytree Advisors LLC, an entity believed to be owned by Mr. Gardner, in a proposed merger transaction with JamNow, pursuant to which Baytree Advisors LLC would receive $500,000 in cash and 5% in stock The Board passed a resolution, which was supported by Messrs. Wade, Berman and Goodman and opposed by Mr. Mills to retain Baytree Advisors LLC and pay it the fees described in the preceding sentence if the JamNow acquisition were to close. The Board also discussed initiating discussions with WebHost4Life, an entity that is a client of Alchemy Communications, Inc. Alchemy Communications, Inc. is an entity affiliated with Mr. Quan. Because the discussions regarding a transaction with WebHost4Life were very preliminary, there was very limited discussion about such a transaction. The Board passed a resolution, which was supported by Messrs. Berman, Mills and Wade and opposed by Mr. Goodman that the Company proceed to investigate the possibility of merging with WebHost4Life, JamNow or neither. In addition, the Board passed a resolution that was supported by Messrs. Wade, Berman and Goodman (Mr. Mills abstained) that the Company negotiate a letter of intent with JamNow, which included the bridge loan.

On December 20, 2007, there was a meeting of the Board of Directors held by telephonic conference at which Messrs. Wade, Mills, Berman, Goodman and Dr. Orza were present. Messrs. Quan and Cohen were also present by invitation. The Board passed a resolution to sign a letter of intent for the merger with JamNow, which provided that the Company extend a bridge loan to JamNow that would be disbursed a few days after the signing of the letter of intent. Mr. Mills expressed opposition to proceeding with the JamNow transaction so quickly without proper due diligence. However, at this meeting it was agreed by the other directors that nonetheless a letter of intent with JamNow be signed. Mr. Wade made a resolution that the bridge loan have a demand repayment clause, at the Company's option. At the direction of the majority of the Board, on December 21, 2007, the Company signed a non-binding letter of intent with JamNow. After the meeting, Mr. Wade discussed the repayment option with the management of JamNow. Mr. Wade came to the judgment that JamNow's position as to the repayment option had been misrepresented and that JamNow appeared to have no intention of agreeing to any repayment option. Despite the assurances from JamNow that the Company's due diligence of JamNow would be immediately arranged, no due diligence was arranged by JamNow as of December 26, 2007 and there had been no response from JamNow or its advisors. Based upon his discussions with management and the lack of due diligence efforts, on December 26th, having not received an executed copy of the letter of intent, and upon advice of outside counsel, the Company rescinded the letter of intent with JamNow. To date, no further action has been taken with respect to either merger candidate.

On January 10, 2008, following a conversation with Mr. Goodman, Mr. Berman, in his role as Chairman of the audit committee, appointed counsel to review all related party transactions of the Company. On January 11, 2008, Mr. Gardner, a shareholder of the Company, filed, as an exhibit to a Schedule 13D, a letter to Mr. Quan, which among other things, questioned payments made to Mr. Quan and his affiliates for services performed for the Company. The Company and management have denied all such allegations in Mr. Gardner's letter. The Company has stated that it has properly fulfilled its disclosure obligations with respect to all related party transactions and that all payments made were appropriate. Following the appointment by Mr. Berman, on January 15, 2008, the two other members of the audit committee authorized the finding of other independent counsel to represent the audit committee and to conduct an internal investigation of (a) related party transactions involved management and (b) transactions with parties known to and/or affiliated with management, to determine whether such transaction should have been deemed to be related party transactions. The Company intends to conduct this review in a prompt manner and to complete the review irrespective of the removal contemplated by this Schedule 14C.

A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement. Listed below is the name of each such consenting shareholder, the number of shares held by each such consenting shareholder and the percentage of beneficial ownership of the Company's common stock held by such consenting shareholder.

| Name | Amount of Beneficial Ownership | Percentage of Class |
|------|-------------------------------|---------------------|
| Software People LLC* (Wyoming LLC) | 5,120,000 | 9.97% |
| Trans Global Media LLC* | 5,120,000 | 9.97% |
| Broadcaster, LLC* | 9,640,000 | 18.78% |
| Accessmedia Technologies *LLC | 2,560,000 | 4.99% |
| Rosen Quan Family Trust* | 50,000 | .10% |
| Gary Herman | 225,000 | .44% |
| Strategic Turnaround Equity Partners, LP | 605,925 | 1.18% |
| Treeline Investment Partners, LP | 312,500 | .61% |
| Thomas P. Kikis & Kikis Family Foundation | 237,500 | .46% |
| Andrew and Catherine Garroni Living Trust | 25,000 | .05% |
| Trinad Capital Master Fund Ltd. | 562,133 | 1.09% |
| Willow Creek Capital Management WCCP, WC Offshore Fund, WC Long Biased Funds | 2,300,500 | 4.48% |
| Digital Creative Development Corp. | 3,018,579 | 5.88% |
| | 29,777,137 | 58.00% |

\* Please note that Mr. Nolan Quan controls the vote with respect to these entities

**Vote Required; Manner of Approval**

Under our Certificate of Incorporation and the General Corporation Law of the State of Delaware, directors may be removed from our Board of Directors, with or without cause, by the holders of a majority in voting power of the shares entitled to vote at an election of directors. The Delaware General Corporation Law and our bylaws provide that stockholders may take action without a meeting of stockholders if a consent or consents in writing, setting forth the action so taken, signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting of stockholders at which all shares entitled to vote thereon were present and voted. As a result, the removal of directors from our Board of Directors may be effected by a written consent or consents executed by the holders of a majority of the outstanding shares of our Common Stock. As of December 21, 2007, the entities and individuals listed above held of record 58% of the outstanding shares of our Common Stock. As such, the written consent executed and delivered on December 21, 2007 is sufficient to remove Dr. Vincent Orza and Paul Goodman from the Corporation's Board of Directors and no further vote, approval or consent of stockholders is required to approve this action. The Delaware General Corporation Law provides that the written consent is effective when executed by the holders of the number of shares of Common Stock required to take the action and delivered to the Company. Under Rule 14c-2 promulgated under the Securities Exchange Act of 1934, as amended, the action taken by the stockholders to remove Dr. Vincent Orza and Paul Goodman as members of our Board of Directors cannot take effect until 20 days after this Information Statement is sent to our Stockholders. Therefore, the removal of Dr. Vincent Orza and Paul Goodman from the board of directors will be effective as of February __, 2008. Delaware law does not have a similar requirement.

**Outstanding Voting Stock of the Company**

As of December 21, 2007, there were 51,342,221 shares of Common Stock issued and outstanding. Each share of Common Stock entitles the holder to one vote on all matters submitted to the shareholders.

## OUR BOARD OF DIRECTORS

The action by written consent removes Dr. Vincent Orza and Paul Goodman from our Board of Directors as of February___, 2008. Following the removal of Dr. Orza, and Paul Goodman the remaining directors of the Company will be Martin Wade, Blair Mills, and Richard Berman. By removing Dr. Orza and Mr. Goodman, two of the three independent directors currently on the Board of Directors will be removed. Our bylaws require that the number of Directors be at least three. After the removal, the Board of Directors will be composed of the requisite number of Directors specified in our bylaws. Additional information regarding each of our directors is set forth below.

### Directors Removed

*Vincent F. Orza, Jr., age 57.* Dr. Orza became a director of Broadcaster in July 2007. Dr. Orza is Dean of the Meinders School of Business of Oklahoma City University. Prior to his current position with Oklahoma City University, Dr. Orza served as a trustee of Oklahoma City University, taught economics and marketing for 16 years at the University of Central Oklahoma and received an Ed.D. degree from the University of Oklahoma. Dr. Orza also serves as a news anchor for an Oklahoma City network affiliate and is a regular columnist for a local newspaper. He brings public company experience having been the founder, Chairman and CEO of Eateries, Inc., an operator and franchisor of a chain of restaurants operating in 20 states, which traded on The Nasdaq Stock Market before this company went private in 2003. Dr. Orza ran twice for Governor of Oklahoma.

*Paul Goodman. age 46.* Mr. Goodman became a director in May 2007. Mr. Goodman is a partner in the New York City law firm of Cyruli Shanks & Zizmor LLP and concentrates on the representation of Internet and new media clients handling a wide range of corporate and financing transactions including venture capital, angel round investing and mergers and acquisitions. He was formerly a faculty member of the Queens College Computer Science Department and is the author of five books on computer programming. Mr. Goodman became a director of Maxus Technology Corporation in December 2006. He has also been on the board of directors of SecureLogic Corp. since 1999. He serves on the Audit Committee of each of these corporations. Mr. Goodman became president and sole director of Activeworlds Corp. (OTCBB: AWLD.OB) in July 2007. Mr. Goodman received his law degree from the City University of New York and also holds a Bachelors and Masters Degree in Computer Science.

### Directors Not Removed

*Martin R. Wade, III, age 57.* Mr. Wade became a director and Chief Executive Officer of Broadcaster in August 2001. He has a proven track record in mergers and acquisitions and investment banking. Mr. Wade served from 1998 to 2000 as an M&A banker at Prudential Securities and from 1996 to 1998 as a Managing Director in Mergers and Acquisition at Salomon Brothers. From 1991 to 1996, Mr. Wade was National Head of Investment Banking at Price Waterhouse, LLC. Mr. Wade also spent six years in the M&A department at Bankers Trust and eight years at Lehman Brothers Kuhn Loeb. Mr. Wade is credited with participating in over 200 M&A transactions involving various clients such as, Nike, Cornerstone National Gas Company, Landmark Graphics and Redken Laboratories, Inc. He also serves on the Boards of Directors for Alliance One International, Inc. (NYSE: AOI), NexMed (NasdaqCM: NEXM), Advaxis, Inc. (OTCBB:ADXS.OB) and Command Security Corp (AMEX: MOC).

*Richard J. Berman, age 65.* Mr. Berman became a director of Broadcaster in February 2002. His business career spans over 35 years of venture capital, management and merger and acquisitions experience. In the last five years, Mr. Berman has served as a professional director and/or officer of about a dozen public and private companies. He is currently Chief Executive Officer of NexMed (NasdaqCM: NEXM), a biotech company; Chairman of National Investment Managers, a public company in pension administration and investment management; and Chairman of Candidate Resources, a private company delivering HR services over the web. The public companies that Mr. Berman is a director of are Dyadic International, Inc. (AMEX: DIL), Broadcaster, Inc, Easylink Services International Corp. (NasdaqCM: ESIC), MediaBay, Inc. (OTC: MBAY.PK), NexMed, Inc. (NasdaqCM: NEXM), GVI Security Solutions Inc. (OTCBB: GVSS.OB), National Investment Managers (OTCBB: NIVM.OB), Nayna Networks, Inc. (OTCBB: NAYN.OB) and Advaxis, Inc (OTCBB: ADXS.OB). From 1998 - 2000, he was employed by Internet Commerce Corporation as Chairman and CEO. Previously, Mr. Berman worked at Goldman Sachs; was Senior Vice President of Bankers Trust Company, where he started the M&A and Leveraged Buyout Departments; created the largest battery company in the world by merging Prestolite, General Battery and Exide to form Exide (NYSE); helped create what is now Soho (NYC) by developing five buildings; and advised on over $4 billion of M&A transactions. He is a past Director of the Stern School of Business of NYU.

*Blair Mills. age 43.* Mr. Mills became a director in May 2007. Mr. Mills joined the company in June 2006 as Chief Financial Officer. Previously, he served as Chief Financial Officer of AccessMedia beginning in May 2005. Prior to that date, Mr. Mills served in various management positions at several Internet-based businesses, including most recently Longview Media, Inc. from September 2000 through September 2006. Mr. Mills has also served as an independent consultant to small businesses and emerging growth companies. Mr. Mills is a Chartered Accountant in Canada and a Certified Public Accountant in Illinois.

## SECURITY OWNERSHIP

The following table sets forth, as of December 21, 2007 information concerning the beneficial ownership of common stock by each director of the Company, the Chief Executive Officer and the other compensated executive officers provided that their annual compensation exceeds $100,000, and all directors and executive officers as a group. Unless otherwise indicated below, the business address for each named individual is the principal executive office address, which is 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311. According to rules adopted by the Securities and Exchange Commission, a person is the "beneficial owner" of securities if he or she has, or shares, the power to vote such securities or to direct their investment. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

The table also sets forth, as of December 21, 2007 the name, address, stock ownership and voting power of each person or group of persons known by the Company to own beneficially more than 5% of the outstanding shares of Common Stock. Unless otherwise indicated, each of the shareholders has sole voting and investment power with respect to shares beneficially owned.

| Name and Address(1) | Amount and Nature Of Beneficial Ownership | Percentage of Class |
|---|---|---|
| Martin Wade, III | 198,333 | * |
| Blair Mills | 75,000 | * |
| Richard Berman (2) | 296,250 | * |
| Paul Goodman (3) | 6,250 | * |
| Vincent F. Orza, Jr. (4) | 32,750 | * |
| Nolan Quan (5) | 22,490,000 | 43.8% |
| Michael Gardner (6) | 10,697,150 | 20.8% |
| Digital Creative Development Corp (7) | 3,018,579 | 5.9% |
| All officers and directors as a group (6 people) | 23,098,583 | 44.99% |

(1)   Unless otherwise indicated, the address for each is c/o Broadcaster, Inc., 9201 Oakdale Avenue, Suite 200, Chatsworth, California 91311.

(2)   420 Lexington Avenue, Suite 450, New York, NY 10170.

(3)   420 Lexington Avenue, Suite 2330, New York, NY 10170

(4)   2501 n. Blackwelder, Oklahoma City, OK 73106.

(5)   Represents 22,490,000 shares, 50,000 of which are owned by a family trust of which Mr. Quan is a trustee and the balance by the limited liability companies. Mr. Nolan Quan, one of our principal shareholders, and President is the managing member of four LLCs, Broadcaster LLC 9,640,000 shares, Software People LLC 5,120,000 shares, Trans Global Media LLC 5,120,000 shares and Accessmedia Technologies LLC 2,560,000 shares. Mr. Quan's affiliated entities have provided services to the Company for which such entities have received compensation. During the year ended June 30, 2007, the Company incurred expenses of $1,849,000 related to services provided by Alchemy, which is controlled by Mr. Nolan Quan. Interest expenses for the year ended June 30, 2007 included $69,000 related to a loan in the principal amount of $1,725,000 from Mr. Nolan Quan. The Company also paid Mr. Quan an aggregate of $86,000 during the year ended June 30, 2007 for the purchase of two licenses owned by him and consulting fees of $12,000. In addition, during the year ended June 30, 2007, the Company paid another entity of which Mr. Quan is a controlling shareholder, $150,000 for the purchase of a license. Mr Quan's wife and son have

provided services to the Company and received an aggregate of $104,480 for such services during the year ended June 30, 2007. See the Company's

Quarterly Report of Form 10Q filed with the Securities and Exchange Commission on November 14, 2007 and the Company's Annual Report on Form 10-K filed on October 15, 2007 for a more detailed description of the services performed by such affiliated entities and the compensation paid to Mr. Nolan and such entities for such services.

(6)    c/o Baytree Capital, The Trump Building, 40 Wall Street, New York, NY 10005. Represents 10,647,150 shares, including 1,875,000 shares owned by Baytree. The numbers owned of record and beneficially by Mr. Gardner do not include 1,544,594 shares of our common stock owned by MBYI Liquidating Trust. Mr. Gardner owns a 6.7% interest in the trust as a result of an unrelated transaction, but is not a beneficial owner of the shares under the rules of the SEC. The shares held by the trust may be publicly sold at any time without restriction.

(7)    720 Fifth Avenue, 10th Floor, New York, NY 10019.

## INTEREST OF CERTAIN PERSONS IN THE REMOVAL

The security ownership of certain beneficial owners and management are set forth above in the Section entitled "Security Ownership of Certain Beneficial Owners and Management." Except as disclosed above, none of the following persons has any substantial interest, direct or indirect, in the matter to be acted upon:

(1)    Any director or officer of the Company since January 1, 2007;
(2)    Associates or affiliates of the persons described in (1) and (2).

## NO APPRAISAL RIGHTS

Our Stockholders are not entitled to appraisal rights with respect to the actions to be taken pursuant to the written consent under Delaware law, our Certificate of Incorporation or our Bylaws.

## DISTRIBUTION OF INFORMATION STATEMENT

We will pay the costs of distributing this Information Statement to our stockholders. The distribution will be made by mail.

## FORWARD-LOOKING STATEMENTS

This information statement may contain certain "forward-looking" statements (as that term is defined in the Private Securities Litigation Reform Act of 1995 or by the U.S. Securities and Exchange Commission in its rules, regulations and releases) representing our expectations or beliefs regarding our company. These forward-looking statements include, but are not limited to, statements concerning our operations, economic performance, financial condition, and prospects and opportunities. For this purpose, any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the generality of the foregoing, words such as "may," "will," "expect," "believe," "anticipate," "intend," "could," "estimate," "might," or "continue" or the negative or other variations thereof or comparable terminology are intended to identify forward-looking statements. These statements, by their nature, involve substantial risks and uncertainties, certain of which are beyond our control, and actual results may differ materially depending on a variety of important factors, including factors discussed in this and other of our filings with the U.S. Securities and Exchange Commission.

## ADDITIONAL INFORMATION

We are subject to the informational reporting requirements of the Exchange Act and file reports, proxy statements and other information required under the Exchange Act with the SEC. Such reports, proxy statements and other information may be inspected and copied at the public reference facilities maintained by the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. Copies of such materials and information from the SEC can be obtained at existing published rates from the Public Reference Section of the SEC at 100 F Street, N.E., Room 1580, Washington, DC 20549. The SEC also maintains a site on the Internet at http://www.sec.gov that contains reports, proxy and information statements and other information regarding registrants that file electronically with the SEC which may be downloaded free of charge.

## INCORPORATION OF FINANCIAL INFORMATION

We "incorporate by reference" into this Information Statement the information in certain documents we file with the SEC, which means that we can disclose important information to you by referring you to those documents. We incorporate by reference into this information statement the following documents we have previously filed with the SEC: our quarterly report on Form 10-QSB for the quarterly period ended September 30, 2007 and our Registration Statement on Form SB-2. You may request a copy of these filings at no cost, by writing or telephoning us at the following address:

Broadcaster, Inc.
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

As we obtained the requisite stockholder vote for the removal of the director described in this information statement upon delivery of written consents from the holders of a majority of our outstanding shares of common stock, **WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.** This information statement is for informational purposes only. Please read this information statement carefully.

ANNEX A

### FORM OF CONSENT

### BROADCASTER, INC.

<u>Consent of Stockholders Representing a Majority in Voting Power of the Outstanding Stock
Pursuant to Section 228 of the General Corporation Law of the State of Delaware</u>

The undersigned, constituting holders of a majority in voting power of the outstanding shares of Broadcaster, Inc., a Delaware corporation (the "Corporation"), and acting hereunder without the convening of a formal meeting pursuant to Section 228 of the General Corporation Law of the State of Delaware, do hereby consent in writing to the adoption of and do hereby adopt the following resolutions:

WHEREAS, the Board of Directors of the Corporation is presently comprised of Martin R. Wade, III, Richard J. Berman, Blair Mills, Paul Goodman and Dr. Vincent F. Orza, Jr.; and

WHEREAS, the undersigned have deemed it advisable and in the best interests of the Corporation that Dr. Vincent F. Orza, Jr. and Paul Goodman be removed without cause from the Board of Directors of the Corporation;

NOW, THEREFORE, BE IT AND IT HEREBY IS RESOLVED, that as of the Effective Date (as defined below) Dr. Vincent Orza, Jr. and Paul Goodman shall be removed without cause as members of the Board of Directors of the Corporation; and it is further

RESOLVED, that the Corporation be, and hereby is, authorized, empowered and directed to cause an information statement in accordance with Regulation 14C promulgated by the Securities and Exchange Commission (the "SEC") with respect to the actions taken in the foregoing resolution and to file a Preliminary Schedule 14C with the SEC as soon thereafter as practicable and (unless the Corporation receives notice that the Preliminary Schedule 14C will be subject to review by the SEC) to cause the Definitive Schedule 14 C to be filed with the SEC and information statement to be mailed to the Corporation's shareholders in accordance with the rules of the SEC on the first business day that is at least 10 days after the filing of the Preliminary Schedule 14C (the "Mailing Date"). The foregoing resolution shall become effective on the date (the "Effective Date") that is 20 days after the Mailing Date; and it is further

RESOLVED, that Martin Wade, III is hereby authorized to execute and deliver on behalf of the Corporation all such further documents, certificates, or instruments, to take on behalf of the Corporation all such further actions, and to pay on behalf of the Corporation all such expenses that he determines to be necessary or desirable in order to carry out the foregoing resolutions, the execution and delivery of any such documents, certificates, or instruments, the taking of any such actions, and the payment of any such expenses to be conclusive evidence of that determination.
This consent may be executed in one or more counterparts. The Secretary of the Corporation is hereby directed to file a signed copy of this consent in the corporate minute book.

By: _____

PRER14C 1 broadcaster14c.htm AMENDMENT NO. 6

## UNITED STATES
### SECURITIES AND EXCHANGE COMMISSION
#### Washington, D.C. 20549

### SCHEDULE 14C INFORMATION
### (Amendment No. 6)

**Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934**

Check the appropriate box:

☒  Preliminary Information Statement
✳  Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))
✳  Definitive Information Statement

# BROADCASTER, INC.
### (Name of Registrant As Specified In Its Charter)

Payment of Filing Fee (Check the Appropriate Box):

☒  No fee required
✳  Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

1.  Title of each class of securities to which transaction applies:

    _____

2.  Aggregate number of securities to which transaction applies:

    _____

3.  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11

    _____

4.  Proposed maximum aggregate value of transaction

    _____

5.  Total fee paid

    _____

✳  Check box if any party of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

**BROADCASTER, INC.**
9201 Oakdale Avenue, Suite 200
Chatsworth, California 91311
(818) 206-9274

## NOTICE OF STOCKHOLDER ACTION BY WRITTEN CONSENT

TO ALL STOCKHOLDERS OF BROADCASTER, INC.:

The purpose of this letter is to inform you that on December 21, 2007 the holders of a majority in voting power of the outstanding stock of Broadcaster, Inc. (the "Corporation") executed and delivered a written consent adopting a resolution to remove without cause two directors, Dr. Vincent Orza and Paul Goodman, as members of the Board of Directors of the Corporation.

The holders of shares representing 58% of our voting power have executed a written consent in favor of the removal of two directors from the Board of Directors of the Corporation. The removal of the directors is described in greater detail in the information statement accompanying this notice. The consents that we have received constitute the only stockholder approval required to remove the directors under the General Corporation Law of the State of Delaware and the Corporation's certificate of incorporation and bylaws. In accordance with the requirements of Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, the removal of directors provided for in the consent will not be effective until February __, 2008.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY**. Because the written consent of holders of a majority in voting power of the Corporation's outstanding stock satisfies all applicable stockholder voting requirements, we are not asking you for a proxy; please do not send us one.

The accompanying information statement is for information purposes only. Please read it carefully.

February __, 2008

/s/ MARTIN WADE, III
Martin Wade, III
Chairman and Chief Executive
Officer

**BROADCASTER, INC.**
9201 Oakdale Avenue
Suite 200
Chatsworth, California 91311

## INFORMATION STATEMENT

February __, 2008

### WE ARE NOT ASKING YOU FOR A PROXY AND
### YOU ARE REQUESTED NOT TO SEND US A PROXY.

This information statement is being mailed on or about February __, 2008, to the stockholders of record of Broadcaster, Inc. at the close of business on December 21, 2007 (the "Record Date"). This information statement is being sent to you for information purposes only. No action is requested or required on your part. This information statement constitutes notice to our stockholders of corporate action by stockholders by written consent, as required by Section 228 of the General Corporation Law of the State of Delaware and our bylaws.

This information statement is being furnished to you to inform you that holders of shares representing a majority of the voting power of shares of our common stock, par value $.001 per share, have adopted, by written consent, resolutions to remove without cause two directors as members of the Board of Directors of Broadcaster, Inc. (the "Company").

As of the date hereof, we had 300,000,000 shares of common stock authorized, of which 51,342,221 shares were outstanding. Each outstanding share of common stock is entitled to one vote per share.

The approval of the holders of a majority of the outstanding shares of our common stock is required to remove Dr. Vincent Orza and Paul Goodman. Under Delaware law and our organizational documents, the Corporation's stockholders are permitted to act by written consent in lieu of a meeting to effect such removal. Written consents to remove Dr. Vincent Orza and Paul Goodman were delivered to the Corporation from stockholders holding approximately 58% of the voting power of the Corporation's common stock. By removing Dr. Orza and Mr. Goodman, two of the independent directors currently on the Board of Directors will be removed; however, we have recently added two directors to our Board of Directors, both of whom are independent. Therefore, after such removal, three independent directors will remain on our Board of Directors.

We will bear the expenses relating to this information statement, including expenses in connection with preparing and mailing this information statement and all documents that now accompany or may in the future supplement it. We contemplate that brokerage houses, custodians, nominees, and fiduciaries will forward this information statement to the beneficial owners of our common stock held of record by these persons and we will reimburse them for their reasonable expenses incurred in this process.

This Information Statement is being furnished by the Company pursuant to Regulation 14C promulgated under the Securities Exchange Act of 1934, as amended, and in connection with certain actions approved by written consent, dated December 21, 2007, of stockholders holding a majority in voting power of the Corporation's outstanding common stock to remove the directors described above pursuant to the General Corporation Law of the State of Delaware and the Company's Restated Certificate of Incorporation, as amended (the "Certificate of Incorporation") and its Amended and Restated By-laws, as amended (the "Bylaws").

We are distributing this Information Statement to our stockholders in full satisfaction of the notice requirements of Section 228(e) of the General Corporation Law of the State of Delaware. No additional action will be undertaken by us with respect to the receipt of the written consent, and our stockholders are not entitled to any appraisal rights under Delaware law, our Certificate of Incorporation or our Bylaws as a result of the actions to be taken pursuant to the written consent described above.

Only one information statement is being delivered to multiple stockholders sharing an address, unless we have received contrary instructions from one or more of the stockholders. We will undertake to deliver promptly upon written or oral request a separate copy of the information statement to a stockholder at a shared address to which a single copy of the information statement was delivered. You may make a written or oral request by sending a written notification to our

principal executive offices stating your name, your shared address, and the address to

which we should direct the additional copy of the information statement or by calling our principal executive offices at (818) 206-9274. If multiple stockholders sharing an address have received one copy of this information statement and would prefer us to mail each stockholder a separate copy of future mailings, you may send notification to or call our principal executive offices. Additionally, if current stockholders with a shared address received multiple copies of this information statement and would prefer us to mail one copy of future mailings to stockholders at the shared address, notification of that request may also be made by mail or telephone call to our principal executive offices.

## DESCRIPTION OF ACTIONS TAKEN

### Written Consent Executed and Delivered by the Consenting Stockholders

On December 21, 2007,  record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors. By removing Dr. Orza and Mr. Goodman, two of the independent directors currently on the Board of Directors will be removed; however, we have recently added two directors to our Board of Directors, both of whom are independent. Therefore, after such removal, three independent directors will remain on our Board of Directors. Although the removal of the two directors is being effected without cause, the consenting shareholders have expressed a lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations among certain consenting shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. In forming their judgment, the consenting shareholders considered that, based upon their biographies and the above referenced conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry. Mr. Goodman has subsequently disputed the judgment reached by the consenting shareholders regarding his lack of prior experience in managing companies in the media industry.

There were three meetings of the Board of Directors that were held by the Company by telephonic conference (November 26th which continued on November 27th, December 3rd and 13th, 2007) at which the manner of the shut down was discussed. Messrs. Wade, Berman, Mills and Goodman were present at each meeting. Dr. Orza was present at two of those meetings. At each meeting several non board members were present by invitation. Messrs. Quan, Harris and Gardner were present by invitation at all three meetings and Mr. Herman was present by invitation at the December 13, 2007 meeting. At each meeting there was a disagreement about how to deal with terminating employees and how to preserve the value of the assets.

The topic of shutting down the business was briefly mentioned at a telephonic board meeting held on October 22, 2007 at which all directors other than Mr. Berman were present. The purpose of the meeting was to discuss the strategic direction of the Company. During the discussion, Dr.Orza suggested shutting down the business and Mr. Goodman mentioned providing budgets on an interim basis if the sale of the business were explored. However, no resolution was made at that meeting as to the direction of the Company.

On November 26th at the Board meeting, it was resolved that the Company would implement a particular plan that had been presented to the Board which included the termination of employees. On November 27th, the Board formally decided to implement the plan agreed to the prior day and terminate employees in accordance with the plan. On November 27th, the Board also resolved to form an oversight committee comprised of Mr. Wade, Mr. Berman and Mr. Goodman. Management began implementation of the plan immediately; however, the plan was not fully implemented until December 31, 2007 because, there was no resolution as to the specifics of the implementation of the plan (there was no determination of who was to be terminated or the terms of such termination) until December 13, 2007. All Board members, except Mr. Mills, voted in favor of the November resolutions. Mr. Mills was of the view that the Board was not considering all of the factors and was not considering the protection of shareholder value as a primary concern.

At the December 3rd, 2007 meeting, Mr. Wade and Mr. Goodman expressed disagreement about the specifics of the implementation of the plan. Both Mr. Wade and Mr. Mills expressed the view that employees should be given notice as well as severance pay consistent with either California law, terms of their employment agreement or past company practice. At the meeting, Mr. Goodman, Dr. Orza and Mr. Gardner expressed agreement with the notion that no notice was required prior to terminating the employees and that no severance payments should be made except if required in accordance with the terms of a written employment agreement. Mr. Berman suggested that no layoffs take place until the results of the merger discussions were known. A resolution was passed, which was supported by Messrs. Mills, Berman and Wade and opposed by Mr. Goodman and Dr. Orza, that the oversight

committee meet later in the day or the next morning to discuss issues relating to implementation of the resolutions regarding the layoffs.

The manner of shutting down the Company's business operations so to preserve the value of the Company's assets and share price was also the subject of disagreement. Mr. Wade and Mr. Mills stated that, in order to preserve the Company's assets, enough employees needed to be retained to keep the website operational but not growing and to prepare and file all required regulatory filings. Mr. Goodman and Mr. Gardner expressed their opinion that a complete and total shut down of the business was required to conserve as much cash as possible and that the assets of the Company (the technology and the web site) had no value. Mr. Berman expressed his view that a merger transaction was the best way to quickly capture the value of any assets. In response to the views expressed at the meeting, Mr. Wade requested that the director's who did not feel that the Company assets had any value either visit the Company themselves or retain outside experts to value the technology and websites. Mr. Goodman expressed the view, joined in by Dr. Orza, that such action was a waste of time.

On December 13, 2007 the Board resolved to dismiss most of the employees by December 31, 2007 and such action has been implemented. As of December 31, 2007 only six employees remained at the Company.

At the December 13, 2007 Board meeting, after it was stated that a majority of the shareholders were seeking the removal of two directors, there was another disagreement over two proposed merger candidates, JamNow and WebHost4Life. The Board discussed a proposed engagement letter retaining the services of Baytree Advisors LLC, an entity believed to be owned by Mr. Gardner, in a proposed merger transaction with JamNow, pursuant to which Baytree Advisors LLC would receive $500,000 in cash and 5% in stock The Board passed a resolution, which was supported by Messrs. Wade, Berman and Goodman and opposed by Mr. Mills to retain Baytree Advisors LLC and pay it the fees described in the preceding sentence if the JamNow acquisition were to close. The Board also discussed initiating discussions with WebHost4Life, an entity that is a client of Alchemy Communications, Inc. Alchemy Communications, Inc. is an entity affiliated with Mr. Quan. Because the discussions regarding a transaction with WebHost4Life were very preliminary, there was very limited discussion about such a transaction. The Board passed a resolution, which was supported by Messrs. Berman, Mills and Wade and opposed by Mr. Goodman that the Company proceed to investigate the possibility of merging with WebHost4Life, JamNow or neither. In addition, the Board passed a resolution that was supported by Messrs. Wade, Berman and Goodman (Mr. Mills abstained) that the Company negotiate a letter of intent with JamNow, which included a bridge loan.

On December 20, 2007, there was a meeting of the Board of Directors held by telephonic conference at which Messrs. Wade, Mills, Berman, Goodman and Dr. Orza were present. Messrs. Quan and Cohen were also present by invitation. The Board passed a resolution to sign a letter of intent for the merger with JamNow, which provided that the Company extend a bridge loan to JamNow that would be disbursed a few days after the signing of the letter of intent. Mr. Mills expressed opposition to proceeding with the JamNow transaction so quickly without proper due diligence. However, at this meeting it was agreed by the other directors that nonetheless a letter of intent with JamNow be signed. Mr. Wade made a resolution that the bridge loan have a demand repayment clause, at the Company's option. At the direction of the majority of the Board, on December 21, 2007, the Company signed a non-binding letter of intent with JamNow. After the meeting, Mr. Wade discussed the repayment option with the management of JamNow. Mr. Wade came to the judgment that JamNow's position as to the repayment option had been misrepresented and that JamNow appeared to have no intention of agreeing to any repayment option. Despite the assurances from JamNow that the Company's due diligence of JamNow would be immediately arranged, no due diligence was arranged by JamNow as of December 26, 2007 and there had been no response from JamNow or its advisors. Mr. Wade then sought and received advice from corporate and securities counsel as to whether it would, as he believed, be a breach of his fiduciary duty to proceed with the transaction without conducting due diligence. Based upon his discussions with management and the lack of any response to the Company's due diligence requests, on December 26th, having not received a counter-signed copy of the letter of intent back from JamNow, and upon advice of outside counsel, Mr. Wade rescinded the letter of intent with JamNow. The decision to withdraw the letter of intent was not motivated by any shareholder action. To date, no further action has been taken with respect to either merger candidate.

On January 10, 2008, following a conversation with Mr. Goodman, Mr. Berman, in his role as Chairman of the audit committee (which committee is comprised of the three outside directors, Mr. Berman, Mr. Goodman and Dr. Orza), appointed the law firm of Lehman & Eilen LLP to review all related party transactions of the Company. Lehman & Eilen had been retained in December by the Company as independent securities counsel and had no prior relationship with any affiliate of the Company, including Mr. Quan. On January 11, 2008, Mr. Gardner, a shareholder of the Company, filed, as an exhibit to a Schedule 13D, a letter to Mr. Quan, which among other things,

questioned payments made to Mr. Quan and his affiliates for services performed for the Company. The Company and management have denied all such allegations in Mr. Gardner's letter. The Company has stated that it has properly fulfilled its disclosure obligations with respect to all related party transactions and that all payments made were appropriate. Following the appointment by Mr. Berman, on January 15, 2008, the two other members of the audit committee authorized the finding of other independent counsel to represent the audit committee and to conduct an internal investigation of (a) related party transactions involved management and (b) transactions with parties known to and/or affiliated with management, to determine whether such transaction should have been deemed to be related party transactions. Since the appointment by Mr. Berman was not reaffirmed by a majority of the audit committee, the review by the law firm selected by him has not taken place. The reason for the appointment by Mr. Goodman and Dr. Orza of separate counsel has not been disclosed to the Company or its management. Management has been informed that Daly & Palvis of Southport Connecticut has been appointed by Mr. Goodman and Dr. Orza to conduct the review. At a meeting of the Board of Directors that was held by telephonic conference on February 4, 2008, at which Messers. Wade, Mills, Berman and Goodman were present, the Board unanimously resolved to authorize Mr. Wade to enter into an agreement with Daly & Palvis. The Company intends to conduct this review in a prompt manner and to complete the review irrespective of the removal contemplated by this Schedule 14C.

At the February 4, 2008 meeting of the Board of Directors, the Board passed a resolution increasing the size of the board from five to seven and appointing two new directors, Messrs. Camiolo and Johnson, to serve on the Board of Directors. Messrs. Wade, Mills and Berman voted in favor of both resolutions and Mr. Goodman voted against the resolutions.

A copy of the written consent of the majority stockholders is attached as Annex A to this Information Statement. Listed below is the name of each such consenting shareholder, the number of shares held by each such consenting shareholder and the percentage of beneficial ownership of the Company's common stock held by such consenting shareholder.

| Name | Amount of Beneficial Ownership | Percentage of Class |
|------|--------------------------------|---------------------|
| Software People LLC* (Wyoming LLC) | 5,120,000 | 9.97% |
| Trans Global Media LLC* | 5,120,000 | 9.97% |
| Broadcaster, LLC* | 9,640,000 | 18.78% |
| Accessmedia Technologies *LLC | 2,560,000 | 4.99% |
| Rosen Quan Family Trust* | 50,000 | .10% |
| Gary Herman | 225,000 | .44% |
| Strategic Turnaround Equity Partners, LP | 605,925 | 1.18% |
| Treeline Investment Partners, LP | 312,500 | .61% |
| Thomas P. Kikis & Kikis Family Foundation | 237,500 | .46% |
| Andrew and Catherine Garroni Living Trust | 25,000 | .05% |
| Trinad Capital Master Fund Ltd. | 562,133 | 1.09% |
| Willow Creek Capital Management WCCP, WC Offshore Fund, WC Long Biased Funds | 2,300,500 | 4.48% |
| Digital Creative Development Corp. | 3,018,579 | 5.88% |
|  | 29,777,137 | 58.00% |

\* Please note that Mr. Nolan Quan controls the vote with respect to these entities

## Vote Required; Manner of Approval

Under our Certificate of Incorporation and the General Corporation Law of the State of Delaware, directors may be removed from our Board of Directors, with or without cause, by the holders of a majority in voting power of the shares entitled to vote at an election of directors. The Delaware General Corporation Law and our bylaws provide that stockholders may take action without a meeting of stockholders if a consent or consents in writing, setting forth the action so taken, signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting of stockholders at which all shares entitled to vote

thereon were present and voted. As a result, the removal of directors from our Board of Directors may be effected by a written consent or consents executed by the holders of a majority of the outstanding

shares of our Common Stock. As of December 21, 2007, the entities and individuals listed above held of record 58% of the outstanding shares of our Common Stock. As such, the written consent executed and delivered on December 21, 2007 is sufficient to remove Dr. Vincent Orza and Paul Goodman from the Corporation's Board of Directors and no further vote, approval or consent of stockholders is required to approve this action. The Delaware General Corporation Law provides that the written consent is effective when executed by the holders of the number of shares of Common Stock required to take the action and delivered to the Company. Under Rule 14c-2 promulgated under the Securities Exchange Act of 1934, as amended, the action taken by the stockholders to remove Dr. Vincent Orza and Paul Goodman as members of our Board of Directors cannot take effect until 20 days after this Information Statement is sent to our Stockholders. Therefore, the removal of Dr. Vincent Orza and Paul Goodman from the board of directors will be effective as of February __, 2008. Delaware law does not have a similar requirement.

### Outstanding Voting Stock of the Company

As of December 21, 2007, there were 51,342,221 shares of Common Stock issued and outstanding. Each share of Common Stock entitles the holder to one vote on all matters submitted to the shareholders.

### OUR BOARD OF DIRECTORS

The action by written consent removes Dr. Vincent Orza and Paul Goodman from our Board of Directors as of February__, 2008. Following the removal of Dr. Orza, and Paul Goodman the remaining directors of the Company will be Martin Wade, Blair Mills, and Richard Berman. By removing Dr. Orza and Mr. Goodman, two of the independent directors currently on the Board of Directors will be removed; however, we have recently added two directors to our Board of Directors, both of whom are independent. Therefore, after such removal, three independent directors will remain on our Board of Directors. On February 4, 2008, at a telephonic meeting of the Board of Directors, Messrs. Camiolo and Johnson were appointed to serve on our Board of Directors. Our bylaws require that the number of Directors be at least three. After the removal, the Board of Directors will be composed of the requisite number of Directors specified in our bylaws. Additional information regarding each of our directors is set forth below.

### Directors Removed

*Vincent F. Orza, Jr., age 57.* Dr. Orza became a director of Broadcaster in July 2007. Dr. Orza is Dean of the Meinders School of Business of Oklahoma City University. Prior to his current position with Oklahoma City University, Dr. Orza served as a trustee of Oklahoma City University, taught economics and marketing for 16 years at the University of Central Oklahoma and received an Ed.D. degree from the University of Oklahoma. Dr. Orza also serves as a news anchor for an Oklahoma City network affiliate and is a regular columnist for a local newspaper. He brings public company experience having been the founder, Chairman and CEO of Eateries, Inc., an operator and franchisor of a chain of restaurants operating in 20 states, which traded on The Nasdaq Stock Market before this company went private in 2003. Dr. Orza ran twice for Governor of Oklahoma.

*Paul Goodman. age 46.* Mr. Goodman became a director in May 2007. Mr. Goodman is a partner in the New York City law firm of Cyruli Shanks & Zizmor LLP and concentrates on the representation of Internet and new media clients handling a wide range of corporate and financing transactions including venture capital, angel round investing and mergers and acquisitions. He was formerly a faculty member of the Queens College Computer Science Department and is the author of five books on computer programming. Mr. Goodman became a director of Maxus Technology Corporation in December 2006. He has also been on the board of directors of SecureLogic Corp. since 1999. He serves on the Audit Committee of each of these corporations. Mr. Goodman became president and sole director of Activeworlds Corp. (OTCBB: AWLD.OB) in July 2007. Mr. Goodman received his law degree from the City University of New York and also holds a Bachelors and Masters Degree in Computer Science.

### Directors Not Removed

*Martin R. Wade, III, age 57.* Mr. Wade became a director and Chief Executive Officer of Broadcaster in August 2001. He has a proven track record in mergers and acquisitions and investment banking. Mr. Wade served from 1998 to 2000 as an M&A banker at Prudential Securities and from 1996 to 1998 as a Managing Director in Mergers and Acquisition at Salomon Brothers. From 1991 to 1996, Mr. Wade was National Head of Investment Banking at Price Waterhouse, LLC. Mr. Wade also spent six years in the M&A department at Bankers Trust and eight years at Lehman Brothers Kuhn Loeb. Mr. Wade is credited with participating in over 200 M&A transactions